1  Robert Drexler (SBN 119119)
   Robert.Drexler@CapstoneLawyers.com
2  Molly DeSario (SBN 230763)
   Molly.DeSario@CapstoneLawyers.com
3  Jonathan Lee (SBN 267146)
   Jonathan.Lee@CapstoneLawyers.com
4  Capstone Law APC
   1875 Century Park East, Suite 1000
5  Los Angeles, California 90067
   Telephone:      (310) 556-4811
6  Facsimile:      (310) 943-0396

7  Attorneys for Plaintiff Richard Rodriguez

8

9                    UNITED STATES DISTRICT COURT

10                  NORTHERN DISTRICT OF CALIFORNIA

11

12  RICHARD RODRIGUEZ, individually, and         Case No.:  5:22-cv-02071-VKD
    on behalf of other members of the general
13  public similarly situated, and as an          **FIRST AMENDED COLLECTIVE AND
    aggrieved employee pursuant to the Private    CLASS ACTION COMPLAINT &
14  Attorneys General Act ("PAGA"),               ENFORCEMENT ACTION UNDER THE
                                                  PRIVATE ATTORNEYS GENERAL ACT,
15              Plaintiff,                         CALIFORNIA LABOR CODE §§ 2698, *ET
                                                  SEQ.***
16         vs.
                                                  (1) Violation of the Fair Labor Standards Act
17  BELFOR USA GROUP, INC., a Colorado                (29 U.S.C. §§ 201, *et seq.*);
    corporation; BELFOR                           (2) Violation of California Labor Code §§ 510
18  ENVIRONMENTAL, INC., a Colorado                   and 1198 (Unpaid Overtime);
    corporation; OAKWOOD                          (3) Violation of California Labor Code
19  CONSTRUCTION AND RESTORATION                      §§ 1182.12, 1194, 1197, 1197.1, and 1198
    SERVICES, INC., a California corporation;         (Unpaid Minimum Wages);
20  1 800 WATER DAMAGE NORTH                       (4) Violation of California Labor Code
    AMERICA, LLC, a Delaware limited                  §§ 226.7, 512(a), 516, and 1198 (Failure to
21  liability company; and DOES 1 through 10,         Provide Meal Periods);
    inclusive,                                     (5) Violation of California Labor Code
22                                                     §§ 226.7, 516, and 1198 (Failure to
                                                      Authorize and Permit Rest Periods);
23              Defendants.                        (6) Violation of California Labor Code
                                                      §§ 226(a), 1174(d), and 1198 (Non-
24                                                     Compliant Wage Statements and Failure to
                                                      Maintain Payroll Records);
25                                                 (7) Violation of California Labor Code §§ 201
                                                      and 202 (Wages Not Timely Paid Upon
26                                                     Termination);
                                                   (8) Violation of California Labor Code § 204
27                                                     (Failure to Timely Pay Wages During
                                                      Employment);
28

FIRST AMENDED CLASS ACTION COMPLAINT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

(9) Violation of Labor Code § 1198 and California Code of Regulations Title 8, § 11160 Subdivision 5(B) (Failure to Provide Reporting Time Pay);

(10)     Violation of California Labor Code § 2802 (Unreimbursed Business Expenses);

(11)     Civil Penalties for Violations of California Labor Code, Pursuant to PAGA, §§ 2698, *et seq.*;

(12)     Violation of California Business & Professions Code §§ 17200, *et seq.* (Unlawful Business Practices); and

(13)     Violation of California Business & Professions Code §§ 17200, *et seq.* (Unfair Business Practices)

**Jury Trial Demanded**

1    Plaintiff Richard Rodriguez, individually and on behalf of all other members of the

2    public similarly situated, and as an aggrieved employee and on behalf of all other aggrieved

3    employees, alleges as follows:

4                                **JURISDICTION AND VENUE**

5        1.    This class action is brought pursuant to Rule 23 of the Federal Rules of Civil

6    Procedure to recover wages and all other available relief on behalf of Plaintiff and all similarly

7    situated current and former non-exempt, hourly paid employees of Defendants, as a collective

8    action pursuant to 29 U.S.C. § 216(b), and a non-class representative enforcement action

9    brought pursuant to the Labor Code Private Attorneys General Act of 2004, California Labor

10   Code sections 2698, *et seq.* ("PAGA") to recover civil penalties and any other available relief

11   on behalf of Plaintiff, the State of California, and other current and former employees who

12   worked for Defendants in California as non-exempt, hourly paid employees and received at least

13   one wage statement and against whom one or more violations of any provision in Division 2

14   Part 2 Chapter 1 of the Labor Code or any provision regulating hours and days of work in the

15   applicable Industrial Welfare Commission ("IWC") Wage Order were committed, as set forth

16   in this complaint.

17       2.    This Court has original jurisdiction over this action pursuant to 28 U.S.C.

18   § 1332(d) and based on 28 U.S.C. §§ 1441, 1446.

19       3.    Venue is proper in this Court, because this case was originally filed in the

20   Superior Court of California for the County of Santa Clara.  Venue properly lies in the United

21   States District Court for the Northern District of California pursuant to 28 U.S.C. §§ 84(a),

22   1391(b), and 1441(a).

23       4.    The PAGA statute authorizes aggrieved employees to sue directly as the proxy

24   of the State of California for civil penalties for violations of various provisions in the California

25   Labor Code.

26                                     **THE PARTIES**

27       5.    Plaintiff Richard Rodriguez is a resident of Fresno, in Fresno County, California.

28   Defendants employed Plaintiff as an hourly paid, non-exempt Water Damage Specialist -

1    Laborer from approximately March 2020 to December 2021.  During his employment, Plaintiff

2    typically worked eight (8) or more hours per day and five (5) or more days per week.  Plaintiff's

3    primary job duties included, without limitation, assessing property damage, setting up drying

4    equipment, and performing demolition and restoration tasks at various jobsites in the northern

5    California area.

6        6.    BEFLOR USA GROUP, INC. was and is, upon information and belief, a

7    Colorado corporation, and at all times hereinafter mentioned, an employer whose employees

8    are engaged throughout this county, the State of California.

9        7.    BELFOR ENVIRONMENTAL, INC. was and is, upon information and belief, a

10   Colorado corporation, and at all times hereinafter mentioned, an employer whose employees

11   are engaged throughout this county, the State of California.

12       8.    OAKWOOD CONSTRUCTION AND RESTORATION SERVICES, INC. was

13   and is, upon information and belief, a California corporation, and at all times hereinafter

14   mentioned, an employer whose employees are engaged throughout this county, the State of

15   California.

16       9.    1 800 WATER DAMAGE NORTH AMERICA, LLC was and is, upon

17   information and belief, a Delaware limited liability company, and at all times hereinafter

18   mentioned, an employer whose employees are engaged throughout this county, the State of

19   California.

20       10.   Plaintiff is unaware of the true names or capacities of the Defendants sued herein

21   under the fictitious names DOES 1 through 10, but will seek leave of this Court to amend the

22   complaint and serve such fictitiously named Defendants once their names and capacities

23   become known.

24       11.   Plaintiff is informed and believes, and thereon alleges, that DOES 1 through 10

25   were the partners, agents, owners, or managers BELFOR USA GROUP, INC.; BELFOR

26   ENVIRONMENTAL, INC.; OAKWOOD CONSTRUCTION AND RESTORATION

27   SERVICES, INC.; and 1 800 WATER DAMAGE NORTH AMERICA, LLC, at all relevant

28   times.

12.     Plaintiff is informed and believes, and thereon alleges, that each and all of the acts and omissions alleged herein was performed by, or is attributable to, BELFOR USA GROUP, INC.; BELFOR ENVIRONMENTAL, INC.; OAKWOOD CONSTRUCTION AND RESTORATION SERVICES, INC.; 1 800 WATER DAMAGE NORTH AMERICA, LLC; and/or DOES 1 through 10 (collectively, "Defendants" or "BELFOR"), each acting as the agent, employee, alter ego, and/or joint venturer of, or working in concert with, each of the other co-Defendants and was acting within the course and scope of such agency, employment, joint venture, or concerted activity with legal authority to act on the others' behalf.  The acts of any and all Defendants were in accordance with, and represent, the official policy of Defendants.

13.     At all relevant times, Defendants, and each of them, ratified each and every act or omission complained of herein.  At all relevant times, Defendants, and each of them, aided and abetted the acts and omissions of each and all the other Defendants in proximately causing the damages herein alleged.

14.     Plaintiff is informed and believes, and thereon alleges, that each of said Defendants is in some manner intentionally, negligently, or otherwise responsible for the acts, omissions, occurrences, and transactions alleged herein.

15.     Under California law, Defendants are jointly and severally liable as employers for the violations alleged herein because they have each exercised sufficient control over the wages, hours, working conditions, and employment status of Plaintiff and class members.  Each Defendant had the power to hire and fire Plaintiff and class members, supervised and controlled their work schedule and/or conditions of employment, determined their rate of pay, and maintained their employment records.  Defendants suffered or permitted Plaintiff and class members to work and/or "engaged" Plaintiff and class members so as to create a common-law employment relationship.  As joint employers of Plaintiff and class members, Defendants are jointly and severally liable for the civil penalties and all other relief available to Plaintiff and class members under the law.

16.     Plaintiff is informed and believes, and thereon alleges, that at all relevant times, Defendants, and each of them, have acted as joint employers with respect to Plaintiff and class

FIRST AMENDED CLASS ACTION COMPLAINT

members because Defendants have:

      (a)    jointly exercised meaningful control over the work performed by Plaintiff and class members;

      (b)    jointly exercised meaningful control over Plaintiff's and class members' wages, hours, and working conditions, including the quantity, quality standards, speed, scheduling, and operative details of the tasks performed by Plaintiff and class members;

      (c)    jointly required that Plaintiff and class members perform work which is an integral part of Defendants' businesses; and

      (d)    jointly exercised control over Plaintiff and class members as a matter of economic reality in that Plaintiff and class members were dependent on Defendants, who shared the power to set the wages of Plaintiff and class members and determined their working conditions, and who jointly reaped the benefits from the underpayment of their wages and noncompliance with other statutory provisions governing their employment.

17.    Plaintiff is informed and believes, and thereon alleges, that at all relevant times there has existed a unity of interest and ownership between Defendants such that any individuality and separateness between the entities has ceased.

18.    BELFOR USA GROUP, INC.; BELFOR ENVIRONMENTAL, INC.; OAKWOOD CONSTRUCTION AND RESTORATION SERVICES, INC.; 1 800 WATER DAMAGE NORTH AMERICA, LLC; and DOES 1 through 10 are therefore alter egos of each other.

19.    Adherence to the fiction of the separate existence of Defendants would permit an abuse of the corporate privilege, and would promote injustice by protecting Defendants from liability for the wrongful acts committed by them under the name BELFOR.

20.    Plaintiff further alleges, upon information and belief, that Defendants BELFOR USA GROUP, INC.; BELFOR ENVIRONMENTAL, INC.; OAKWOOD CONSTRUCTION

AND RESTORATION SERVICES, INC.; and 1 800 WATER DAMAGE NORTH AMERICA, LLC are alter egos of each other for the following reasons:

(a) On the California Secretary of State's website (https://businesssearch.sos.ca.gov/), BELFOR USA GROUP, INC.; BELFOR ENVIRONMENTAL, INC.; OAKWOOD CONSTRUCTION AND RESTORATION SERVICES, INC.; and 1 800 WATER DAMAGE NORTH AMERICA, LLC have the same entity address and mailing address, which is "185 OAKLAND AVE, STE 150, BIRMINGHAM, MI 48009";

(b) According to the most recent "Statement of Information" forms filed with the California Secretary of State, BELFOR USA GROUP, INC.; BELFOR ENVIRONMENTAL, INC.; OAKWOOD CONSTRUCTION AND RESTORATION SERVICES, INC.; and 1 800 WATER DAMAGE NORTH AMERICA, LLC share common officers and/or directors, including Director and Chief Executive Officer, Sheldon Yellen, and Secretary, Michael Yellen;

(c) On information and belief, BELFOR USA GROUP, INC.; BELFOR ENVIRONMENTAL, INC.; OAKWOOD CONSTRUCTION AND RESTORATION SERVICES, INC.; and 1 800 WATER DAMAGE NORTH AMERICA, LLC share the same agent for service of process, "CT CORPORATION SYSTEM (C0168406)"; and

(d) On information and belief, BELFOR USA GROUP, INC.; BELFOR ENVIRONMENTAL, INC.; OAKWOOD CONSTRUCTION AND RESTORATION SERVICES, INC.; and 1 800 WATER DAMAGE NORTH AMERICA, LLC utilize the same standardized employment forms and issue the same employment policies.

//

//

1

## GENERAL ALLEGATIONS

2        21.    Defendants are a provider of property recovery and restoration services, for the

3  purpose of restoring structures damaged as a result of fires, floods, and natural disasters.  Upon

4  information and belief, Defendants maintain a single, centralized Human Resources ("HR")

5  department at their company headquarters in Birmingham, Michigan, which is responsible for

6  the recruiting and hiring of new employees, and communicating and implementing Defendants'

7  company-wide policies, including timekeeping policies and meal and rest period policies, to

8  employees throughout California.

9        22.    In particular, Plaintiff and class members, on information and belief, received

10  the same standardized documents and/or written policies.  Upon information and belief, the

11  usage of standardized documents and/or written policies, including new-hire documents,

12  indicate that Defendants dictated policies at the corporate level and implemented them

13  company-wide, regardless of their employees' assigned locations or positions.    Upon

14  information and belief, Defendants set forth uniform policies and procedures in several

15  documents provided at an employee's time of hire.

16        23.    Upon information and belief, Defendants maintain a centralized Payroll

17  department at their company headquarters in Birmingham, Michigan, which processes payroll

18  for all non-exempt, hourly paid employees working for Defendants at their various locations

19  and jobsites in California, including Plaintiff and class members.  Based upon information and

20  belief, Defendants issue the same formatted wage statements to all non-exempt, hourly paid

21  employees in California, irrespective of their work locations.  Upon information and belief,

22  Defendants process payroll for departing employees in the same manner throughout the State

23  of California, regardless of the manner in which each employee's employment ends.

24        24.    Defendants continue to employ non-exempt or hourly paid employees in

25  California.

26        25.    Plaintiff is informed and believes, and thereon alleges, that at all times herein

27  mentioned, Defendants were advised by skilled lawyers and other professionals, employees and

28  advisors knowledgeable about federal and California labor and wage law, employment and

personnel practices, and about the requirements of federal and California law.

26.     Plaintiff is informed and believes, and thereon alleges, that Plaintiff and class members were not paid for all hours worked because all hours worked were not recorded.

27.     Plaintiff is informed and believes, and thereon alleges, that Defendants knew or should have known that Plaintiff and class members were entitled to receive certain wages for overtime compensation and that they were not receiving certain wages for overtime compensation.

28.     Plaintiff is informed and believes, and thereon alleges, that Defendants knew or should have known that Plaintiff and class members were entitled to receive at least minimum wages for compensation and that they were not receiving at least minimum wages for work that was required to be done off-the-clock.  In violation of the Fair Labor Standards Act and California Labor Code, Plaintiff and class members were not paid at least minimum wages for work done off-the-clock.

29.     Plaintiff is informed and believes, and thereon alleges, that Defendants knew or should have known that Plaintiff and class members were entitled to meal periods in accordance with the California Labor Code and applicable IWC Wage Order or payment of one (1) additional hour of pay at their regular rates of pay when they were not provided with timely, uninterrupted, thirty (30) minute meal periods and that Plaintiff and class members were not provided with all meal periods or payment of one (1) additional hour of pay at their regular rates of pay when they did not receive a timely, uninterrupted, thirty (30) minute meal period.

30.     Plaintiff is informed and believes, and thereon alleges, that Defendants knew or should have known that Plaintiff and class members were entitled to rest periods in accordance with the California Labor Code and applicable IWC Wage Order or payment of one (1) additional hour of pay at their regular rates of pay when they were not authorized and permitted to take a compliant rest period.  In violation of the California Labor Code, Plaintiff and class members were not authorized and permitted to take compliant rest periods, nor did Defendants provide Plaintiff and class members with payment of one (1) additional hour of pay at their regular rates of pay when they were not authorized and permitted to take a compliant rest period.

31.    Plaintiff is informed and believes, and thereon alleges, that Defendants knew or should have known that Plaintiff and class members were entitled to receive complete and accurate wage statements in accordance with California law.  In violation of the California Labor Code, Plaintiff and class members were not provided complete and accurate wage statements.

32.    Plaintiff is informed and believes, and thereon alleges, that Defendants knew or should have known that they had a duty to maintain accurate and complete payroll records in accordance with the California Labor Code and applicable IWC Wage Order, but willfully, knowingly, and intentionally failed to do so.

33.    Plaintiff is informed and believes, and thereon alleges, that Defendants knew or should have known that Plaintiff and class members were entitled to timely payment of all wages earned upon termination of employment.  In violation of the California Labor Code, Plaintiff and class members did not receive payment of all wages due, including, but not limited to, overtime wages, minimum wages, meal and rest period premiums, and/or reporting time pay, within permissible time periods.

34.    Plaintiff is informed and believes, and thereon alleges, that Defendants knew or should have known that Plaintiff and class members were entitled to timely payment of wages during their employment.  In violation of the California Labor Code, Plaintiff and class members did not receive payment of all wages, including, but not limited to, overtime wages, minimum wages, meal and rest period premiums, and/or reporting time pay, within permissible time periods.

35.    Plaintiff is informed and believes, and thereon alleges, that at all times herein mentioned, that Defendants knew or should have known that they had a duty to cover the costs and expenses Plaintiff and class members incurred obtaining mandatory physical examinations and/or drug tests, but failed to do so.

36.    Plaintiff is informed and believes, and thereon alleges, that Defendants knew or should have known that they were not permitted to compel or coerce Plaintiff and class members to patronize their business in the purchase of anything of value, but did in fact require Plaintiff

1    and class members to purchase various items, including mobile devices, from Defendants.

2        37.    Plaintiff is informed and believes, and thereon alleges, that Defendants knew or

3    should have known that Plaintiff and class members were entitled to one day's rest in seven.  In

4    violation of the California Labor Code, Defendants required Plaintiff and class members to work

5    more than six consecutive days without a day of rest, where the total hours worked exceeded 30

6    hours in any week or six hours in any one day thereof.

7        38.    Plaintiff is informed and believes, and thereon alleges, that Defendants knew or

8    should have known that Plaintiff and class members were entitled to receive all reporting time

9    pay when Defendants required Plaintiff and class members to report to work but put them to

10   work for less than half of their usual or scheduled shift.  In violation of the California Labor

11   Code and applicable IWC Wage Order, Plaintiff and class members were not paid all reporting

12   time pay.

13       39.    Plaintiff is informed and believes, and thereon alleges, that Defendants knew or

14   should have known that Plaintiff and class members were entitled to a sufficient number of

15   toilet facilities to use at the workplace.  In violation of the California Labor Code and the

16   standards adopted by the Occupational Safety and Health Standards Board, Defendants failed

17   to provide Plaintiff and class members with a toilet facility.

18       40.    Plaintiff is informed and believes, and thereon alleges, that Defendants knew or

19   should have known that Plaintiff and class members were entitled to receive full reimbursement

20   for all business-related expenses and costs they incurred during the course and scope of their

21   employment and that they did not receive full reimbursement of applicable business-related

22   expenses and costs incurred.

23       41.    Plaintiff is informed and believes, and thereon alleges, that at all times herein

24   mentioned, Defendants knew or should have known that Defendants had a duty to provide

25   Plaintiff and class members with written notice of the material terms of their employment with

26   Defendants as required by the California Wage Theft Prevention Act, but failed to do so.

27       42.    Plaintiff is informed and believes, and thereon alleges, that at all times herein

28   mentioned, Defendants knew or should have known that they had a duty to compensate Plaintiff

1  and class members for all hours worked, and that Defendants had the financial ability to pay

2  such compensation, but willfully, knowingly, and intentionally failed to do so, and falsely

3  represented to Plaintiff and class members that they were properly denied wages, all in order to

4  increase Defendants' profits.

5  **PAGA REPRESENTATIVE ALLEGATIONS**

6      43.    At all times herein set forth, PAGA provides that any provision of law under the

7  Labor Code and applicable IWC Wage Order that provides for a civil penalty to be assessed and

8  collected by the LWDA for violations of the California Labor Code and applicable IWC Wage

9  Order may, as an alternative, be recovered by aggrieved employees in a civil action brought on

10  behalf of themselves and other current or former employees pursuant to procedures outlined in

11  California Labor Code section 2699.3.

12      44.    PAGA defines an "aggrieved employee" in Labor Code section 2699(c) as "any

13  person who was employed by the alleged violator and against whom one or more of the alleged

14  violations was committed."

15      45.    Plaintiff and other current and former employees of Defendants are "aggrieved

16  employees" as defined by Labor Code section 2699(c) in that they are all Defendants' current

17  or former employees and one or more of the alleged violations were committed against them.

18      46.    Pursuant to California Labor Code sections 2699.3 and 2699.5, an aggrieved

19  employee, including Plaintiff, may pursue a civil action arising under PAGA after the following

20  requirements have been met:

21      (a)    The aggrieved employee or representative shall give written notice by

22      online filing with the LWDA and by certified mail to the employer of the

23      specific provisions of the California Labor Code alleged to have been

24      violated, including the facts and theories to support the alleged violation.

25      (b)    An aggrieved employee's notice filed with the LWDA pursuant to

26      2699.3(a) and any employer response to that notice shall be accompanied

27      by a filing fee of seventy-five dollars ($75).

28      (c)    The LWDA shall notify the employer and the aggrieved employee or

representative by certified mail that it does not intend to investigate the alleged violation ("LWDA's Notice") within sixty (60) calendar days of the postmark date of the aggrieved employee's notice.  Upon receipt of the LWDA Notice, or if no LWDA Notice is provided within sixty-five (65) calendar days of the postmark date of the aggrieved employee's notice, the aggrieved employee may commence a civil action pursuant to California Labor Code section 2699 to recover civil penalties.

47.    Pursuant to California Labor Code sections 2699.3(c), aggrieved employees, through Plaintiff, may pursue a civil action arising under PAGA for violations of any provision other than those listed in Section 2699.5 after the following requirements have been met:

(a)    The aggrieved employee or representative shall give written notice by online filing with the LWDA and by certified mail to the employer of the specific provisions of the California Labor Code alleged to have been violated (other than those listed in Section 2699.5), including the facts and theories to support the alleged violation.

(b)    An aggrieved employee's notice filed with the LWDA pursuant to 2699.3(c) and any employer response to that notice shall be accompanied by a filing fee of seventy-five dollars ($75).

(c)    The employer may cure the alleged violation within thirty-three (33) calendar days of the postmark date of the notice sent by the aggrieved employee or representative.  The employer shall give written notice within that period of time by certified mail to the aggrieved employee or representative and by online filing with the LWDA if the alleged violation is cured, including a description of actions taken, and no civil action pursuant to Section 2699 may commence.  If the alleged violation is not cured within the 33-day period, the aggrieved employee may commence a civil action pursuant to Section 2699.

48.    On March 8, 2022, Plaintiff provided written notice by online filing to the LWDA

FIRST AMENDED CLASS ACTION COMPLAINT

and by certified mail to Defendants of the specific provisions of the California Labor Code alleged to have been violated, including facts and theories to support the alleged violations, in accordance with California Labor Code section 2699.3.    Plaintiff's written notice was accompanied with the applicable filing fee of seventy-five dollars ($75).  The LWDA PAGA Administrator confirmed receipt of Plaintiff's written notice and assigned Plaintiff PAGA Case Number LWDA-CM-872363-22.  A true and correct copy of Plaintiff's written notice to the LWDA and Defendants is attached hereto as "Exhibit 1."

49.    As of the filing date of this complaint, over 65 days have passed since Plaintiff sent the notice described above to the LWDA, and the LWDA has not responded that it intends to investigate Plaintiff's claims and Defendants have not cured the violations.

50.    Thus, Plaintiff has satisfied the administrative prerequisites under California Labor Code section 2699.3(a) and 2699.3(c) to recover civil penalties against Defendants for violations of California Labor Code sections 201, 202, 204, 222.5, 226(a), 226.7, 450, 510, 512(a), 516, 551, 552, 1174(d), 1182.12, 1194, 1197, 1197.1, 1198, 2350, 2802, and 2810.5.

51.    Labor Code section 558(a) provides "[a]ny employer or other person acting on behalf of an employer who violates, or causes to be violated, a section of this chapter or any provision regulating hours and days of work in any order of the Industrial Welfare Commission shall be subject to a civil penalty as follows: (1) For any initial violation, fifty dollars ($50) for each underpaid employee for each pay period for which the employee was underpaid. . . .  (2) For each subsequent violation, one hundred dollars ($100) for each underpaid employee for each pay period for which the employee was underpaid. . . ."  Labor Code section 558(c) provides "[t]he civil penalties provided for in this section are in addition to any other civil or criminal penalty provided by law."

52.    Defendants, at all times relevant to this complaint, were employers or persons acting on behalf of an employer(s) who violated Plaintiff's and other aggrieved employees' rights by violating various sections of the California Labor Code as set forth above.

53.    As set forth below, Defendants have violated numerous provisions of both the Labor Code sections regulating hours and days of work as well as the applicable IWC Wage

1  Order.

2      54.    Pursuant to PAGA, and in particular, California Labor Code sections 2699(a),

3  2699.3(a), 2699.3(c), and 2699.5, and section 558, Plaintiff, acting in the public interest as a

4  private attorney general, seeks assessment and collection of civil penalties for himself, all other

5  aggrieved employees, and the State of California against Defendants for violations of California

6  Labor Code sections 201, 202, 204, 222.5, 226(a), 226.7, 450, 510, 512(a), 516, 551, 552,

7  1174(d), 1182.12, 1194, 1197, 1197.1, 1198, 2350, 2802, and 2810.5.

8                          **CLASS ACTION ALLEGATIONS**

9      55.    Plaintiff brings this action on his own behalf, as well as on behalf of each and all

10  other persons similarly situated, and thus seeks class certification under Rule 23 of the Federal

11  Rules of Civil Procedure.

12      56.    Plaintiff brings the First Cause of Action under the Fair Labor Standards Act, 29

13  U.S.C. §§ 201, *et seq.* ("FLSA"), as a nationwide "opt-in" collective action pursuant to 29

14  U.S.C. § 216(b), on behalf of:

15          All non-exempt, hourly paid employees at any of Defendants'
           locations nationwide within three (3) years prior to the filing of
16          this complaint until the date of trial ("Collective Action Class").

17      57.    All other claims alleged herein arise under California law for which Plaintiff

18  seeks relief authorized by California law.

19      58.    Plaintiff's proposed class consists of and is defined as follows:

20          All persons who worked for Defendants as non-exempt, hourly
           paid employees in California, within four years prior to the filing
21          of the initial complaint until the date of trial ("Class").

22      59.    Plaintiff's proposed subclass consists of and is defined as follows:

23          All persons who worked for Defendants as non-exempt, hourly
           paid employees in California and who received at least one wage
24          statement within one (1) year prior to the filing of the initial
           complaint until the date of trial ("Subclass").
25
26      60.    Members of the Collective Action Class, Class, and Subclass are referred to

   herein as "class members."
27
28      61.    Plaintiff reserves the right to redefine the Collective Action Class, Class, and

1   Subclass and to add additional subclasses as appropriate based on further investigation,
2   discovery, and specific theories of liability.

3      62.   This action is brought and properly may be maintained as a class action pursuant
4   to the provisions of Federal Rules of Civil Procedure 23(a)(1)-(4) and 23(b)(1), (b)(2), or (b)(3)
5   and satisfies the requirements thereof.

6      63.   The membership of the entire Class is unknown to Plaintiff at this time; however,
7   the Class is estimated to be greater than one hundred (100) individuals who worked for
8   Defendants across California during the relevant period.  Thus, it is reasonable to presume that
9   the members of the class are so numerous that joinder of all members is impracticable.  The
10  disposition of their claims in a class action will provide substantial benefits to the parties and
11  the Court.

12     64.   Plaintiff's claims are typical of those of the class members, because Plaintiff
13  suffered the violations set forth in this First Amended Complaint.

14     65.   Plaintiff will adequately protect the interests of class members.  Plaintiff has no
15  interests that are adverse to or conflict with class members and is committed to the vigorous
16  prosecution of this action.  To that end, Plaintiff has retained counsel who is competent and
17  experienced in handling class actions on behalf of employees.

18     66.   A class action is superior to all other available methods for the fair and efficient
19  adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as
20  the amount suffered by individual class members may be relatively small, the expense and
21  burden of individual litigation make it impossible for members of the Class to individually
22  redress the wrongs done to them.  There will be no difficulty in the management of this case as
23  a class action.

24     67.   There are common questions of law and fact as to class members that
25  predominate over questions affecting only individual members, including, but not limited to:

26         (a)   Whether Defendants required Plaintiff and class members to work over
27              eight (8) hours per day, over twelve (12) hours per day, or over forty (40)
28              hours per week and failed to pay all legally required overtime

FIRST AMENDED CLASS ACTION COMPLAINT

1  compensation to Plaintiff, Collective Action class members, and class

2  members;

3  (b)  Whether Defendants failed to pay Plaintiff, Collective Action class

4  members, and class members at least minimum wages for all hours

5  worked;

6  (c)  Whether Defendants failed to provide Plaintiff and class members with

7  meal periods;

8  (d)  Whether Defendants failed to authorize and permit Plaintiff and class

9  members to take rest periods;

10  (e)  Whether Defendants provided Plaintiff and class members with complete

11  and accurate wage statements as required by California Labor Code

12  section 226(a);

13  (f)  Whether Defendants maintained accurate payroll records as required by

14  California Labor Code section 1174(d);

15  (g)  Whether Defendants failed to pay earned overtime wages, minimum

16  wages, meal and rest period premiums, and/or reporting time pay due to

17  Plaintiff and class members upon their discharge;

18  (h)  Whether Defendants failed timely to pay overtime wages, minimum

19  wages, meal and rest period premiums, and/or reporting time pay due to

20  Plaintiff and class members during their employment;

21  (i)  Whether Defendants failed to pay Plaintiff and class members for the

22  costs of mandatory physical examinations and/or drug testing;

23  (j)  Whether Defendants compelled and/or coerced Plaintiff and class

24  members to patronize their business;

25  (k)  Whether Defendants failed to provide Plaintiff and class members one

26  day's rest in seven;

27  (l)  Whether Defendants required Plaintiff and class members to report to

28  work, but failed to provide them with work or provided them with less

than half of their usual or scheduled day's work, without properly compensating them as required by California Code of Regulations, Title 8, section 11160, subsection 5;

(m)   Whether Defendants failed to provide a sufficient number of toilet facilities to Plaintiff and class members;

(n)   Whether Defendants failed to reimburse Plaintiff and class members for necessary and required business-related expenditures and/or losses incurred by them in the scope of their employment;

(o)   Whether Defendants failed to provide written notice of information material to Plaintiff's and class members' employment with Defendants;

(p)   Whether Defendants engaged in unlawful and unfair business practices in violation of California Business & Professions Code sections 17200, *et seq.*; and

(q)   The appropriate amount of damages, restitution, or monetary penalties resulting from Defendants' violations of California law.

## FIRST CAUSE OF ACTION

### Violation of Fair Labor Standards Act – 29 U.S.C. §§ 201, *et seq.*

**(On Behalf of Plaintiff and Collective Action Class Members Against all Defendants)**

68.   Plaintiff incorporates by reference and re-alleges as if fully stated herein each allegation set forth above.

69.   Defendants are employers engaged in interstate commerce and/or the production of goods for commerce, within the meaning of the FLSA.

70.   Defendants employed and/or continue to employ Plaintiff and Collective Action class members within the meaning of the FLSA.

71.   Plaintiff has expressly consented in writing to be a party to this action, pursuant to 29 U.S.C. § 216(b).

72.   Pursuant to the FLSA, Defendants were required to compensate Plaintiff and Collective Action class members an amount at least equal to the applicable minimum wage for

all hours worked, and for overtime at a rate of one and one-half times the regular rate of pay for work performed in excess of 40 hours in a workweek.  29 U.S.C. §§ 206(a), 207(a).

73.    During the relevant time period, Plaintiff and Collective Action class members worked in excess of 40 hours in a workweek.

74.    As alleged in greater detail below, Defendants required Plaintiff and Collective Action class members to regularly work off-the-clock before and after scheduled shifts, during unpaid meal periods, and for mandatory drug tests and/or physical examinations.  As a result, Defendants failed to pay Plaintiff and Collective Action class members minimum wages for all hours worked and failed to pay overtime compensation for all hours worked in excess of 40 hours in a workweek.

75.    First, during the relevant time period, Defendants required Plaintiff and Collective Action class members to travel to distant jobsites and assignments, but did not compensate them for their time spent traveling to and from these locations.  Although Plaintiff and Collective Action class members typically met at Defendants' warehouse(s) or office(s) to ride in company-provided vehicles or transportation to client locations, Defendants would also require Plaintiff and Collective Action class members to drive their personal vehicles to jobsites for certain clients or when there was an insufficient number of company vehicles available to transport employees.  For example, Defendants sometimes required Plaintiff to drive for approximately 40 minutes or more from his home in Fresno, California, to various jobsites, including those in Auberry, California.  However, Plaintiff and Collective Action class members were not allowed to clock in until arriving at the assigned jobsite for the start of their scheduled shifts, and thus were not paid for any time spent traveling to or from the distant jobsite.  Thus, Plaintiff and Collective Action class members were not compensated for this travel time, despite being under the direction and control of Defendants.

76.    Second, during the relevant time period, Defendants had a company-wide policy and/or practice of requiring Plaintiff and Collective Action class members to complete work-related duties while off-the-clock, such as responding to communications on their personal mobile devices, including cellular phones.  For example, at least once per week, Plaintiff was

required to respond to phone communications from Defendants' management regarding work-related duties, such as obtaining instructions for his daily assignments, before arriving at Defendants' facility and before he was permitted to clock in for his scheduled shift. Additionally, about once per week, Defendants' management would call Plaintiff after he had clocked out at the end of his scheduled shift, to discuss the status of various restoration projects. Defendants knew or should have known that Plaintiff and Collective Action class members were being made to respond to management while off-the-clock in order to meet Defendants' expectations, but failed to compensate them for this time worked.

77.    Third, Defendants had, and continue to have, a company-wide policy of understaffing, such that there were too few employees on duty to handle the heavy workload, meet insurance inspection deadlines, and provide uninterrupted meal period coverage to permit employees to take compliant meal periods.  Because Defendants understaffed their jobsites, there was no one available to relieve employees needing meal period coverage, and Plaintiff and Collective Action class members were not always afforded uninterrupted thirty (30) minute meal periods during shifts when they were entitled to receive a meal period.  Moreover, Defendants had a practice of failing to schedule meal periods and/or adhere to a schedule for meal periods, which further caused Plaintiff and Collective Action class members to not be relieved of their duties for compliant meal periods.  For example, approximately once per month, Plaintiff was required to work through his meal periods, in order to complete his assigned tasks.  In conjunction with understaffing their jobsites, Defendants had a company-wide practice or policy of requiring that Plaintiff and Collective Action class members carry and respond to their company-issued cellular phones at all times, including during meal periods.  For example, approximately three (3) times per week, Plaintiff would have his meal periods interrupted and/or shortened to discuss work-related tasks with Defendants' managers on his company-issued cellular phone or in-person.  Defendants knew or should have known that Plaintiff and Collective Action class members were performing work while off-the-clock, during their meal periods, but failed to compensate them for this time.

78.    Furthermore, on information and belief, because Defendants frowned upon

employees accruing meal period penalties, Defendants' management pressured Plaintiff and Collective Action class members to clock out for meal periods regardless of whether they had received a compliant meal period or not, in order to strictly limit the meal penalties that would need to be paid by Defendants.  For example, Plaintiff was pressured by Defendants' managers, including General Manager Gerry Randrup, Project Manager Alex Laparra, and his supervisor Don Cable, to clock out and record compliant meal periods on shifts when he had not, in fact, received a compliant meal period.  Thus, Defendants did not record all hours worked during meal periods, and Plaintiff and Collective Action class members performed work during meal periods for which they were not paid.

79.    Fourth, Defendants maintained and implemented a company-wide policy of requiring all employees to travel to a medical facility on their own time and using their own personal vehicles to undergo mandatory drug testing and/or physical examinations.  At all times, Defendants were in control of scheduling the time period for the testing and/or physical examinations, selecting the provider or facility where the testing and/or physical examinations were to take place, and determining the scope of the testing and/or physical examinations.  For example, Defendants gave Plaintiff strict instructions to obtain drug testing and a physical examination, and Plaintiff underwent the testing and examination for the sole benefit of Defendants.  Plaintiff followed Defendants' instructions, spent time traveling to and from Defendants' designated medical facility, Concentra Urgent Care in Fresno, California, and spent additional time waiting at the medical facility and undergoing the requisite drug testing and/or physical examination.  However, Defendants did not compensate Plaintiff and Collective Action class members for the time they spent traveling to and from the medical facilities and undergoing the mandatory drug testing and/or physical examinations.

80.    Defendants knew or should have known that as a result of these company-wide practices and/or policies, Plaintiff and Collective Action class members were performing their assigned duties off-the-clock before or after their shifts and during their meal periods, and were suffered or permitted to perform work for which they were not paid.  Defendants did not pay minimum wages for off-the-clock hours that Plaintiff and Collective Action class members

worked through; and because Plaintiff and Collective Action class members worked forty (40) hours a week or more, some of this off-the-clock work qualified for overtime premium pay. Therefore, Plaintiff and Collective Action class members were not paid minimum wages and/or overtime wages for all of the hours they actually worked.

81.     The FLSA also imposes a record-keeping requirement on employers, including the obligation to keep accurate records of all hours worked by employees.  Defendants have knowingly and willfully failed and continues to willfully fail to record, report, and/or preserve accurate records of all hours worked by Plaintiff and Collective Action class members.  By failing to record, report, and/or preserve records of all hours worked by Plaintiff and Collective Action class members, Defendants have violated, and continue to violate, the FLSA, 29 U.S.C. §§ 201, *et seq.*

82.     Based on the foregoing and allegations herein, Defendants have violated 29 U.S.C. §§ 201, *et seq.*, including 29 U.S.C. §§ 206(a), 207(a) and 215(a).

83.     Defendants' conduct, as alleged herein, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

84.     Plaintiff, on behalf of himself and Collective Action class members, seeks to recover their respective unpaid wages, overtime compensation, liquidated damages, interest, attorneys' fees and costs pursuant to 29 U.S.C. § 216(b), and any other relief the Court deems just and proper.

**SECOND CAUSE OF ACTION**

**Violation of California Labor Code §§ 510 and 1198—Unpaid Overtime**

**(Against all Defendants)**

85.     Plaintiff incorporates by reference and re-alleges as if fully stated herein each and every allegation set forth above.

86.     Labor Code section 1198 makes it illegal to employ an employee under conditions of labor that are prohibited by the applicable wage order.  California Labor Code section 1198 requires that ". . . the standard conditions of labor fixed by the commission shall be the . . . standard conditions of labor for employees.  The employment of any employee . . .

1    under conditions of labor prohibited by the order is unlawful."

2        87.    California Labor Code section 1198 and the applicable IWC Wage Order provide

3    that it is unlawful to employ persons without compensating them at a rate of pay either time-

4    and-one-half or two-times that person's regular rate of pay, depending on the number of hours

5    worked by the person on a daily or weekly basis.

6        88.    Specifically, the applicable IWC Wage Order provides that Defendants are and

7    were required to pay Plaintiff and class members working more than eight (8) hours in a day or

8    more than forty (40) hours in a workweek, at the rate of time and one-half (1 ½) for all hours

9    worked in excess of eight (8) hours in a day or more than forty (40) hours in a workweek.

10        89.    The applicable IWC Wage Order further provides that Defendants are and were

11    required to pay Plaintiff and class members working more than twelve (12) hours in a day,

12    overtime compensation at a rate of two (2) times their regular rate of pay.  An employee's

13    regular rate of pay includes all remuneration for employment paid to, or on behalf of, the

14    employee, including nondiscretionary bonuses and incentive pay.

15        90.    California Labor Code section 510 codifies the right to overtime compensation

16    at one and one-half (1 ½) times the regular rate of pay for hours worked in excess of eight (8)

17    hours in a day or forty (40) hours in a week or for the first eight (8) hours worked on the seventh

18    (7th) day of work, and to overtime compensation at twice the employee's regular rate of pay for

19    hours worked in excess of twelve (12) hours in a day or in excess of eight (8) hours in a day on

20    the seventh (7th) day of work.

21        91.    During the relevant time period, Defendants willfully failed to pay all overtime

22    wages owed to Plaintiff and class members.  During the relevant time period, Plaintiff and class

23    members were not paid overtime premiums for all of the hours they worked in excess of eight

24    (8) hours in a day or in excess of forty (40) hours in a week, because all hours worked were not

25    recorded.

26        92.    First, during the relevant period, Defendants had a company-wide rotating "on-

27    call" policy, whereby they scheduled Plaintiff and class members to work an "on-call" week

28    once a month.  During an "on-call" week, Plaintiff and class members had to be available 24

hours per day and seven (7) days per week, and report to work upon receiving a call from Defendants notifying them that they were needed. While "on-call," Plaintiff and class members would be required to respond to service requests from clients and customers that had come through Defendants' 24-Hour Emergency Hotline. Defendants issued company cellular phones to Plaintiff and class members, which they were required to keep on their persons and respond to immediately while working an "on-call" week. When scheduled to be "on-call," Plaintiff and class members were, in essence, on controlled standby for Defendants because they could not use that time freely for their own purposes and were forced to put their lives on hold. For example, Plaintiff refrained from making plans altogether while "on-call" because he knew that he had to drop whatever he was doing at a moment's notice if he received a call from Defendants to report to work. However, Defendants failed to pay Plaintiff and class members for the time during which they were waiting to receive a call from Defendants and unable to use their time for their own purposes.

93.    Second, during the relevant time period, Defendants required Plaintiff and class members to travel to distant jobsites and assignments, but did not compensate them for their time spent traveling to and from these locations. Although Plaintiff and class members typically met at Defendants' warehouse(s) or office(s) to ride in company-provided vehicles or transportation to client locations, Defendants would also require Plaintiff and class members to drive their personal vehicles to jobsites for certain clients or when there was an insufficient number of company vehicles available to transport employees. For example, Defendants sometimes required Plaintiff to drive for approximately 40 minutes or more from his home in Fresno, California, to various jobsites, including those in Auberry, California. However, Plaintiff and class members were not allowed to clock in until arriving at the assigned jobsite for the start of their scheduled shifts, and thus were not paid for any time spent traveling to or from the distant jobsite. Thus, Plaintiff and class members were not compensated for this travel time, despite being under the direction and control of Defendants.

94.    Third, during the relevant time period, Defendants had a company-wide policy and/or practice of requiring Plaintiff and class members to complete work-related duties while

off-the-clock, such as responding to communications on their personal mobile devices, including cellular phones. For example, at least once per week, Plaintiff was required to respond to phone communications from Defendants' management regarding work-related duties, such as obtaining instructions for his daily assignments, before arriving at Defendants' facility and before he was permitted to clock in for his scheduled shift. Additionally, about once per week, Defendants' management would call Plaintiff after he had clocked out at the end of his scheduled shift, to discuss the status of various restoration projects. Defendants knew or should have known that Plaintiff and class members were being made to respond to management while off-the-clock in order to meet Defendants' expectations, but failed to compensate them for this time worked.

95.    Fourth, Defendants had, and continue to have, a company-wide policy of understaffing, such that there were too few employees on duty to handle the heavy workload, meet insurance inspection deadlines, and provide uninterrupted meal period coverage to permit employees to take compliant meal periods. Because Defendants understaffed their jobsites, there was no one available to relieve employees needing meal period coverage, and Plaintiff and class members were not always afforded uninterrupted thirty (30) minute meal periods during shifts when they were entitled to receive a meal period. Moreover, Defendants had a practice of failing to schedule meal periods and/or adhere to a schedule for meal periods, which further caused Plaintiff and class members to not be relieved of their duties for compliant meal periods. For example, approximately once per month, Plaintiff was required to work through his meal periods, in order to complete his assigned tasks. In conjunction with understaffing their jobsites, Defendants had a company-wide practice or policy of requiring that Plaintiff and class members carry and respond to their company-issued cellular phones at all times, including during meal periods. For example, approximately three (3) times per week, Plaintiff would have his meal periods interrupted and/or shortened to discuss work-related tasks with Defendants' managers on his company-issued cellular phone or in-person. Defendants knew or should have known that Plaintiff and class members were performing work while off-the-clock, during their meal periods, but failed to compensate them for this time.

FIRST AMENDED CLASS ACTION COMPLAINT

96.    Furthermore, on information and belief, because Defendants frowned upon employees accruing meal period penalties, Defendants' management pressured Plaintiff and class members to clock out for meal periods regardless of whether they had received a compliant meal period or not, in order to strictly limit the meal penalties that would need to be paid by Defendants.  For example, Plaintiff was pressured by Defendants' managers, including General Manager Gerry Randrup, Project Manager Alex Laparra, and his supervisor Don Cable, to clock out and record compliant meal periods on shifts when he had not, in fact, received a compliant meal period.  Thus, Defendants did not record all hours worked during meal periods, and Plaintiff and class members performed work during meal periods for which they were not paid.

97.    Defendants knew or should have known that as a result of these company-wide practices and/or policies, Plaintiff and class members were performing their assigned duties off-the-clock and/or during meal periods, and were suffered or permitted to perform work for which they were not paid.  Because Plaintiff and class members worked shifts of eight (8) hours or more a day or forty (40) hours a week or more, some of this off-the-clock work qualified for overtime premium pay.  Therefore, Plaintiff and class members were not paid overtime wages for all of the overtime hours they actually worked.

98.    Defendants' failure to pay Plaintiff and class members the balance of overtime compensation as required by California law, violates the provisions of California Labor Code sections 510 and 1198.  Pursuant to California Labor Code section 1194, Plaintiff and class members are entitled to recover their unpaid overtime compensation, as well as interest, costs, and attorneys' fees.

**THIRD CAUSE OF ACTION**

**Violation of California Labor Code §§ 1182.12, 1194, 1197, 1197.1, and 1198—Unpaid**

**Minimum Wages**

**(Against all Defendants)**

99.    Plaintiff incorporates by reference and re-alleges as if fully stated herein each and every allegation set forth above.

100.    At all relevant times, California Labor Code sections 1182.12, 1194, 1197,

1197.1, and 1198 provide that the minimum wage for employees fixed by the IWC is the minimum wage to be paid to employees, and the payment of a wage less than the minimum so fixed is unlawful.  Compensable work time is defined in IWC Wage Order No. 16-2001 as "the time during which an employee is subject to the control of an employer, and includes all the time the employee is suffered or permitted to work, whether or not required to do so."  Cal. Code. Regs. tit. 8, § 11160(2)(J) (defining "Hours Worked").

101.    As set forth above, Defendants systematically, and on a company-wide basis, required Plaintiff and class members to work "on-call" shifts during which they had to put their lives on hold and were restricted from using that time freely for their own purposes. Plaintiff and class members were required to be "first on-call" for approximately one week a month. When "first on-call," Plaintiff and class members would receive telephone calls to their personal cell phones which had to be charged and on ring at all times during their assigned "on-call" week. Plaintiff and class members were required to respond to any requests for assistance within an hour although they were sometimes informed that they were required to arrive at the site in less than one hour. The timing and frequency of requests for assistance was unpredictable during "first on-call" weeks and sometimes came during the middle of the night when Plaintiff and class members were sleeping. When this happened, they were still required to answer when called and arrive within the hour or earlier if so instructed. Depending on the location of the emergency, the time of day and traffic, Plaintiff and class members would regularly need to race to the site, leaving them only minutes or seconds to gather themselves and their belongings before getting in their vehicles.  During "first on-call" weeks, Plaintiff and class members were prevented from making social plans, travelling more than a couple miles from their homes, going to the gym or church, drinking alcohol, etc. Defendant did not provide pagers to employees so, if they did leave their homes, they had to make sure their cell phones were charged and were within cellular service range and that they were prepared to directly drive to an emergency site if called.

102.    If Plaintiff or class members did not arrive to an emergency site within an hour, they were subject to written discipline. Plaintiff was sometimes able to trade his on-call shifts

1    with another employee to accommodate social commitments or personal business and
2    sometimes he was not. There were times Plaintiff would return home from first responding to
3    an emergency, receive another call and have to leave immediately again. Even though Plaintiff
4    and class members were subject to Defendants' control during an "on-call" shift, Defendants
5    did not pay Plaintiff and class members at least minimum wages for all hours that they were
6    suffered or permitted to work.

7        103.    Even outside of their "first on-call" weeks, Plaintiff and class members were
8    expected to have their personal cell phones charged and the ringers turned on in case they were
9    "second-called" to respond to emergencies. If they did not answer a "second on-call" request
10   for assistance, they would be verbally reprimanded. Approximately once a month, Plaintiff
11   would be working "second on-call" and Defendant would contact him to inform him that he was
12   "on stand-by" which then temporarily placed him "first on-call." When that happened, Plaintiff
13   typically was required to remain on stand-by for approximately as hour.  Sometimes Defendant
14   never called Plaintiff to respond to an emergency site after he was placed on "stand by" and
15   Plaintiff and class members were not paid for "stand by" time.

16       104.    In addition, as stated, Defendants systematically failed to pay Plaintiff and class
17   members for actual hours worked before and after scheduled shifts, including time spent
18   traveling to and from distant jobsites and time spent responding to work-related calls on their
19   personal mobile devices.  Further, as also stated above, due to Defendants' uniform practices of
20   understaffing while assigning heavy workloads/deadlines and requirement that employees carry
21   and respond to their company-issued cellular phones during unpaid meal periods, Plaintiff and
22   class members were impeded from taking all uninterrupted meal periods to which they were
23   entitled and were required to work off-the-clock.  Moreover, as stated, in order to prevent
24   employees from accruing meal period penalties, upon information and belief, Defendants'
25   management pressured employees to clock out for meal periods even when meal periods were
26   missed, short, and/or interrupted.  Thus, Defendants systematically failed to pay Plaintiff and
27   class members for actual hours worked during unpaid meal periods because these hours were
28   not always correctly recorded.

105.     Furthermore, Defendants maintained and implemented a company-wide policy of requiring all employees to travel to a medical facility on their own time and using their own personal vehicles to undergo mandatory drug testing and/or physical examinations.  At all times, Defendants were in control of scheduling the time period for the testing and/or physical examinations, selecting the provider or facility where the testing and/or physical examinations were to take place, and determining the scope of the testing and/or physical examinations.  For example, Defendants gave Plaintiff strict instructions to obtain drug testing and a physical examination, and Plaintiff underwent the testing and examination for the sole benefit of Defendants.  Plaintiff followed Defendants' instructions, spent time traveling to and from Defendants' designated medical facility, Concentra Urgent Care in Fresno, California, and spent additional time waiting at the medical facility and undergoing the requisite drug testing and/or physical examination.  However, Defendants did not compensate Plaintiff and class members for the time they spent traveling to and from the medical facilities and undergoing the mandatory drug testing and/or physical examinations.

106.     Thus, Defendants did not pay minimum wages for all hours worked by Plaintiff and class members.  To the extent that these off-the-clock hours did not qualify for overtime premium payment, Defendants did not pay at least minimum wages for those hours worked off-the-clock in violation of California Labor Code sections 1182.12, 1194, 1197, 1197.1, and 1198.

107.     Defendants' failure to pay Plaintiff and class members minimum wages violates California Labor Code sections 1182.12, 1194, 1197, 1197.1, and 1198.  Pursuant to California Labor Code section 1194.2, Plaintiff and class members are entitled to recover liquidated damages in an amount equal to the wages unlawfully unpaid and interest thereon.

## FOURTH CAUSE OF ACTION

**Violations of California Labor Code, §§ 226.7, 512(a), 516, and 1198—Meal Period Violations**

**(Against all Defendants)**

108.     Plaintiff incorporates by reference and re-alleges as if fully stated herein each and every allegation set forth above.

109.    At all relevant times herein set forth, California Labor Code section 512(a) provides that an employer may not require, cause, or permit an employee to work for a period of more than five (5) hours per day without providing the employee with a meal period of not less than thirty (30) minutes, except that if the total work period per day of the employee is not more than six (6) hours, the meal period may be waived by mutual consent of both the employer and the employee.  Under California law, first meal periods must start after no more than five hours.  *Brinker Rest. Corp. v. Superior Court*, 53 Cal. 4th 1004, 1041-1042 (2012).

110.    At all relevant times herein set forth, California Labor Code sections 226.7, 512(a), 516, and 1198 provide that no employer shall require an employee to work during any meal period mandated by an applicable order of the IWC.

111.    At all relevant times herein set forth, Labor Code sections 226.7 and 512(a), and the applicable IWC Wage Order also require employers to provide a second meal period of not less than thirty (30) minutes if an employee works over ten (10) hours per day or to pay an employee one (1) additional hour of pay at the employee's regular rate, except that if the total hours worked is no more than twelve (12) hours, the second meal period may be waived by mutual consent of the employer and the employee only if the first meal period was not waived.

112.    During the relevant time period, as stated, Defendants had, and continue to have, a company-wide policy and/or practice of understaffing their jobsites while assigning heavy workloads and insurance inspection deadlines, which created a lack of adequate meal period coverage and prevented Plaintiff and class members from taking all timely, uninterrupted meal periods to which they were entitled.  In conjunction with understaffing their jobsites, Defendants had a company-wide practice or policy of failing to schedule meal periods and/or adhere to a schedule for meal periods, which exacerbated the lack of meal period coverage.  As a result of Defendants' understaffing and resultant lack of meal period coverage, Plaintiff and class members worked through meal periods, took meal periods late, and/or had their meal periods interrupted or shortened.  For example, about once per month, Plaintiff took his meal periods well into the seventh hour of work due to understaffing, the heavy workload, and pressure to meet inspection deadlines.  As a further example, as stated, approximately once per month,

1    Plaintiff was required to work through his meal periods, due to the heavy workload, in order to

2    complete his assigned tasks and meet Defendants' expectations.

3        113.    Moreover, as stated, Defendants had, and continue to have, a company-wide

4    policy and/or practice of requiring that Plaintiff and class members carry a company-issued

5    cellular phone to respond to requests at all times, including during meal periods.  Defendants'

6    management contacted Plaintiff and class members on their company-issued cellular phones

7    during unpaid meal periods to discuss work-related matters.  For example, approximately three

8    (3) times per week, Plaintiff had his meal periods interrupted and/or shortened to discuss work-

9    related tasks with Defendants' managers either in-person or on his company-issued cellular

10   phone.

11       114.    Furthermore, Defendants did not provide Plaintiff and class members with

12   second 30-minute meal periods on days that they worked in excess of ten (10) hours in one day.

13   During his employment, Plaintiff worked shifts in excess of ten (10) or more hours per day, but

14   was never provided a second 30-minute meal period.  Plaintiff and class members did not sign

15   valid meal period waivers on days that they were entitled to meal periods and were not relieved

16   of all duties.

17       115.    At all times herein mentioned, Defendants knew or should have known that, as a

18   result of these policies, Plaintiff and class members were prevented from being relieved of all

19   duties and required to perform some of their assigned duties during meal periods.  Defendants

20   further knew or should have known that Defendants did not pay Plaintiff and class members

21   meal period premiums when meal periods were late, interrupted, shortened, or missed.  As set

22   forth above, on information and belief, because Defendants frowned upon employees accruing

23   meal period penalties, Defendants' management pressured Plaintiff and class members to clock

24   out for meal periods regardless of whether they had received a compliant meal period or not, in

25   order to strictly limit the meal penalties that would need to be paid by Defendants.

26       116.    Moreover, Defendants engaged in a company-wide practice and/or policy of not

27   paying all meal period premiums owed when compliant meal periods are not provided.  Because

28   of this practice and/or policy, Plaintiff and class members have not received premium pay for

all missed, late, and interrupted meal periods.  As a result, Defendants failed to provide Plaintiff and class members compliant meal periods in violation of California Labor Code sections 226.7, 512(a), and 516 and failed to pay the full meal period premiums due.

117.    Defendants' conduct violates the applicable IWC Wage Order, and California Labor Code sections 226.7, 512(a), 516, and 1198.  Plaintiff and class members are therefore entitled to recover from Defendants one (1) additional hour of pay at the employee's regular rate of compensation for each work day that the meal period was not provided.

## FIFTH CAUSE OF ACTION

## Violation of California Labor Code §§ 226.7, 516, and 1198—Rest Period Violations

## (Against all Defendants)

118.    Plaintiff incorporates by reference and re-alleges as if fully stated herein each and every allegation set forth above.

119.    At all relevant times herein set forth, the applicable IWC Wage Order and California Labor Code sections 226.7, 516, and 1198 were applicable to Plaintiff's and class members' employment by Defendants.

120.    At all relevant times, the applicable IWC Wage Order provides that "[e]very employer shall authorize and permit all employees to take rest periods, which insofar as practicable shall be in the middle of each work period" and that the "rest period time shall be based on the total hours worked daily at the rate of ten (10) minutes net rest time per four (4) hours or major fraction thereof" unless the total daily work time is less than three and one-half (3 ½) hours.

121.    At all relevant times, California Labor Code section 226.7 provides that no employer shall require an employee to work during any rest period mandated by an applicable order of the California IWC.  To comply with its obligation to authorize and permit rest periods under California Labor Code section 226.7 and the applicable IWC Wage Order, an employer must "relinquish any control over how employees spend their break time, and relieve their employees of all duties—including the obligation that an employee remain on call.  A rest period, in short, must be a period of rest." *Augustus v. ABM Security Services, Inc.*, 2 Cal. 5th

257, 269-270 (2016).  Pursuant to the applicable IWC Wage Order and California Labor Code section 226.7(c), Plaintiff and class members are entitled to recover from Defendants one (1) additional hour of pay at their regular rates of pay for each work day that a required rest period was not authorized and permitted.

122.    During the relevant time period, Defendants regularly failed to authorize and permit Plaintiff and class members to take a ten (10) minute rest period per each four (4) hour period worked or major fraction thereof.  As with meal periods, Defendants' company-wide practices, including understaffing and assigning heavy workloads and deadlines, prevented Plaintiff and class members from being relieved of all duty to take rest periods.  Additionally, Defendants also failed to adhere to a schedule for rest periods, which, coupled with Defendants' failure to provide adequate rest period coverage, further led to Plaintiff and class members not being authorized and permitted to take compliant rest periods.  Moreover, as stated, Plaintiff and class members were required to carry their company-provided cellular phones to respond to communications from management at all times, including during rest periods.

123.    Furthermore, Defendants maintained and implemented a company-wide on-premises rest period policy, which mandated that Plaintiff and class members remain on the premises during their rest periods.  Because Plaintiff and class members were restricted from leaving Defendants' premises during rest periods, they were denied the ability to use their rest periods freely for their own purposes, such as running personal errands.  Thus, Defendants effectively maintained control over Plaintiff and class members during rest periods.

124.    As a result of Defendants' practices and policies, Plaintiff and class members worked shifts in excess of 3.5 hours, in excess of 6 hours, and/or in excess of 10 hours without receiving all uninterrupted 10-minute rest periods to which they were entitled.  For example, Plaintiff had to forego his rest periods approximately seven (7) times per week, due to Defendants' policy of assigning heavy workloads and deadlines and failing to provide sufficient rest period coverage.

125.    Defendants have also engaged in a company-wide practice and/or policy of not paying all rest period premiums owed when compliant rest periods are not authorized and

permitted.  Because of this practice and/or policy, Plaintiff and class members have not received premium pay for all missed rest periods.

126.    Defendants' conduct violates the applicable IWC Wage Order and California Labor Code sections 226.7, 516, and 1198.  Plaintiff and class members are therefore entitled to recover from Defendants one (1) additional hour of pay at the employee's regular rate of compensation for each work day that a compliant rest period was not authorized and permitted.

<div align="center">

**SIXTH CAUSE OF ACTION**

**Violation of California Labor Code §§ 226(a), 1174(d), and 1198—Non-Compliant Wage Statements and Failure to Maintain Accurate Payroll Records**

**(Against all Defendants)**

</div>

127.    Plaintiff incorporates by reference and re-alleges as if fully stated herein each and every allegation set forth above.

128.    At all relevant times herein set forth, California Labor Code section 226(a) provides that every employer shall furnish each of his or her employees an accurate and complete itemized wage statement in writing, including, but not limited to, the name and address of the legal entity that is the employer, the inclusive dates of the pay period, total hours worked, and all applicable rates of pay.

129.    At all relevant times, Defendants have knowingly and intentionally provided Plaintiff and Subclass members with uniform, incomplete, and inaccurate wage statements.  For example, Defendants issued uniform wage statements to Plaintiff and Subclass members that fail to correctly list: gross wages earned; total hours worked; net wages earned; and all applicable hourly rates in effect during the pay period, including rates of pay for overtime wages and/or meal and rest period premiums, and the corresponding number of hours worked at each hourly rate.  Specifically, Defendants violated sections 226(a)(1), 226(a)(2), 226(a)(5), and 226(a)(9).

130.    During the relevant time period, Defendants issued wage statements to Plaintiff and Subclass members that fail to list all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate in compliance with section

226(a)(9).  For example, Defendants paid Plaintiff and Subclass members prevailing wages when they worked on public projects.  On information and belief, these wages were listed on Plaintiff's and Subclass members' wage statements as "Cash Fringe."  However, Defendants listed prevailing wages earned in lump sum amounts and did not list any applicable pay rates or corresponding hours worked, in violation of section 226(a)(9).  In addition to being unlawful, this practice makes it extremely difficult for employees to determine whether they are being paid correctly or not.

131.    Additionally, because Defendants did not record the time Plaintiff and Subclass members spent working off-the-clock and deducted time from their records for meal periods that were interrupted and/or missed (and therefore time for which they should have been paid), Defendants did not list the correct amount of gross wages and net wages earned by Plaintiff and Subclass members in compliance with section 226(a)(1) and section 226(a)(5), respectively. For the same reason, Defendants failed to accurately list the total number of hours worked by Plaintiff and Subclass members, in violation of section 226(a)(2), and failed to list the applicable hourly rates of pay in effect during the pay period and the corresponding accurate number of hours worked at each hourly rate, in violation of section 226(a)(9).

132.    The wage statement deficiencies also include, among other things, failing to list the number of piece-rate units earned and any applicable piece rate if the employee is paid on a piece-rate basis; failing to list all deductions; failing to list the inclusive dates of the period for which employees were paid; failing to list the name of the employee and only the last four digits of his or her social security number or an employee identification number other than a social security number; failing to list the name and address of the legal entity that is the employer; and/or failing to state all hours worked as a result of not recording or stating the hours they worked off-the-clock.

133.    California Labor Code section 1174(d) provides that "[e]very person employing labor in this state shall . . . [k]eep a record showing the names and addresses of all employees employed and the ages of all minors" and "[k]eep, at a central location in the state or at the plants or establishments at which employees are employed, payroll records showing the hours

worked daily by and the wages paid to, and the number of piece-rate units earned by and any applicable piece rate paid to, employees employed at the respective plants or establishments. . . ."  At all relevant times, and in violation of Labor Code section 1174(d), Defendants willfully failed to maintain accurate payroll records for Plaintiff and Subclass members showing the daily hours they worked and the wages paid thereto as a result of failing to record the off-the-clock hours that they worked.

134.    California Labor Code section 1198 provides that the maximum hours of work and the standard conditions of labor shall be those fixed by the Labor Commissioner and as set forth in the applicable IWC Wage Order.  Section 1198 further provides that "[t]he employment of any employees for longer hours than those fixed by the order or under conditions of labor prohibited by the order is unlawful."  Pursuant to the applicable IWC Wage Order, employers are required to keep accurate time records showing when the employee begins and ends each work period and meal period.  During the relevant time period, Defendants engaged in company-wide practices and/or policies of failing to record actual hours worked (including falsifying time records by recording that compliant meal periods were taken regardless of if or when meal periods were actually taken), and thereby failed to keep accurate records of work period and meal period start and stop times for Plaintiff and Subclass members, in violation of section 1198.  Furthermore, in light of Defendants' failure to provide Plaintiff and Subclass members with second 30-minute meal periods to which they were entitled, Defendants kept no records of meal start and end times for second meal periods.

135.    Plaintiff and Subclass members are entitled to recover from Defendants the greater of their actual damages caused by Defendants' failure to comply with California Labor Code section 226(a), or an aggregate penalty not exceeding four thousand dollars ($4,000) per employee.

//
//
//

**SEVENTH CAUSE OF ACTION**

**Violation of California Labor Code §§ 201 and 202—Wages Not Timely Paid Upon**

**Termination**

**(Against all Defendants)**

136.    Plaintiff incorporates by reference and re-alleges as if fully stated herein each and every allegation set forth above.

137.    This cause of action is dependent upon, and wholly derivative of, the overtime wages, minimum wages, meal and rest period premiums, and/or reporting time pay that were not timely paid to Plaintiff and those class members no longer employed by Defendants upon their termination.

138.    At all times relevant herein set forth, Labor Code sections 201 and 202 provide that if an employer discharges an employee, the wages earned and unpaid at the time of discharge are due and payable immediately, and that if an employee voluntarily leaves his or her employment, his or her wages shall become due and payable not later than seventy-two (72) hours thereafter, unless the employee has given seventy-two (72) hours previous notice of his or her intention to quit, in which case the employee is entitled to his or her wages at the time of quitting.

139.    Defendants willfully failed to pay Plaintiff and class members who are no longer employed by Defendants the earned and unpaid wages set forth above, including but not limited to, overtime wages, minimum wages, meal and rest period premiums, and/or reporting time pay, either at the time of discharge, or within seventy-two (72) hours of their leaving Defendants' employ.

140.    Defendants' failure to pay Plaintiff and class members who are no longer employed by Defendants their wages earned and unpaid at the time of discharge, or within seventy-two (72) hours of their leaving Defendants' employ, violates Labor Code sections 201 and 202.  Plaintiff and class members are therefore entitled to recover from Defendants the statutory penalty wages for each day they were not paid, at their regular rate of pay, up to a thirty (30) day maximum pursuant to California Labor Code section 203.

**EIGHTH CAUSE OF ACTION**

**Violation of California Labor Code § 204—Failure to Timely Pay Wages During**

**Employment**

**(Against all Defendants)**

141.    Plaintiff incorporates by reference and re-alleges as if fully stated herein each and every allegation set forth above.

142.    This cause of action is dependent upon, and wholly derivative of, the overtime wages, minimum wages, meal and rest period premiums, and/or reporting time pay that were not timely paid to Plaintiff and class members during their employment.

143.    At all times relevant herein set forth, Labor Code section 204 provides that all wages earned by any person in any employment between the first (1st) and the fifteenth (15th) days, inclusive, of any calendar month, other than those wages due upon termination of an employee, are due and payable between the sixteenth (16th) and the twenty-sixth (26th) day of the month during which the labor was performed.

144.    At all times relevant herein, Labor Code section 204 provides that all wages earned by any person in any employment between the sixteenth (16th) and the last day, inclusive, of any calendar month, other than those wages due upon termination of an employee, are due and payable between the first (1st) and the tenth (10th) day of the following month.

145.    At all times relevant herein, Labor Code section 204 provides that all wages earned for labor in excess of the normal work period shall be paid no later than the payday for the next regular payroll period.  Alternatively, at all times relevant herein, Labor Code section 204 provides that the requirements of this section are deemed satisfied by the payment of wages for weekly, biweekly, or semimonthly payroll if the wages are paid not more than seven (7) calendar days following the close of the payroll period.

146.    During the relevant time period, Defendants willfully failed to pay Plaintiff and class members all wages due including, but not limited to, overtime wages, minimum wages, meal and rest period premiums, and/or reporting time pay, within the time periods specified by California Labor Code section 204.

147.    Defendants' failure to timely pay Plaintiff and class members all wages due violates Labor Code section 204.  Plaintiff and class members are therefore entitled to recover from Defendants the statutory penalty wages pursuant to California Labor Code section 210.

<div align="center">

**NINTH CAUSE OF ACTION**

**Violation of Labor Code § 1198 and California Code of Regulations Title 8, Section**

**11160 Subdivision 5(B)—Failure to Provide Reporting Time Pay**

**(Against all Defendants)**

</div>

148.    Plaintiff incorporates by reference and re-alleges as if fully stated herein each and every allegation set forth above.

149.    California Labor Code section 1198 dictates that no employer may employ an employee under conditions of labor that are prohibited by the applicable IWC Wage Order. California Labor Code section 1198 further requires that ". . . the standard conditions of labor fixed by the commission shall be the . . . standard conditions of labor for employees.  The employment of any employee . . . under conditions of labor prohibited by the order is unlawful."

150.    The applicable IWC Wage Order, California Code of Regulations, Title 8, section 11160(5)(B), provides that "[e]ach workday an employee is required to report for work and does report, but is not put to work or is furnished less than half of his/her usual or scheduled day's work, the employer shall pay him/her for half the usual or scheduled day's work, but in no event for less than two (2) hours nor more than four (4) hours at the employee's regular rate of pay, for which shall not be less than the minimum wage."

151.    During the relevant time period, Defendants violated California Labor Code section 1198 and California Code of Regulations, Title 8, section 11160(5)(B), because Defendants failed to pay Plaintiff and class members reporting time pay when they reported to work for their scheduled shift but were put to work for less than half of their usual or scheduled day's work.

152.    As stated, Defendants had a company-wide "on-call" policy, whereby they scheduled Plaintiff and class members to work "on-call," or on standby.  When scheduled for a "on-call" or standby shift, Plaintiff and class members regularly presented themselves as ready

for work by waiting for supervisors to call them regarding emergency service requests.  When this occurred, Defendants did not pay Plaintiff and class members for at least half of their scheduled day's work or the minimum reporting time pay when they were subject to Defendants' "on-call" policy and were ultimately not called.

153.    Accordingly, Plaintiff and class members were not properly compensated with reporting time pay in violation of California Labor Code section 1198 and California Code of Regulations, Title 8, section 11160(5)(B).

**TENTH CAUSE OF ACTION**

**Violation of California Labor Code § 2802—Unpaid Business-Related Expenses**

**(Against all Defendants)**

154.    Plaintiff incorporates by reference and re-alleges as if fully stated herein each and every allegation set forth above.

155.    At all times herein set forth, California Labor Code section 2802 provides that an employer must reimburse employees for all necessary expenditures and losses incurred by the employee in the performance of his or her job.  The purpose of Labor Code section 2802 is to prevent employers from passing off their cost of doing business and operating expenses on to their employees.  *Cochran v. Schwan's Home Service, Inc.*, 228 Cal. App. 4th 1137, 1144 (2014).  The applicable wage order, IWC Wage Order No. 16-2001, provides that: "[w]hen tools or equipment are required by the employer or are necessary to the performance of a job, such tools and equipment shall be provided and maintained by the employer, except that an employee whose wages are at least two (2) times the minimum wage provided herein may be required to provide and maintain hand tools and equipment customarily required by the trade or craft."

156.    First, during the relevant time period, Plaintiff and class members were required to use their personal mobile devices, including, but not limited to, cellular phones, and/or mobile data to carry out their job duties, but Defendants failed to reimburse them for the costs of their work-related mobile device expenses.  For example, Defendants' management required Plaintiff to use his personal cellular phone and personal mobile data to create mobile WiFi hotspots so that he and other coworkers could connect and utilize company-owned tablet devices for work-

related duties, such as sketching restoration plans and inputting notes for insurance companies' use. Defendants' company-provided cellular phones did not have this capability, even though the WiFi hotspots were necessary for Plaintiff and class members to complete their assigned tasks. Additionally, Defendants' management would call Plaintiff on his personal cellular phone in order to discuss work-related matters. Although Defendants required Plaintiff and class members to utilize their personal mobile devices and/or mobile data to carry out their work-related responsibilities, Defendants failed to reimburse them for these costs.

157. Second, during the relevant time period, Defendants had a company-wide policy and/or practice of requiring Plaintiff and class members to travel in their own personal vehicles or alternate transportation to medical facilities to undergo mandatory drug testing and/or physical examinations, but did not reimburse them for their travel expenses, including mileage. Defendants maintained and implemented a company-wide policy of requiring employees to travel to a medical facility on their own time and using their own personal vehicles to undergo mandatory drug testing and/or physical examinations. At all times, Defendants were in control of scheduling the date and time for the testing and/or physical examinations, selecting the provider or facility where the testing and/or physical examinations were to take place, and determining the scope of the testing and/or physical examinations. Defendants gave Plaintiff and class members strict instructions to obtain drug testing and/or physical examinations, and Plaintiff and class members underwent the testing for the sole benefit of Defendants.

158. For example, as described above, Plaintiff followed Defendants' instructions, traveled 20 miles roundtrip using his personal vehicle to and from the medical facility designated by Defendants, Concentra Urgent Care, in Fresno, California, and underwent the drug testing, but was not reimbursed for his mileage to and from the medical facility. Although Defendants required Plaintiff and class members to undergo drug testing and/or physical examinations, Defendants failed to reimburse them for their travel expenses.

159. Third, during the relevant time period, Defendants, on a company-wide basis, required Plaintiff and class members to wear uniform items, including collared shirts with Defendants' branding or logo. Due to the nature of construction and demolition work,

1    Plaintiff's uniform shirts would get dirty, soiled, or acquire unpleasant odor.  As a result,

2    Plaintiff was forced to wash his uniform shirts separately from his other clothing items, thus

3    incurring additional utility and laundry expenses.  Thus, Defendants failed to maintain the

4    uniform items they required Plaintiff and class members to wear during their shifts and forced

5    them to incur the cost of maintaining employee uniforms.

6    160.    Fourth, during the relevant time period, Defendants, on a company-wide basis,

7    required Plaintiff and class members to purchase their own supplies and tools, such as

8    screwdrivers and staple guns, which were necessary for the completion of their work-related

9    duties.  For example, Plaintiff spent approximately $50 out-of-pocket to purchase a set of

10   screwdrivers and a staple gun in order to perform his work duties, but was not reimbursed for

11   his costs.  Separately, Plaintiff and class members were also required to purchase mobile devices

12   directly from Defendants to carry out their job duties, but were not reimbursed for their

13   expenses.  Specifically, Defendants required Plaintiff to purchase a company iPhone 11 cellular

14   phone for work-related purposes, which cost approximately $250.  Thus, Defendants failed to

15   provide tools and equipment to Plaintiff and class members, forcing them to procure their own,

16   and failed to reimburse Plaintiff and class members for these costs.

17   161.    Defendants could have provided Plaintiff and class members with the actual tools

18   for use on the job, such as company mobile devices, company vehicles, supplies and tools, and

19   access to laundering services.  Or, Defendants could have reimbursed employees for their

20   mobile device usage, mileage, travel expenses, tool and supply expenses, and laundering

21   expenses or provided a uniform maintenance allowance.  Instead, Defendants passed these

22   operating costs off onto Plaintiff and class members.

23   162.    Defendants' company-wide policy and/or practice of passing on their operating

24   costs to Plaintiff and class members violates California Labor Code section 2802.  Defendants

25   have intentionally and willfully failed to reimburse Plaintiff and class members for necessary

26   business-related expenses and costs.

27   163.    Plaintiff and class members are entitled to recover from Defendants their

28   business-related expenses incurred during the course and scope of their employment, plus

1    interest.

2                          **ELEVENTH CAUSE OF ACTION**

3    **For Civil Penalties Pursuant to California Labor Code §§ 2698,** *et seq.*

4                          **(Against all Defendants)**

5           164.    Plaintiff incorporates by reference and re-alleges as if fully stated herein each

6    and every allegation set forth above.

7           165.    California Labor Code §§ 2698, *et seq.* ("PAGA") permits Plaintiff to recover

8    civil penalties for the violation(s) of the Labor Code sections enumerated in Labor Code section

9    2699.5.  Section 2699.5 enumerates Labor Code sections 201, 202, 204, 222.5, 226(a), 226.7,

10   450, 510, 512(a), 551, 552, 1174(d), 1194, 1197, 1197.1, 1198, and 2802.  Labor Code section

11   2699.3(c) permits aggrieved employees, including Plaintiff, to recover civil penalties for

12   violations of those Labor Code sections not found in section 2699.5, including sections 516,

13   1182.12, 2350, and 2810.5.

14          166.    Defendants' conduct, as alleged herein, violates numerous sections of the

15   California Labor Code, including, but not limited to, the following:

16                  (a)     Violation of Labor Code sections 510 and 1198, and the applicable IWC

17                          Wage Order for Defendants' failure to compensate Plaintiff and other

18                          aggrieved employees with all required overtime pay, as alleged herein;

19                  (b)     Violation of Labor Code sections 1182.12. 1194, 1197, 1197.1, and 1198,

20                          and the applicable IWC Wage Order for Defendants' failure to

21                          compensate Plaintiff and other aggrieved employees with at least

22                          minimum wages for all hours worked, as alleged herein;

23                  (c)     Violation of Labor Code sections 226.7, 512(a), 516, and 1198, and the

24                          applicable IWC Wage Order for Defendants' failure to provide Plaintiff

25                          and other aggrieved employees with meal periods, as alleged herein;

26                  (d)     Violation of Labor Code sections 226.7, 516, and 1198, and the applicable

27                          IWC Wage Order for Defendants' failure to authorize and permit Plaintiff

28                          and other aggrieved employees to take rest periods, as alleged herein;

(e)     Violation of Labor Code sections 226(a) and 1198, and the applicable IWC Wage Order for failure to provide accurate and complete wage statements to Plaintiff and other aggrieved employees, as alleged herein;

(f)     Violation of Labor Code sections 1174(d) and 1198, and the applicable IWC Wage Order for failure to maintain payroll records, as alleged herein;

(g)     Violation of Labor Code sections 201 and 202 for failure to pay Plaintiff and other aggrieved employees all earned wages upon termination, as alleged herein;

(h)     Violation of Labor Code section 204 for failure to pay all earned wages during employment to Plaintiff and other aggrieved employees, as alleged herein;

(i)     Violation of Labor Code section 222.5 for failing to compensate other aggrieved employees for mandatory physical examinations and/or drug testing, as set forth below;

(j)     Violation of Labor Code section 450 for compelling and/or coercing Plaintiff and other aggrieved employees to patronize Defendants' business, as set forth below;

(k)     Violation of Labor Code sections 551 and 552 for failure to provide Plaintiff and other aggrieved employees with one day's rest in seven, as set forth below;

(l)     Violation of Labor Code section 1198 and the applicable IWC Wage Order for failing to pay reporting time pay to Plaintiff and other aggrieved employees, as alleged herein;

(m)     Violation of Labor Code section 2350 for failure to provide sufficient toilet facilities in the workplace, as set forth below;

(n)     Violation of Labor Code section 2802 for failure to reimburse Plaintiff and other aggrieved employees for all business expenses necessarily

incurred, as alleged herein; and

     (o)     Violation of Labor Code section 2810.5(a)(1)(A)-(C) for failure to provide written notice of information material to Plaintiff's and other aggrieved employees' employment with Defendants, as set forth below.

167.    At all relevant times herein, California Labor Code section 222.5 requires employers to pay for the costs an employee incurs for obtaining any required medical or physical examination.

168.    During the relevant time period, Defendants implemented, on a company-wide basis, an employer-imposed requirement that other aggrieved employees undergo mandatory drug testing and/or physical examinations, but required them to do so at their own expense. As stated, Defendants had a company-wide policy requiring that other aggrieved employees travel to a specified medical facility on their own time and use their own means of transportation to undergo drug testing and/or physical examinations. At all times, Defendants were in control of scheduling the date and time for the testing and/or examinations, selecting the provider/facility where the testing and/or examinations were to take place, and determining the scope of the testing and/or examinations.

169.    However, Defendants did not compensate other aggrieved employees for the time they spent traveling to and from the medical facilities, for the time they spent undergoing the drug testing and/or physical examinations, or reimburse them for the travel expenses they incurred getting to and from the medical facilities. Defendants' policy and/or practice of not paying for all costs other aggrieved employees incurred obtaining mandatory drug testing and/or physical examinations is in violation of California Labor Code section 222.5.

170.    Other aggrieved employees are therefore entitled to recover civil penalties pursuant to Labor Code sections 2699(a), (f), and (g).

171.    At all relevant times herein, California Labor Code section 450 provides that an employer may not "compel or coerce any employee, or applicant for employment, to patronize his or her employer, or any other person, in the purchase of anything of value." An employer violates section 450 by forcing an employee to patronize the employer's business in the

1    purchase of a company-provided good.

2        172.    As stated, Defendants had a company-wide policy of requiring employees to

3    purchase mobile devices directly from the company.  During their employment, other aggrieved

4    employees were required to purchase, from Defendants, a cellular phone to be utilized for work-

5    related purposes, the cost of which was deducted from their paychecks.

6        173.    Defendants' conduct of compelling and/or coercing other aggrieved employees

7    to purchase goods from them violates California Labor Code section 450.  Other aggrieved

8    employees are therefore entitled to recover civil penalties pursuant to Labor Code sections

9    2699(a), (f), and (g).

10       174.    At all relevant times herein, California Labor Code section 551 provides that

11   every person employed in any occupation of labor is entitled to one day's rest in seven.

12   Additionally, California Labor Code section 552 prohibits employers from requiring employees

13   to work more than six consecutive days without a day of rest.

14       175.    At all relevant times herein set forth, California Labor Code section 556 exempts

15   an employer from the day-of-rest requirement when the total hours worked by an employee do

16   not exceed 30 hours in any week or six hours in any one day thereof.

17       176.    During the relevant time period, Defendants scheduled Plaintiff and other

18   aggrieved employees to work six (6) or more hours per day and seven (7) consecutive days in a

19   workweek.  Because Plaintiff and other aggrieved employees worked over 30 hours per week

20   and over six (6) hours per day in any one day in a workweek, they were not exempt from the

21   day-of-rest requirement.  For example, Plaintiff worked 12 consecutive days, from Monday,

22   July 12 to Friday, July 23, 2021.  To the extent that Plaintiff and other aggrieved employees

23   may have signed purported waivers of their right to a day's rest in seven, such waivers are

24   invalid.  Thus, Defendants willfully caused Plaintiff and other aggrieved employees to work

25   more than six days in seven, in violation of Labor Code sections 551 and 552.  Plaintiff and

26   other aggrieved employees are therefore entitled to recover civil penalties pursuant to Labor

27   Code sections 558 and/or 2699(a), (f), and (g).

28       177.    At all relevant times, California Labor Code section 2350 provides that all

employers must provide "a sufficient number of toilet facilities for the use of the employees." During the relevant time period, Defendants failed to provide Plaintiff and other aggrieved employees with sufficient toilet facilities.  In fact, there was no restroom facility at several jobsites where Plaintiff and other aggrieved employees worked.

178.    Because Defendants did not provide employees with toilet facilities at their locations or jobsites, Plaintiff and other aggrieved employees were forced to relieve themselves outdoors.

179.    Defendants' failure to provide Plaintiff and other aggrieved employees a toilet facility to use at the workplace is in violation of Labor Code section 2350 and the standards adopted by the Occupational Safety and Health Standards Board.  Plaintiff and other aggrieved employees are therefore entitled to recover civil penalties pursuant to Labor Code sections 2699(a), (f), and (g).

180.    California's Wage Theft Prevention Act was enacted to ensure that employers provide employees with basic information material to their employment relationship at the time of hiring, and to ensure that employees are given written and timely notice of any changes to basic information material to their employment.  Codified at California Labor Code section 2810.5, the Wage Theft Prevention Act provides that at the time of hiring, an employer must provide written notice to employees containing basic and material payroll information, including, among other things, the rate(s) of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or otherwise, including any rates for overtime, the regular payday designated by the employer, and any allowances claims as part of the minimum wage, including meal or lodging allowances.  Labor Code § 2810.5(a)(1)(A)-(C).

181.    During the relevant time period, Defendants failed to provide Plaintiff and other aggrieved employees with written notice that lists all the requisite information set forth in Labor Code section 2810.5(a)(1)(A)-(C).

182.    Defendants' failure to provide Plaintiff and other aggrieved employees with written notice of basic information regarding their employment with Defendants is in violation of Labor Code section 2810.5.  Plaintiff and other aggrieved employees are therefore entitled to

1  recover civil penalties pursuant to Labor Code sections 2699(a), (f), and (g).

2  <center>**TWELFTH CAUSE OF ACTION**</center>

3  <center>**Violation of California Business & Professions Code §§ 17200, *et seq.* –**</center>

4  <center>**Unlawful Business Practices**</center>

5  <center>**(Against all Defendants)**</center>

6  183.    Plaintiff incorporates by reference and re-alleges as if fully stated herein each
7  and every allegation set forth above.

8  184.    Defendants are "persons" as defined by California Business & Professions Code
9  sections 17201, as they are corporations, firms, partnerships, joint stock companies, and/or
10  associations.

11  185.    Defendants' conduct, as alleged herein, has been, and continues to be, unfair,
12  unlawful and harmful to Plaintiff, class members, and to the general public.  Plaintiff has
13  suffered injury in fact and has lost money as a result of Defendants' unlawful business practices.
14  Plaintiff seeks to enforce important rights affecting the public interest within the meaning of
15  Code of Civil Procedure section 1021.5.

16  186.    Defendants' activities, as alleged herein, are violations of California law, and
17  constitute unlawful business acts and practices in violation of California Business & Professions
18  Code sections 17200, *et seq.*

19  187.    A violation of California Business & Professions Code sections 17200, *et seq.*
20  may be predicated on the violation of any state or federal law.  In the instant case, Defendants'
21  policies and practices have violated state law in at least the following respects:

22  (a)    Requiring non-exempt, hourly paid employees, including Plaintiff and
23  class members, to work overtime without paying them proper
24  compensation in violation of California Labor Code sections 510 and
25  1198, and the applicable IWC Wage Order, as alleged herein;

26  (b)    Failing to pay at least minimum wage to Plaintiff and class members in
27  violation of California Labor Code sections 1182.12, 1194, 1197, 1197.1,
28  and 1198, and the applicable IWC Wage Order, as alleged herein;

(c)    Failing to provide uninterrupted meal periods to Plaintiff and class members in violation of California Labor Code sections 226.7, 512(a), 516, and 1198, and the applicable IWC Wage Order, as alleged herein;

(d)    Failing to authorize and permit Plaintiff and class members to take uninterrupted rest periods in violation of California Labor Code sections 226.7, 516, and 1198, and the applicable IWC Wage Order, as alleged herein;

(e)    Failing to provide Plaintiff and class members with accurate wage statements and failing to maintain accurate payroll records in violation of California Labor Code sections 226(a), 1174(d), and 1198, and the applicable IWC Wage Order, as alleged herein;

(f)    Failing timely to pay all earned wages to Plaintiff and class members in violation of California Labor Code section 204, as alleged herein;

(g)    Failing to pay the costs of mandatory physical examinations and/or drug testing in violation of California Labor Code section 222.5, as set forth below;

(h)    Compelling and/or coercing Plaintiff and class members to patronize Defendants' business in violation of California Labor Code section 450, as set forth below;

(i)    Failing to provide one day's rest in seven to Plaintiff and class members in violation of California Labor Code sections 551 and 552, as set forth below;

(j)    Failing to pay reporting time pay in violation of California Labor Code section 1198 and the applicable IWC Wage Order, as alleged herein;

(k)    Failing to provide Plaintiff and class members with a sufficient number of toilet facilities for use in the workplace in violation of California Labor Code section 2350 and the standards adopted by the Occupational Safety and Health Standards Board, as set forth below;

(l)     Failing to reimburse Plaintiff and class members for all business expenses necessarily incurred in violation of California Labor Code sections 2802, as alleged herein; and

(m)    Failing to provide written notice of information material to Plaintiff's and class members' employment with Defendants in violation of California Labor Code section 2810.5(a)(1)(A)-(C), as set forth below.

188.     At all relevant times herein, California Labor Code section 222.5 requires employers to pay for the costs an employee incurs for obtaining any medical or physical examination taken pursuant to any law or regulation.

189.     At all times relevant herein, Defendants implemented, on a company-wide basis, an employer-imposed requirement that Plaintiff and class members undergo mandatory drug testing and/or physical examinations, but required them to do so at their own expense. As stated, Defendants had a company-wide policy requiring that all employees, including Plaintiff and class members, travel to a specified medical facility using their own personal vehicles or obtain alternate transportation to undergo drug testing and/or physical examinations. At all times, Defendants were in control of scheduling the date and time for the examination and/or testing, selecting the provider/facility where the examination and/or testing was to take place, and determining the scope of the examination and/or testing.

190.     During the relevant time period, as stated, Plaintiff was instructed by Defendants to travel to Concentra Urgent Care, a medical facility in Fresno, California, and obtain drug testing and/or a physical examination, and Plaintiff underwent the testing and examination for the sole benefit of Defendants. Plaintiff followed Defendants' instructions, traveled 20 miles roundtrip using his personal vehicle to and from Defendants' designated medical facility in Fresno, California, and spent additional time waiting at the medical facility and undergoing the requisite drug testing and/or physical examination.

191.     However, Defendants did not compensate Plaintiff and class members for the time they spent traveling to and from their testing and/or physical examinations, or for the time they spent undergoing the testing and/or physical examinations, or reimburse them for the travel

expenses they incurred getting to and from the medical facility.  Defendants' policy and/or practice of not paying for all costs Plaintiff and class members incurred obtaining mandatory drug tests and/or physical examinations violates California Labor Code section 222.5.

192.    At all relevant times herein, California Labor Code section 450 provides that an employer may not "compel or coerce any employee, or applicant for employment, to patronize his or her employer, or any other person, in the purchase of anything of value."  An employer violates section 450 by forcing an employee to patronize the employer's business in the purchase of a company-provided good.

193.    As stated, Defendants had a company-wide policy of requiring employees to purchase mobile devices directly from the company.  During his employment, Plaintiff was required to purchase, from Defendants, an iPhone 11 cellular phone to be utilized for work-related purposes for $250, which was deducted from his paychecks.

194.    Defendants' conduct of compelling and/or coercing Plaintiff and class members to purchase goods from them violates California Labor Code section 450.

195.    At all relevant times herein, California Labor Code section 551 provides that every person employed in any occupation of labor is entitled to one day's rest in seven.  Additionally, California Labor Code section 552 prohibits employers from requiring employees to work more than six consecutive days without a day of rest.

196.    At all relevant times herein set forth, California Labor Code section 556 exempts an employer from the day-of-rest requirement when the total hours worked by an employee do not exceed 30 hours in any week or six hours in any one day thereof.

197.    During the relevant time period, Defendants scheduled Plaintiff and class members to work six (6) or more hours per day and seven (7) consecutive days in a workweek.  Because Plaintiff and class members worked over 30 hours per week and over six (6) hours per day in any one day in a workweek, they were not exempt from the day-of-rest requirement.  For example, Plaintiff worked 12 consecutive days, from Monday, August 31 to Friday, September 11, 2020.  As a further example, Plaintiff worked another 12 consecutive days, from Monday, July 12 to Friday, July 23, 2021.  To the extent that Plaintiff and class members may have signed

1    purported waivers of their right to a day's rest in seven, such waivers are invalid.  Thus,

2    Defendants willfully caused Plaintiff and class members to work more than six days in seven,

3    in violation of Labor Code sections 551 and 552.

4        198.    At all times herein set forth, California Labor Code section 2350 provides that

5    all employers must provide "a sufficient number of toilet facilities for the use of the employees."

6        199.    During the relevant time period, Defendants failed to provide Plaintiff and class

7    members with sufficient toilet facilities.  In fact, there was no restroom facility at several

8    jobsites where Plaintiff and class members worked.

9        200.    Because Defendants did not provide employees with toilet facilities at their

10   locations or jobsites, Plaintiff and class members were forced to relieve themselves outdoors.

11   Defendants' failure to provide Plaintiff and class members a toilet facility to use at the

12   workplace is in violation of California Labor Code section 2350 and the standards adopted by

13   the Occupational Safety and Health Standards Board.

14       201.    At all relevant times herein, California's Wage Theft Prevention Act was enacted

15   to ensure that employers provide employees with basic information material to their

16   employment relationship at the time of hiring, and to ensure that employees are given written

17   and timely notice of any changes to basic information material to their employment.  Codified

18   at California Labor Code section 2810.5, the Wage Theft Prevention Act provides that at the

19   time of hiring, an employer must provide written notice to employees containing basic and

20   material payroll information, including, among other things, the rate(s) of pay and basis thereof,

21   whether paid by the hour, shift, day, week, salary, piece, commission, or otherwise, including

22   any rates for overtime, the regular payday designated by the employer, and any allowances

23   claims as part of the minimum wage, including meal or lodging allowances.  Labor Code

24   § 2810.5(a)(1)(A)-(C).

25       202.    At all relevant times, on information and belief, Defendants failed, on a

26   company-wide basis, to provide written notice to Plaintiff and class members that lists the

27   requisite information set forth in Labor Code section 2810.5(a)(1)(A)-(C).  Defendants' failure

28   to provide Plaintiff and class members with written notice of basic information regarding their

employment with Defendants is in violation of California Labor Code sections 2810.5(a)(1)(A)-(C).

203.    As a result of the violations of California law herein described, Defendants unlawfully gained an unfair advantage over other businesses.  Plaintiff and class members have suffered pecuniary loss by Defendants' unlawful business acts and practices alleged herein.

204.    Pursuant to California Business & Professions Code sections 17200, *et seq.*, Plaintiff and class members are entitled to restitution of the wages withheld and retained by Defendants during a period that commences four years prior to the filing of this complaint; a permanent injunction requiring Defendants to pay all outstanding wages due to Plaintiff and class members; and an award of attorneys' fees pursuant to California Code of Civil Procedure section 1021.5 and other applicable laws; and an award of costs.

**THIRTEENTH CAUSE OF ACTION**

**Violation of California Business & Professions Code §§ 17200, *et seq.* –**

**Unfair Business Practices**

**(Against all Defendants)**

205.    Plaintiff incorporates by reference and re-alleges as if fully stated herein each and every allegation set forth above.

206.    Defendants are "persons" as defined by California Business & Professions Code sections 17201, as they are corporations, firms, partnerships, joint stock companies, and/or associations.

207.    Defendants' conduct, as alleged herein, has been, and continues to be, unfair, and harmful to Plaintiff, class members, and to the general public.  Plaintiff has suffered injury in fact and has lost money as a result of Defendants' unfair business practices.  Plaintiff seeks to enforce important rights affecting the public interest within the meaning of Code of Civil Procedure section 1021.5.

208.    Defendants' activities, namely Defendants' company-wide practice and/or policy of not paying Plaintiff and class members meal and rest period premiums due to them under Labor Code section 226.7, deprived Plaintiff and class members of the compensation guarantee

and enhanced enforcement implemented by section 226.7.  The statutory remedy provided by section 226.7 is a "'dual-purpose' remedy intended primarily to compensate employees, and secondarily to shape employer conduct."  *Safeway, Inc. v. Superior Court*, 238 Cal. App. 4th 1138, 1149 (2015).  The statutory benefits of section 226.7 were guaranteed to Plaintiff and class members as part of their employment with Defendants, and thus Defendants' practice and/or policy of denying these statutory benefits constitutes an unfair business practice in violation of California Business & Professions Code sections 17200, *et seq.*  (*Id.*)

209.    A violation of California Business & Professions Code sections 17200, *et seq.* may be predicated on any unfair business practice.  In the instant case, Defendants' policies and practices have violated the spirit of California's meal and rest period laws and constitute acts against the public policy behind these laws.

210.    Pursuant to California Business & Professions Code sections 17200, *et seq.*, Plaintiff and class members are entitled to restitution for the class-wide loss of the statutory benefits implemented by California Labor Code section 226.7 withheld and retained by Defendants during a period that commences four years prior to the filing of this complaint; a permanent injunction requiring Defendants to pay all statutory benefits implemented by California Labor Code section 226.7 due to Plaintiff and class members; an award of attorneys' fees pursuant to California Code of Civil Procedure section 1021.5 and other applicable laws; and an award of costs.

## REQUEST FOR JURY TRIAL

Plaintiff requests a trial by jury.

## PRAYER FOR RELIEF

Plaintiff, on behalf of all others similarly situated, prays for relief and judgment against Defendants, jointly and severally, as follows:

1.    For damages, unpaid wages, penalties, injunctive relief, and attorneys' fees in excess of twenty-five thousand dollars ($25,000), exclusive of interest and costs.  Plaintiff reserves the right to amend his prayer for relief to seek a different amount.

FIRST AMENDED CLASS ACTION COMPLAINT

1

<div align="center"><strong>Class Certification</strong></div>

2    2.    That this case be certified as a collective and class action;

3    3.    That Plaintiff be appointed as the representative of the Collective Action Class,

4    Class, and Subclass;

5    4.    That counsel for Plaintiff be appointed as class counsel.

6    <div align="center"><strong>As to the First Cause of Action</strong></div>

7    5.    That the Court declare, adjudge, and decree that Defendants wilfully violated the

8    FLSA by failing to pay all wages due to Plaintiff and Collective Action class members;

9    6.    An order that notice be sent to all Collective Action class members employed by

10   Defendants within three (3) years of the filing of this complaint giving them notice of the

11   opportunity to join this case pursuant to 29 U.S.C. § 216(b);

12   7.    Certification of the Collective Action Class as a collective action;

13   8.    For an award of unpaid wages, including overtime, liquidated damages, and

14   interest due under the FLSA to Plaintiff and Collective Action class members;

15   9.    For reasonable attorneys' fees and for costs of suit incurred herein pursuant to

16   29 U.S.C. § 216(b); and

17   10.    For such other and further relief as the Court may deem equitable and

18   appropriate.

19   <div align="center"><strong>As to the Second Cause of Action</strong></div>

20   11.    That the Court declare, adjudge, and decree that Defendants violated California

21   Labor Code sections 510 and 1198, and the applicable IWC Wage Order by willfully failing to

22   pay all overtime wages due to Plaintiff and class members;

23   12.    For general unpaid wages at overtime wage rates and such general and special

24   damages as may be appropriate;

25   13.    For pre-judgment interest on any unpaid overtime compensation commencing

26   from the date such amounts were due, or as otherwise provided by law;

27   14.    For reasonable attorneys' fees and for costs of suit incurred herein pursuant to

28   California Labor Code section 1194(a); and

15.    For such other and further relief as the Court may deem equitable and appropriate.

**As to the Third Cause of Action**

16.    That the Court declare, adjudge and decree that Defendants violated California Labor Code sections 1182.12, 1194, 1197, 1197.1, and 1198, and the applicable IWC Wage Order by willfully failing to pay minimum wages to Plaintiff and class members;

17.    For general unpaid wages and such general and special damages as may be appropriate;

18.    For pre-judgment interest on any unpaid compensation from the date such amounts were due, or as otherwise provided by law;

19.    For reasonable attorneys' fees and for costs of suit incurred herein pursuant to California Labor Code section 1194(a);

20.    For liquidated damages pursuant to California Labor Code section 1194.2; and

21.    For such other and further relief as the Court may deem equitable and appropriate.

**As to the Fourth Cause of Action**

22.    That the Court declare, adjudge, and decree that Defendants violated California Labor Code sections 226.7, 512(a), 516, and 1198, and the applicable IWC Wage Order by willfully failing to provide all meal periods to Plaintiff and class members;

23.    That the Court make an award to the Plaintiff and class members of one (1) hour of pay at each employee's regular rate of pay for each workday that a meal period was not provided;

24.    For all actual, consequential, and incidental losses and damages, according to proof;

25.    For premiums pursuant to California Labor Code section 226.7(c);

26.    For pre-judgment interest on any unpaid meal period premiums from the date such amounts were due, or as otherwise provided by law;

27.    For attorneys' fees pursuant to California Code of Civil Procedure section

1    1021.5, or as otherwise provided by law; and

2    28.    For such other and further relief as the Court may deem equitable and

3    appropriate.

4    **As to the Fifth Cause of Action**

5    29.    That the Court declare, adjudge and decree that Defendants violated California

6    Labor Code sections 226.7, 516, and 1198, and the applicable IWC Wage Order by willfully

7    failing to authorize and permit Plaintiff and class members to take all rest periods;

8    30.    That the Court make an award to the Plaintiff and class members of one (l) hour

9    of pay at each employee's regular rate of pay for each workday that a rest period was not

10   authorized and permitted;

11   31.    For all actual, consequential, and incidental losses and damages, according to

12   proof;

13   32.    For premiums pursuant to California Labor Code section 226.7(c);

14   33.    For pre-judgment interest on any unpaid rest period premiums from the date such

15   amounts were due, or as otherwise provided by law;

16   34.    For attorneys' fees pursuant to California Code of Civil Procedure section

17   1021.5, or as otherwise provided by law; and

18   35.    For such other and further relief as the Court may deem equitable and

19   appropriate.

20   **As to the Sixth Cause of Action**

21   36.    That the Court declare, adjudge and decree that Defendants violated the

22   recordkeeping provisions of California Labor Code section 226(a) and the applicable IWC

23   Wage Order as to Plaintiff and Subclass members, and willfully failed to provide accurate

24   itemized wage statements thereto;

25   37.    For all actual, consequential, and incidental losses and damages, according to

26   proof;

27   38.    For injunctive relief pursuant to California Labor Code section 226(h);

28   39.    For statutory penalties pursuant to California Labor Code section 226(e);

40.     For attorneys' fees and costs pursuant to California Labor Code section 226(e)(1); and

41.     For such other and further relief as the Court may deem equitable and appropriate.

**As to the Seventh Cause of Action**

42.     That the Court declare, adjudge and decree that Defendants violated California Labor Code sections 201 and 202 by willfully failing to pay overtime wages, minimum wages, meal and rest period premiums, and/or reporting time pay owed at the time of termination of the employment of Plaintiff and other terminated class members;

43.     For all actual, consequential and incidental losses and damages, according to proof;

44.     For waiting time penalties according to proof pursuant to California Labor Code section 203 for all employees who have left Defendants' employ;

45.     For pre-judgment interest on any unpaid wages from the date such amounts were due, or as otherwise provided by law;

46.     For attorneys' fees pursuant to California Code of Civil Procedure section 1021.5, or as otherwise provided by law; and

47.     For such other and further relief as the Court may deem equitable and appropriate.

**As to the Eighth Cause of Action**

48.     That the Court declare, adjudge and decree that Defendants violated California Labor Code section 204 by willfully failing to timely pay Plaintiff and class members overtime wages, minimum wages, meal and rest period premiums, and/or reporting time pay during their employment;

49.     For all actual, consequential and incidental losses and damages, according to proof;

50.     For statutory penalties according to proof pursuant to California Labor Code section 210;

1    51.    For pre-judgment interest on any unpaid wages from the date such amounts were

2    due, or as otherwise provided by law;

3    52.    For attorneys' fees pursuant to California Code of Civil Procedure section

4    1021.5, or as otherwise provided by law; and

5    53.    For such other and further relief as the Court may deem equitable and

6    appropriate.

7                          **As to the Ninth Cause of Action**

8    54.    That the Court declare, adjudge and decree that Defendants violated California

9    Labor Code section 1198 and California Code of Regulations, Title 8, section 11160(5)(B) by

10    failing to provide Plaintiff and class members with reporting time pay;

11    55.    For all actual, consequential and incidental losses and damages, according to

12    proof;

13    56.    For pre-judgment interest on any unpaid wages from the date such amounts were

14    due, or as otherwise provided by law; and

15    57.    For such other and further relief as the Court may deem equitable and

16    appropriate.

17                          **As to the Tenth Cause of Action**

18    58.    That the Court declare, adjudge and decree that Defendants violated California

19    Labor Code section 2802 by willfully failing to reimburse and/or indemnify all business-related

20    expenses and costs incurred by Plaintiff and class members;

21    59.    For unpaid business-related expenses and such general and special damages as

22    may be appropriate;

23    60.    For pre-judgment interest on any unpaid business-related expenses from the date

24    such amounts were due, or as otherwise provided by law;

25    61.    For all actual, consequential, and incidental losses and damages, according to

26    proof;

27    62.    For attorneys' fees and costs pursuant to California Labor Code section 2802(c),

28    or as otherwise provided by law; and

63.    For such other and further relief as the Court may deem equitable and appropriate.

**As to the Eleventh Cause of Action**

64.    That the Court declare, adjudge and decree that Defendants violated the following California Labor Code provisions as to Plaintiff and/or other aggrieved employees: 510 and 1198 (by failing to pay all overtime compensation); 1182.12, 1194, 1197, 1197.1, and 1198 (by failing to pay at least minimum wages for all hours worked); 226.7, 512(a), 516, and 1198 (by failing to provide all meal periods); 226.7, 516, and 1198 (by failing to authorize and permit all rest periods); 226(a), 1174(d), and 1198 (by failing to provide accurate wage statements and maintain accurate payroll records); 201 and 202 (by failing to timely pay all earned wages upon termination); 204 (by failing to timely pay all earned wages during employment); 222.5 (by failing to pay the costs of mandatory physical examinations and/or drug testing); 450 (by compelling and/or coercing employees to patronize employer's business); 551 and 552 (by failing to provide one day's rest in seven); 1198 and the applicable IWC Wage Order (by failing to provide reporting time pay); 2350 (by failing to provide sufficient toilet facilities in the workplace); 2802 (by failing to reimburse business expenses); and 2810.5 (by failing to provide written notice of information material to employment);

65.    For civil penalties pursuant to California Labor Code sections 210, 226.3, 256, 558, 1174.5, 1197.1, and/or 2699(a), (f) and (g), for violations of California Labor Code sections 201, 202, 204, 222.5, 226(a), 226.7, 450, 510, 512(a), 516, 551, 552, 1174(d), 1182.12, 1194, 1197, 1197.1, 1198, 2350, 2802, and 2810.5;

66.    For attorneys' fees and costs pursuant to California Labor Code section 2699(g)(1), and any and all other relevant statutes, for Defendant's violations of California Labor Code sections 201, 202, 204, 222.5, 226(a), 226.7, 450, 510, 512(a), 516, 551, 552, 1174(d), 1182.12, 1194, 1197, 1197.1, 1198, 2350, 2802, and 2810.5;

67.    For pre-judgment and post-judgment interest as provided by law; and

68.    For such other and further relief as the Court may deem equitable and appropriate.

1

**As to the Twelfth Cause of Action**

2      69.    That the Court declare, adjudge and decree that Defendants' conduct of failing

3  to provide Plaintiff and class members all overtime wages due to them, failing to provide

4  Plaintiff and class members all minimum wages due to them, failing to provide Plaintiff and

5  class members all meal periods, failing to authorize and permit Plaintiff and class members to

6  take all rest periods, failing to provide Plaintiff and class members accurate and complete wage

7  statements, failing to maintain accurate payroll records for Plaintiff and class members, failing

8  to timely pay Plaintiff and class members all earned wages during employment, failing to pay

9  the costs of mandatory physical examinations and/or drug testing, compelling and/or coercing

10  Plaintiff and class members to patronize Defendants' business, failing to provide one day's rest

11  in seven, failing to pay Plaintiff and class members reporting time pay, failing to provide

12  Plaintiff and class members with use of a sufficient number of toilet facilities, failing to

13  reimburse Plaintiff and class members for business-related expenses, and failing to provide

14  written notice of material terms of employment, constitutes an unlawful business practice in

15  violation of California Business and Professions Code sections 17200, *et seq.*;

16      70.    For restitution of unpaid wages to Plaintiff and all class members and

17  prejudgment interest from the day such amounts were due and payable;

18      71.    For the appointment of a receiver to receive, manage, and distribute any and all

19  funds disgorged from Defendants and determined to have been wrongfully acquired by

20  Defendants as a result of violations of California Business & Professions Code sections 17200,

21  *et seq.*;

22      72.    For reasonable attorneys' fees and costs of suit incurred herein pursuant to

23  California Code of Civil Procedure section 1021.5; and

24      73.    For such other and further relief as the Court may deem equitable and

25  appropriate.

26      **As to the Thirteenth Cause of Action**

27      74.    That the Court declare, adjudge and decree that Defendants' conduct of denying

28  Plaintiff and class members the statutory benefits guaranteed under section 226.7 constitutes an

unfair business practice in violation of California Business and Professions Code sections 17200, *et seq.*;

75.    For restitution of the statutory benefits under section 226.7 unfairly withheld from Plaintiff and class members and prejudgment interest from the day such amounts were due and payable;

76.    For the appointment of a receiver to receive, manage, and distribute any and all funds disgorged from Defendants and determined to have been wrongfully acquired by Defendants as a result of violations of California Business & Professions Code sections 17200, *et seq.*;

77.    For reasonable attorneys' fees and costs of suit incurred herein pursuant to California Code of Civil Procedure section 1021.5;

78.    For pre-judgment and post-judgment interest as provided by law; and

For such other and further relief as the Court may deem equitable and appropriate.

Dated: July 25, 2022                          Respectfully submitted,

                                              Capstone Law APC

                                        By:   _____
                                              Robert Drexler
                                              Molly DeSario
                                              Jonathan Lee

                                              Attorneys for Plaintiff Richard Rodriguez