Raul Perez (SBN 174687)
Raul.Perez@capstonelawyers.com
Robert J. Drexler, Jr. (SBN 119119)
Robert.Drexler@capstonelawyers.com
Jonathan Lee (SBN 267146)
Jonathan.Lee @capstonelawyers.com
CAPSTONE LAW APC
1875 Century Park East, Suite 1000
Los Angeles, California 90067
Telephone:      (310) 556-4811
Facsimile:      (310) 943-0396

Attorneys for Plaintiff Richard Rodriguez

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| RICHARD RODRIGUEZ, individually, and on behalf of other members of the general public similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>BELFOR USA GROUP, INC., a Colorado corporation; BELFOR ENVIRONMENTAL, INC. a Colorado corporation; OAKWOOD CONSTRUCTION AND RESTORATION SERVICES, INC. a California corporation; 1 800 WATER DAMAGE NORTH AMERICA, LLC, a Delaware limited liability company; and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No. 5:22-cv-02071-VKD<br><br>Assigned to the Hon. Virginia K. DeMarchi<br><br>**NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF AMENDED CLASS, COLLECTIVE, AND PAGA ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date:      May 6, 2025<br>Time:     10:00 a.m.<br>Place:     Courtroom 2 |

**TO THE HONORABLE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on May 6, 2025 at 10:00 a.m., or as soon thereafter as counsel may be heard, in Courtroom 2 of the above-captioned court, located at 280 South 1st Street, San Jose, California 95113, the Honorable Virginia K. DeMarchi presiding, Plaintiff Richard Rodriguez will, and hereby does, move this Court to:

1.      Preliminarily approve the settlement set forth in the Amended Joint Stipulation of Class, Collective, and PAGA Action Settlement and Release, attached as Exhibit 1 to the Declaration of Raul Perez;

2.      Conditionally certify the proposed Settlement Class;

3.      Conditionally certify the proposed FLSA collective;

4.      Appoint Richard Rodriguez as the representative for the Settlement Class and FLSA collective;

5.      Appoint Capstone Law APC as Class Counsel;

6.      Approve distribution of the proposed Notice of Class Action Settlement to the Settlement Class and the FLSA Notice to FLSA Collective Action Members;

7.      Appoint CPT Group, Inc. as the Settlement Administrator; and

8.      Set a hearing date for final approval of the settlement.

This Motion is based upon: (1) this Notice of Motion and Motion; (2) the Memorandum of Points and Authorities in support of Motion for Preliminary Approval of Amended Class, Collective, and PAGA Action Settlement; (3) the Declaration of Raul Perez; (4) the Declaration of Richard Rodriguez; (5) the Declaration of Julie Green on behalf of CPT, Group, Inc.; (6) the Amended Joint Stipulation of Class, Collective, and PAGA Action Settlement and Release; (7) the Notice of Class Action Settlement; (8) the FLSA Notice; (9) the [Proposed] Order Granting Preliminary Approval of the Class, Collective, and PAGA Action Settlement; (10) the records, pleadings, and papers filed in this action; and (11) upon such other documentary and oral evidence or argument as may be presented to the Court at or prior to the hearing of this Motion.

As this Motion is unopposed, the Parties respectfully request relief from the page limit requirement set by LR 7-2.

1    Dated: March 21, 2025                    Respectfully submitted,

2                                        By:  /s/ Robert J. Drexler, Jr.

3                                             Raul Perez
                                             Robert J. Drexler, Jr.
4                                             Jonathan Lee
                                             **CAPSTONE LAW APC**

5                                             Attorney for Plaintiff Richard Rodriguez

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MOTION FOR PRELIMINARY APPROVAL OF AMENDED CLASS, COLLECTIVE, AND PAGA ACTION SETTLEMENT
5:22-cv-02071-VKD

# TABLE OF CONTENTS

I.   INTRODUCTION ................................................................................................. 1

II.  FACTS AND PROCEDURE ................................................................................ 3

    A.   Brief Overview of the Litigation .................................................................. 3

    B.   Plaintiff's Counsel Conducted a Thorough Investigation of the Factual and Legal
        Issues and Were Thus Able to Objectively Assess the Settlement's Reasonableness ............ 4

III. SETTLEMENT TERMS ...................................................................................... 5

    A.   The Proposed Settlement Fully Resolves Plaintiff's Claims ........................ 5

        1.   Composition of the Settlement Class ................................................... 5

        2.   Composition of the FLSA Collective .................................................. 5

        3.   Composition of the PAGA Settlement Group ...................................... 5

        4.   Settlement Consideration ..................................................................... 5

        5.   Formulae for Calculating Payments from the Net Settlement Fund, FLSA
            Settlement Fund, and PAGA Fund ...................................................... 6

        6.   Releases by Class Members, FLSA Opt In Claimants, and PAGA Members ............ 6

        7.   The Settlement Administrator Selection Process ................................. 8

        8.   Worksafe's Mission State—Worker Protection and Advocacy—Furthers the
            Underlying Purposes of this Class Action ............................................ 8

IV.  ARGUMENT ...................................................................................................... 9

    A.   Conditional Class Certification Is Appropriate for Settlement Purposes ................ 9

    B.   Plaintiff's Claims Present Predominant Questions of Law and Fact ......................... 9

        1.   Plaintiff's Minimum Wage Claim Presents Predominant Common Issues of
            Law and Fact ..................................................................................... 10

        2.   Plaintiff's Meal Period Claim Presents Predominant Common Issues of Law
            and Fact ............................................................................................ 11

        3.   Plaintiff's Rest Period Claim Presents Predominant Common Issues of Law
            and Fact ............................................................................................ 12

        4.   Plaintiff's Business Expense Claim Presents Predominant Common Issues of

MOTION FOR PRELIMINARY APPROVAL OF AMENDED CLASS, COLLECTIVE, AND PAGA ACTION SETTLEMENT
5:22-cv-02071-VKD

Law and Fact ................................................................................................... 13

      5.    Plaintiff's Reporting-Time Claim Presents Predominant Common Issues of

           Law and Fact ....................................................................................... 14

      6.    Plaintiff's Derivative Claims Presents Predominant Common Issues of Law

           and Fact ............................................................................................... 15

      7.    Plaintiff Will Adequately Represent the Interests of the Proposed Settlement

           Class.................................................................................................... 15

      8.    Class Settlement Is Superior to Other Available Means of Resolution ........................ 16

   C.   The Proposed Class Notice Adequately Informs Class Members About the Case and

      Proposed Settlement ........................................................................................ 16

   D.   The Proposed Class Action Settlement Should Receive Preliminary Approval .................... 17

      1.    Comparable Settlements Negotiated by Plaintiff's Counsel ............................ 18

      2.    The Relief Provided by the Settlement is Fair and Reasonable .................................... 19

      3.    The Class Settlement Amount is Within the Range of Reasonableness ...................... 20

      4.    The Settlement Provides for an Equitable Method of Allocating Relief to Class

           Members ............................................................................................. 21

      5.    The Court Should Preliminarily Approve the Negotiated Attorneys' Fees and

           Costs ................................................................................................... 21

      6.    There Are No Obvious Deficiencies with the Settlement or Preferential

           Treatment to Certain Class Members ............................................................ 22

   E.   The Court Should Preliminarily Approve the Negotiated Class Representative

      Enhancement Payment .................................................................................... 22

   F.   The Consideration Provided for the FLSA Claim Is Fair and Reasonable In Light of

      the Amount in Controversy Discounted by the Risks of Continued Litigation .................... 23

   G.   The Consideration Provided for the PAGA Claim Is Fair and Reasonable In Light of

      the Amount in Controversy Discounted by the Risks of Continued Litigation .................... 24

V.    CONCLUSION.................................................................................................... 26

# TABLE OF AUTHORITIES

**FEDERAL CASES**

*Alonzo v. Maximus, Inc.*, 275 F.R.D. 513 (C.D. Cal. 2011)..............................................................9

*Alvarez v. IBP, Inc.*, 339 F.3d 894, 909 (9th Cir. 2003) (quoting *Herman v. RSR Sec.*
  *Servs. Ltd.*, 172 F.3d 132 (2d Cir. 1999) .......................................................................24

*Balderas v. Massage Envy Franchising, LLC*, No. 12-cv-06327-NC, 2014 WL 3610945
  (N.D. Cal. July 21, 2014) ................................................................................................21

*Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245 (N.D. Cal. 2015) .......................................21

*Chalmers v. DSSV, Inc.*, No. 22-CV-08863-HSG, 2024 WL 4844376 (N.D. Cal. Nov.
  19, 2024) ..........................................................................................................................24

*Chao v. A-One Med. Servs., Inc.*, 346 F.3d 908 (9th Cir. 2003)...................................................24

*Churchill Village, LLC v. Gen. Elec.*, 361 F.3d 566 (9th Cir. 2004)...........................................18

*Dilts v. Penske Logistics, LLC*, 267 F.R.D. 625 (S.D. Cal. 2010)...............................................15

*Dixon v. Cushman*, 18-cv-05813-JSC, 2022 WL 1189883 (N.D. Cal. Apr. 21, 2022) ...............21

*Eisen v. Carlisle & Jacqueline*, 417 U.S. 156, 94 S. Ct. 2140, 40 L. Ed. 2d 732 (1974)...........16

*Franklin v. Kaypro*, 884 F.2d 1222 (9th Cir. 1989) ....................................................................18

*Frlekin v. Apple, Inc.*, 2015 WL 6851424 (N.D. Cal. Nov. 7, 2015)..........................................11

*Hamilton v. Juul Labs, Inc.*, No. 20-CV-03710-EMC, 2021 WL 5331451 (N.D. Cal.
  Nov. 16, 2021)..................................................................................................................26

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) ..............................................15, 16, 18

*Haro v. City of Los Angeles*, 745 F.3d 1249, 1259 (9th Cir. 2014)..............................................24

*Hopson v. Hanesbrands Inc.*, No. CV-08-0844 EDL, 2009 WL 928133 (N.D. Cal. Apr.
  3, 2009) ............................................................................................................................26

*In re AutoZone, Inc.*, 289 F.R.D. 526 (N.D. Cal. 2012) ..............................................................10

*In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011)..................................22

*In re Bluetooth Headset Products Liability Litig.*, 654 F.3d 935 (9th Cir. 2011) ........................22

*In re Nat'l Football League Players' Concussion Injury Litig.*, 961 F. Supp. 2d 708 (E.D.
  Pa. 2014) ..........................................................................................................................19

*In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036 (N.D. Cal. 2008) ..........................................21

*In re Tableware Antitrust Litig.,* 484. F. Supp. 2d 1078 (N.D. Cal. 2007) ....................................20

*In re Taco Bell Wage & Hour Actions*, 2012 U.S. Dist. LEXIS 168219 (E.D. Cal. 2012) .........................9

*In re Toys R Us-Delaware, Inc.-- Fair & Accurate Credit Transactions Act (FACTA)*

    *Litig.*, 295 F.R.D. 438 (C.D. Cal. 2014) ..........................................................20

*Jones v. Agilysys, Inc.*, 2014 WL 2090034 (N.D. Cal. May 19, 2014) ...........................................24

*Kamar v. Radio Shack Corp.*, 254 F.R.D. 387 (C.D. Cal. 2008) .................................................9

*La Fleur v. Medical Management Intern, Inc.*, No. 13-00398-VAP, 2014 WL 2967475

    (C.D. Cal. June 25, 2014) .........................................................................22

*Leyva v. Medline Indus. Inc.*, 716 F.3d 510 (9th Cir. 2013) ...................................................9

*Linney v. Cellular Alaska P'ship*, 151 F.3d 1234 (9ᵗʰ Cir. 1998) ...........................................20

*Lynn's Food Stores, Inc. v. U.S.*, 679 F.2d 1350 (11th Cir. 1982) ...........................................23

*Matter of Continental Illinois Securities Litig.*, 962 F.2d 566 (7th Cir. 1992) ............................23

*Merante v. Am. Inst. for Foreign Study, Inc.*, 2022 WL 2918896 (N.D. Cal. July 25,

    2022) .............................................................................................25

*Montoya v. Intelicare Direct, Inc.*, No. 15CV1269-LAB, 2016 WL 4142342 ((S.D. Cal.

    Aug. 4, 2016) ....................................................................................19

*Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615 (9ᵗʰ Cir. 1982) ................................20

*Richie v. Blue Shield of California*, No. C-13-2693 EMC, 2014 WL 6982943 (N.D. Cal.

    Dec. 9, 2014) ...............................................................................13, 14

*Rodriguez v. West Pub. Corp.*, 463 F.3d 948 (9ᵗʰ Cir. 2009) ..............................................20

*Rodriguez v. West Publ'g Corp.,* 563 F.3d 948 (9th Cir. 2009) ...........................................22

*Ruch v. AM Retail Group, Inc.*, 2016 WL 1161453 (N.D. Cal. Mar. 24, 2016) .............................20

*Selk v. Pioneers Mem'l Healthcare Dist.*, 159 F. Supp. 3d 1164 (S.D. Cal. 2016) .........................24

*Smith v. Kaiser Found. Hosps.*, 2020 WL 5064282 (S.D. Cal. Aug. 26, 2020) ..............................26

*Stovall-Gusman v. W.W. Granger, Inc.*, No. 13-cv-02540-HSG, 2015 WL 3776765

    (N.D. Cal. June 17, 2015) .........................................................................21

*Wal-Mart Stores, Inc. v. Dukes,* 131 S. Ct. 2541 (2011) ..................................................9

*Wolin v. Jaguar Land Rover N. Am.*, 617 F.3d 1168 (9th Cir. 2010) ............................................ 16

*Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180 (9th Cir. 2001) .................................................. 9

**STATE CASES**

*Acree v. General Motors Acceptance Corp.*, 92 Cal. App. 4th 385 (2001)................................... 12

*Brinker Rest. Corp. v. Super. Ct.*, 53 Cal. 4th 1004 (2012)...................................... 10, 12, 13

*Cicairos v. Summit Logistics*, Inc., 133 Cal. App. 4th 949 (2005) ....................................... 11

*Cochran v. Schwan's Home Service, Inc.*, 228 Cal. App. 4th 1137 (2014) ........................... 14

*Morillion v. Royal Packing Co.*, 22 Cal. 4th 575 (2000).................................................. 10

*Murphy v. Kenneth Cole Prods., Inc.*, 40 Cal. 4th 1094 (2007) ...................................... 11

*Nordstrom Com. Cases*, 186 Cal. App. 4th 576 (2010) ............................................ 26

*Sav-On Drug Stores, Inc. v. Super. Ct.*, 34 Cal. 4th 319 (2004) ................................... 12

**FEDERAL STATUTES**

29 U.S.C. § 216(b) .......................................................................................... 23

Fed. R. Civ. P. 23 ............................................................................................. 16

Fed. R. Civ. P. 23(a) ...................................................................................9, 13, 15

Fed. R. Civ. P. 23(a)(2) .................................................................................9, 10

Fed. R. Civ. P. 23(a)(4) ...................................................................................... 15

Fed. R. Civ. P. 23(b) ............................................................................................ 9

Fed. R. Civ. P. 23(b)(3) ...............................................................................9, 10

Fed. R. Civ. P. 23(c)(2) ..............................................................................16, 17

Fed. R. Civ. P. 23(e)(1)(A) ............................................................................ 17

**STATE STATUTES**

8 Cal. Code of Reg. § 11020(11)(B)............................................................. 12

8 Cal. Code of Regs. § 11160 ............................................................... 10, 12, 14

Cal. Bus. & Prof. Code §§ 17200 *et seq.* (Unfair Comp. Law (UCL)) ..................... 15

Cal. Lab. Code § 201 ............................................................................................... 15

Cal. Lab. Code § 202 ............................................................................................... 15

Cal. Lab. Code § 203 ............................................................................................... 15

Cal. Lab. Code § 204 ............................................................................................... 15

Cal. Lab. Code § 226 ............................................................................................... 15

Cal. Lab. Code § 226.7(b) ................................................................................... 11, 12

Cal. Lab. Code § 510 ............................................................................................... 10

Cal. Lab. Code § 512(a) ........................................................................................... 11

 Cal. Lab. Code § 1194 ....................................................................................... 10, 15

Cal. Lab. Code § 1197 ........................................................................................ 10, 15

Cal. Lab. Code § 1197.1 ..................................................................................... 10, 15

Cal. Lab. Code § 1198 .................................................................................... 10, 14, 15

**SECONDARY AUTHORITIES**

3 Conte & Newberg, *Newberg on Class Actions* (4th ed. 2002) .................................. 19

Manual for Complex Litigation (4th ed. 2004) ................................................... 17, 18

*Manual for Complex Litigation*, Third (Fed. Judicial Center 1995) ........................... 17

MOTION FOR PRELIMINARY APPROVAL OF AMENDED CLASS, COLLECTIVE, AND PAGA ACTION SETTLEMENT
5:22-cv-02071-VKD

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

2

**I.    INTRODUCTION**

3

Plaintiff Richard Rodriguez ("Plaintiff") seeks preliminary approval of the Amended Joint

4

Stipulation of Class, Collective, and PAGA Action Settlement and Release,[1] which if approved, would

5

provide considerable monetary relief for thousands of current and former employees of Defendants

6

BELFOR USA Group, Inc., BELFOR Environmental, Inc., Oakwood Construction and Restoration

7

Services, Inc., and 1 800 Water Damage North America, LLC ("Defendants") (collectively with

8

Plaintiff, the "Parties"). The principal terms of the Settlement provide for the following:

9

(1)    Conditional certification of a Settlement Class defined as: All persons who were

10

employed by Defendants in the State of California in non-exempt positions at any time

11

during the period from February 25, 2018 through the date of Preliminary Approval

12

("Class Members").

13

(2)    Conditional certification of a Fair Labor Standards Act ("FLSA") collective defined as:

14

All persons who were employed by Defendants in the United States of America in non-

15

exempt positions at any time during the period from February 25, 2019 through the date

16

of Preliminary Approval.

17

(3)    A **non-reversionary** Gross Settlement Amount of $1,622,000. The Gross Settlement

18

Amount includes:

19

(a)    A Net Settlement Fund of $799,500 (the Gross Settlement Amount minus the

20

requested Attorneys' Fees and Costs, Settlement Administration Costs, the

21

FLSA Settlement Fund, the PAGA Settlement Amount, and the Class

22

Representative Enhancement Payment), which will be allocated to all Class

23

Members on a pro-rata basis according to the number of weeks each Class

24

Member worked during the Class Period. **The entire Net Settlement Fund will**

25

**be paid to all Class Members who do not opt out of the Settlement Class,**

26

**and without the need to submit claims for payment.**

27

28

---

[1] Hereinafter "Settlement Agreement" or "Settlement." Unless indicated otherwise, capitalized terms used herein have the same meaning as those defined by the Settlement Agreement.

(b)  A FLSA Settlement Fund of $250,000 that will be paid to all FLSA Opt In Claimants in proportion to the number of weeks each FLSA Opt In Claimant worked during the FLSA Period.

(c)  A $200,000 PAGA settlement, of which 75% ($150,000) will be paid to the Labor & Workforce Development Agency ("LWDA"), and the remaining 25% ($50,000) ("PAGA Fund"), will be payable to PAGA Members, defined as: All persons who were employed by Defendants in the State of California in non-exempt positions at any time during the period from March 8, 2021 through the date of Preliminary Approval. **The entire PAGA Fund will be paid to all PAGA Members, and without the need to submit claims for payment.**

(d)  Attorneys' fees in the amount of $300,000, and litigation costs and expenses not to exceed $30,000, to Capstone Law APC ("Plaintiff's Counsel").

(e)  Settlement administration costs of approximately $32,500, to be paid to the jointly selected Settlement Administrator, CPT Group, Inc.

(f)  A Class Representative Enhancement Payment of $10,000 to Richard Rodriguez for his service on behalf of the Settlement Class, the risks he took in bringing the action on behalf of the class, and for a general release of all claims arising out of his employment with Defendants.

An objective evaluation of the Settlement confirms that the relief negotiated on the Settlement Class's behalf is fair, reasonable, and valuable. The Settlement was negotiated by the Parties at arm's length with helpful guidance from Louis Marlin, Esq., an experienced and well-respected class action mediator, and the Settlement confers substantial benefits to Class Members, FLSA Collective Action Members, and PAGA Members. This relief is particularly impressive when viewed against the difficulties encountered by plaintiffs pursuing wage and hour cases. Moreover, by settling now rather than proceeding to trial, Class Members will not have to wait (possibly years) for relief, nor will they have to bear the risk of class certification being denied or of Defendants prevailing at trial, or of Plaintiff prevailing at trial but losing on appeal.

As discussed below, the proposed Settlement satisfies all criteria for preliminary settlement

approval under federal law and falls within the range of reasonableness. Accordingly, Plaintiff respectfully requests that this Court grant preliminary approval of the Settlement Agreement.

## II.    FACTS AND PROCEDURE

### A.    Brief Overview of the Litigation

Defendants provide disaster restoration services for damage caused by fire, water, wind, or other catastrophes across the United States. Defendants employed Plaintiff Richard Rodriguez as a non-exempt Water Damage Specialist-Laborer in Fresno, California from approximately March 2020 to December 2021. (Declaration of Richard Rodriguez ¶ 2.)

Plaintiff filed this wage and hour action against Defendants in the Superior Court of the State of California, County of Santa Clara on February 25, 2022. (Declaration of Raul Perez ["Perez Decl."] ¶ 2.) Defendants removed the Action to this Court on March 31, 2022. (*Id.*)

Plaintiff's operative First Amended Complaint alleges that Defendants violated the following provisions of the Fair Labor Standards Act ("FLSA"), the California Labor Code,[2] and the California Business and Professions Code: (1) 29 U.S.C. §§ 201, *et seq.* (FLSA); (2) Sections 510 and 1198 (unpaid overtime); (3) Sections 1182.12, 1194, 1197, 1197.1, and 1198 (unpaid minimum wages); (4) Sections 226.7, 512(a), 516, and 1198 (failure to provide meal periods); (5) Sections 226.7, 516, and 1198 (failure to authorize and permit rest periods); (6) Sections 226(a), 1174(d), and 1198 (non-compliant wage statements and failure to maintain payroll records); (7) Sections 201 and 202 (wages not timely paid upon termination); (8) Section 204 (failure to timely pay wages during employment); (9) Section 1198 and California Code of Regulations Title 8, § 11160 Subdivision 5(B) (failure to provide reporting time pay); (10) Section 2802 (unreimbursed business expenses); (11) Sections 2698, *et seq.* (PAGA); (12) California Business & Professions Code sections 17200, *et seq.* (unlawful business practices); and (13) California Business & Professions Code sections 17200, *et seq.* (unfair business practices). (Perez Decl. ¶ 3.)

On June 23, 2023, the Parties participated in full-day mediation with Louis Marlin, Esq., an experienced mediator of wage and hour actions. (*Id.* at ¶ 4.) Mr. Marlin helped to manage the Parties'

---

[2] Unless indicated otherwise, further statutory references are to the California Labor Code.

1    expectations and provided a useful, neutral analysis of the issues and risks to both sides. (*Id.*) With Mr.

2    Marlin's guidance, the Parties were eventually able to negotiate a settlement of Plaintiff's claims. (*Id.*)

3          Plaintiff filed a Motion for Preliminary Approval of the Class, Collective, and PAGA Action

4    Settlement (Dkt. No. 39) on December 19, 2023.  (Perez Decl. ¶ 5.) In response to the Court's request for

5    a supplemental submission, the Parties filed an amended settlement agreement on March 8, 2024. (*Id.*)

6    The Court denied the motion without prejudice on June 13, 2024. (*Id.*) Thereafter, the Parties engaged in

7    further protracted settlement negotiations, during which Defendants agreed to increase the Gross

8    Settlement Amount by $422,000, and Plaintiff agreed to cap his request for attorneys' fees at $300,000,

9    or approximately 18% of the Gross Settlement Amount. (*Id.*) The Parties agreed on various amendments

10   to the settlement to address the concerns identified by the Court in its order denying the motion. (*Id.*)

11         The terms of the amended settlement are now set forth in the Amended Joint Stipulation of

12   Class, Collective, and PAGA Action Settlement and Release. (Perez Decl. ¶ 6, Ex. 1.)

13       **B.**    **Plaintiff's Counsel Conducted a Thorough Investigation of the Factual and Legal**

14           **Issues and Were Thus Able to Objectively Assess the Settlement's Reasonableness**

15         As set forth in greater detail in the Perez Decl., based on their analysis of documents and

16   employee data produced by Defendants, including Defendants' labor policies and procedures manuals,

17   employee demographic data, and employees' time and wage records, Plaintiff's Counsel were able to

18   realistically assess the value of Plaintiff's claims and intelligently engage defense counsel in settlement

19   discussions that culminated in the proposed settlement now before the Court. (Perez Decl. ¶¶ 7-11.)

20         By engaging in a thorough investigation and evaluation of Plaintiff's claims, Plaintiff's Counsel

21   can opine that the Settlement, for the consideration and on the terms set forth in the Settlement

22   Agreement, is fair, reasonable, and adequate, and is in the best interests of Class Members, FLSA

23   Collective Action Members, and PAGA Members in light of all known facts and circumstances,

24   including the risk of significant delay and uncertainty associated with litigation, various defenses asserted

25   by Defendants. (*Id.* at ¶ 12.)

26

27

28

III.    **SETTLEMENT TERMS**

A.    **The Proposed Settlement Fully Resolves Plaintiff's Claims**

1.    **Composition of the Settlement Class**

The proposed Settlement Class consists of all persons who were employed by Defendants in the State of California in non-exempt positions at any time during the period from February 25, 2018 through the date of Preliminary Approval. (Settlement Agreement ¶ 5.) There are approximately 1,034 Class Members. (Perez Decl. ¶ 13.)

2.    **Composition of the FLSA Collective**

The proposed FLSA collective consists of all persons who were employed by Defendants in the United States of America in non-exempt positions at any time during the period from February 25, 2019 through the date of Preliminary Approval. (Settlement Agreement ¶ 14.) There are approximately 4,349 FLSA Collective Action Members. (Perez Decl. ¶ 13.)

3.    **Composition of the PAGA Settlement Group**

The proposed PAGA settlement group consists of all persons who were employed by Defendants in the State of California in non-exempt positions at any time during the period from March 8, 2021 through the date of Preliminary Approval. (Settlement Agreement ¶ 25.) There are approximately 697 PAGA Members. (Perez Decl. ¶ 13.)

4.    **Settlement Consideration**

Plaintiff and Defendants have agreed to settle the underlying class claims in exchange for the Gross Settlement Amount of $1,622,000:

| Gross Settlement Amount | $1,622,000.00 |
|---|---|
| FLSA Settlement Fund | -$250,000.00 |
| PAGA Settlement Amount<br>($150,000 to LWDA / $50,000 to PAGA Members) | -$200,000.00 |
| Attorneys' Fees | -$300,000.00 |
| Litigation Costs | -$30,000.00 |
| Settlement Administration Costs | -$32,500.00 |
| Class Representative Enhancement Payment | -$10,000.00 |
| **Net Settlement Fund** | **$799,500.00** |

The FLSA Settlement Fund, PAGA Settlement Amount, and Net Settlement Fund will be allocated to FLSA Opt In Claimants, PAGA Members, and Class Members in proportion to Workweeks worked

during the applicable FLSA Period, PAGA Period, and Class Period. The average estimated payments are as follows:

| Fund | Amount | Number of Employees | Average Payment |
|---|---|---|---|
| Net Settlement Fund | $799,500.00 | 1,034 Class Members | $773.21 |
| FLSA Settlement Fund | $250,000.00 | 4,349 Class Members | $57.48 |
| PAGA Settlement Amount | $50,000.00 | 697 PAGA Members | $71.74 |

(Settlement Agreement ¶¶ 43-47.)

     **5.**       **Formulae for Calculating Payments from the Net Settlement Fund, FLSA Settlement Fund, and PAGA Fund**

Payments to Participating Class Members will be made from the Net Settlement Fund. (Settlement Agreement ¶ 52(a).) The individual allocations will be calculated on a pro-rata basis using the number of weeks worked by each Participating Class Member during the Class Period. (*Id.*)

Payments to FLSA Opt In Claimants will be made from the FLSA Settlement Fund. (Settlement Agreement ¶ 52(c).) The individual allocations will be calculated on a pro-rata basis using the number of weeks worked by each FLSA Opt In Claimant during the FLSA Period. (*Id.*)

Payments to PAGA Members will be made from the PAGA Fund. (Settlement Agreement ¶ 52(b).) The individual allocations will be calculated on a pro-rata basis using the number of weeks worked by each PAGA Member during the PAGA Period. (*Id.*)

     **6.**       **Releases by Class Members, FLSA Opt In Claimants, and PAGA Members**

In exchange for the Gross Settlement Amount, Plaintiff and Participating Class Members will agree to release the Released Class Claims during the Class Period:

> Any and all claims, rights, demands, liabilities, and causes of action, that were asserted or could have been asserted in the operative complaint or that otherwise reasonably arise from, or are reasonably related to, the same or substantially similar set of operative facts as those set forth in the operative complaint during the Class Period, including but not limited to: (1) California Labor Code sections 510 and 1198 (unpaid overtime); (2) California Labor Code sections 1182.12, 1194, 1197, 1197.1, and 1198 (unpaid minimum wages); (3) California Labor Code sections 226.7, 512(a), 516, and 1198 (failure to provide meal periods); (4) California Labor Code sections 226.7, 516, and 1198 (failure to authorize and permit rest periods); (5) California Labor Code sections 226(a), 1174(d), and 1198 (non-compliant wage statements and failure to maintain payroll records); (6) California Labor Code sections 201 and 202 (wages not timely paid upon termination); (7)

California Labor Code section 204 (failure to timely pay wages during employment); (8) California Labor Code section 1198 and California Code of Regulations Title 8, section 11160 Subdivision 5(B) (failure to provide reporting time pay); (9) California Labor Code section 2802 (unreimbursed business expenses); (10) California Business & Professions Code sections 17200, *et seq.* (unlawful business practices); and (11) California Business & Professions Code sections 17200, *et seq.* (unfair business practices) (including, without limitation, any claims relating to Plaintiff's alleged regular rate of pay allegations and reporting time pay allegations including to the extent applicable to any or all of the above causes of action).

(Settlement Agreement ¶¶ 33, 66.)

In exchange for the FLSA Settlement Fund, Plaintiff and FLSA Opt In Claimants will agree to release the Released FLSA Claims during the FLSA Period:

Any and all claims, rights, demands, liabilities, and causes of action arising under the Fair Labor Standards Act, both known and unknown, that were asserted or could reasonably have been asserted in the Action or that otherwise reasonably arise from, or are reasonably related to, the facts alleged or substantially similar set of operative facts, including, but not limited to, any claim for failure to pay overtime wages, minimum wages, unpaid wages, and failure to pay overtime wages at the regular rate of pay during the FLSA Period.

(Settlement Agreement ¶¶ 34, 68.)

In exchange for the PAGA Settlement Amount, Plaintiff and PAGA Members will agree to release the Released PAGA Claims during the PAGA Period:

Any and all claims for civil penalties under California Labor Code §§ 2698, *et seq.*, that were asserted or could reasonably have been asserted in Plaintiff's LWDA letter or in the operative complaint or that otherwise reasonably arise from, or are reasonably related to, the same or substantially similar set of operative facts as those set forth in Plaintiff's LWDA letter or operative complaint, during the PAGA Period, including but not limited to claims for violation of: (1) California Labor Code sections 510 and 1198 (unpaid overtime); (2) California Labor Code sections 1182.12, 1194, 1197, 1197.1, and 1198 (unpaid minimum wages); (3) California Labor Code sections 226.7, 512(a), 516, and 1198 (failure to provide meal periods); (4) California Labor Code sections 226.7, 516, and 1198 (failure to authorize and permit rest periods); (5) California Labor Code sections 226(a), 1174(d), and 1198 (non-compliant wage statements and failure to maintain payroll records); (6) California Labor Code sections 201 and 202 (wages not timely paid upon termination); (7) California Labor Code section 204 (failure to timely pay wages during employment); (8) California Labor Code section 1198 and California Code of Regulations Title 8, section 11160 Subdivision 5(B) (failure to provide reporting time pay); (9) California Labor Code section 2802 (unreimbursed business expenses); and (10) California Labor Code sections 2698, *et seq.* based on the foregoing. Nothing in this provision releases any claims that cannot be released as a matter of law, but this

paragraph will be given the broadest possible interpretation allowable by law.

(Settlement Agreement ¶¶ 35, 67.)

## 7. The Settlement Administrator Selection Process

During the settlement administrator selection process, Plaintiff's Counsel obtained bids from the following administrators: (1) CPT Group, Inc. ("CPT"); (2) ILYM Group, Inc.; and (2) Phoenix Class Action Administration. (*See* Perez Decl. ¶ 13, Exhibits 2-4.) All administrators were given the same updated notice parameters and provided bids as follows:

| Administrator | Bid Amount |
|---|---|
| CPT Group, Inc. | $32,500.00 |
| ILYM Group, Inc. | $45,000.00 |
| Phoenix Class Action Administration | $47,950.00 |

Due to their familiarity with CPT, and the fact that it submitted the lowest of the three bids, the Parties selected CPT to administer the settlement. For their part, Plaintiff's Counsel have worked with CPT on multiple occasions over the past few years, including: *Arellano v. R&B Sales and Marketing, Inc.*, No. 20STCV04112 (Los Angeles County Superior Court); *Limon v. Crestline Hotels & Resorts, LLC*, No. 20STCV37266 (Los Angeles County Superior Court); *Trento v. U.S. Security Associates, Inc.*, No. RG18932522 (Alameda County Superior Court); *Saldana v. Hydrochem LLC*, No. MSC19-02624 (Contra Costa County Superior Court). (Perez Decl. ¶ 12.)

## 8. Worksafe's Mission State—Worker Protection and Advocacy—Furthers the Underlying Purposes of this Class Action

Funds represented by Individual Settlement Payment checks returned as undeliverable and Individual Settlement Payment checks remaining un-cashed for more than one hundred and eighty (180) calendar days after issuance will be tendered to Worksafe. (Settlement Agreement ¶ 72.)

Worksafe is a California-based organization dedicated to promoting and protecting workplace safety. https://worksafe.org/about/overview.html. Worksafe advocates for strong occupational safety and health (OSH) protections for workers—particularly low-income, immigrant, and contingent workers. *Id.*

Plaintiff proposed Worksafe as the settlement's cy pres beneficiary because Worksafe's mission state—worker protection and advocacy—furthers the purposes of this underlying class action. (Perez

Decl. ¶¶ 66-68.) The Parties do not have a connection to or a relationship with Worksafe that could reasonably create the appearance of impropriety as between the selection of Worksafe as the recipient of the unclaimed residuals and the interests of the class. (Settlement Agreement ¶ 72.)

## IV.    ARGUMENT

### A.    Conditional Class Certification Is Appropriate for Settlement Purposes

The parties seek conditional certification of the Settlement Class. A party seeking to certify a class must demonstrate that it has met all four requirements under Federal Rule of Civil Procedure 23(a), and at least one of the requirements of Rule 23(b)—in this case, Rule 23(b)(3). *See Zinser v. Accufix Research Inst.*, 253 F.3d 1180, 1186 (9th Cir. 2001). Where, as here, workplace violations are at issue, "the key question for class certification is whether there is a consistent employer practice [or policy] that could be a basis for consistent liability." *Kamar v. Radio Shack Corp.*, 254 F.R.D. 387, 399 (C.D. Cal. 2008). Class certification is proper when the plaintiff provides substantial evidence of a company-wide policy on which her theory of liability is based, even if in practice that policy's implementation varied. *See In re Taco Bell Wage & Hour Actions*, No. 07-01314-SAB, 2012 U.S. Dist. LEXIS 168219, at *19 (E.D. Cal. Nov. 27, 2012) (certifying meal period class where uniform policy was undisputed but defendant argued "as a matter of practice, the policy is carried out in a variety of ways") (*adopted in full*, 2013 U.S. Dist. LEXIS 380 (E.D. Cal. Jan. 2, 2013)).

Moreover, "it is the plaintiff's theory that matters at the class certification stage, not whether the theory will ultimately succeed on the merits." *Alonzo v. Maximus, Inc*., 275 F.R.D. 513, 525 (C.D. Cal. 2011) (citations omitted). Rule 23's commonality analysis depends on whether a "basic theory of the [plaintiffs'] case" "can be proved on a classwide basis." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350, 359, 131 S. Ct. 2541 (2011). However, the fact that class members may have been affected by a defendant's uniform policies/practices to varying degrees or have suffered varying damages *is not a bar* to certification. *See Leyva v. Medline Indus. Inc.,* 716 F.3d 510, 514 (9th. Cir. 2013) ("the presence of individualized damages cannot, by itself, defeat class certification under Rule 23(b)(3).").

### B.    Plaintiff's Claims Present Predominant Questions of Law and Fact

For a class to be certified, there must be questions of law or fact common to the class. Fed. R. Civ. P. 23(a)(2). Rule 23(b)(3) also requires that the common questions of law or fact predominate over

any individual questions. Thus, the Rule 23(a)(2) commonality inquiry and the Rule 23(b)(3) predominance inquiry overlap. *See In re Autozone, Inc.*, 289 F.R.D. 526, 533 n.10 (N.D. Cal. 2012). Here, each of Plaintiff's theories of liability presents common legal and factual questions that predominate over any individual issues.

### 1. Plaintiff's Minimum Wage Claim Presents Predominant Common Issues of Law and Fact

California law defines "hours worked" as "the time during which an employee is subject to the control of an employer, and includes all the time the employee is suffered or permitted to work, whether or not required to do so." *Morillion v. Royal Packing Co.*, 22 Cal. 4th 575, 578 (2000). Thus, "an employee who is subject to an employer's control does not have to be working during that time to be compensated[.]" *Id.* at 582; *see also* 8 Cal. Code of Regs. § 11160(2(J)) (defining "hours worked" as the "time during which an employee is subject to the control of an employer, and includes all the time the employee is suffered or permitted to work, whether or not required to do so."). Requiring employees to work without compensation violates California's minimum wage and overtime laws. *See* Cal. Lab. Code §§ 510, 1194, 1197, 1197.1 and 1198. An employer is liable for off-the-clock "hours worked" if it "knew or should have known off-the- clock work was occurring." *Brinker Rest. Corp. v. Super. Ct.*, 53 Cal. 4th 1004, 1051-52 (2012).

Plaintiff alleges that he and other Class Members were required to undergo drug and medical tests during their employment off-the-clock and without compensation in violation of California law. The United States Department of Labor has weighed in on the issue and advises as follows:

> After being hired, employers often require their employees to take certain tests **as they begin employment**… such as … drug testing. Whenever you impose special tests, requirements or conditions that your employee must meet, time he or she spends traveling to and from the tests, waiting for and undergoing these tests, or meeting the requirements is probably hours worked.

The Department of Labor explains that "[t]ime spent in these activities is time during which the employee's freedom of movement is restricted for the purpose of serving your business and during which he or she is subject to your discretion and control." Plaintiff contends that he has common evidence of Defendants' control over the Class Members during the testing processes. One court

described this issue as dispositive. *Frlekin v. Apple, Inc.*, 2015 WL 6851424, *5-6 (N.D. Cal. Nov. 7, 2015) (explaining that, the courts in *Sullivan* and *Betancourt* "both explicitly described the interviews as required") (emphasis in original).

### 2.    Plaintiff's Meal Period Claim Presents Predominant Common Issues of Law and Fact

"An employer may not employ an employee for a work period of more than five hours per day without providing the employee with a meal period of not less than 30 minutes." Cal. Lab. Code § 512(a). Additionally, an employee may not work more than 10 hours without being provided a second meal period. *Id.* Where an employee does not receive a timely meal period of at least 30 minutes, the employer is required to pay the employee one additional hour of pay at the employee's regular rate of compensation. Cal. Lab. Code § 226.7(b).

Plaintiff alleges that Class Members routinely had their meal periods delayed and/or interrupted due to periods of heavy workload that required employees to postpone taking their meal periods until after the fifth hour of work, and on occasion return to work during meal periods while off-the-clock. Plaintiff alleges that this was attributable to understaffing, which did not allow proper break coverage for employees to take their breaks. Plaintiff alleges this understaffing had the effect of pressuring Class Members to work during their meal periods.

It is well-settled that an employer is liable for failing to provide meal periods if the employer in any way discouraged employees from taking their required meal periods. As the California Supreme Court held in *Brinker, Ct.*, 53 Cal. 4th at 1040:

> An employer's duty with respect to meal breaks under both section 512, subdivision (a) and Wage Order No. [7] is an obligation to provide a meal period to its employees. The employer satisfies this obligation if it relieves its employees of all duty, relinquishes control over their activities and permits them a reasonable opportunity to take an uninterrupted 30-minute break, and **does not impede or discourage them from doing so.**

(emphasis added); *see also Cicairos v. Summit Logistics*, Inc., 133 Cal. App. 4th 949, 962-63 (2005); *Murphy v. Kenneth Cole Prods., Inc.*, 40 Cal. 4th 1094, 1104 (2007) ("An employee forced to forgo his or her meal period ... loses a benefit to which the law entitles him or her.")

Plaintiff contends that his meal period claim under this theory is readily certifiable. Even before

1    *Brinker,* class certification rules were not as demanding as employers typically represent.

2    "Predominance is a comparative concept,' and 'the necessity for class members to individually

3    establish eligibility and damages does not mean individual fact questions predominate.' [Citations.]"

4    *Sav-On Drug Stores, Inc. v. Super. Ct.*, 34 Cal. 4th 319, 334 (2004) ("*Sav-On"*) (citation omitted).

5    Thus, "[a] class action can be maintained even if each class member must at some point individually

6    show his or her eligibility for recovery or the amount of his or her damages, so long as each class

7    member would not be required to litigate substantial and numerous factually unique questions to

8    determine his or her individual right to recover." *Acree v. General Motors Acceptance Corp.*, 92 Cal.

9    App. 4th 385, 397 (2001), fn. omitted.

10         Accordingly, Plaintiff contends that his meal period theory of liability yields the following

11    predominant, common questions of fact and law:

12         • Did Defendants maintain and implement a uniform meal period policy that,

13            *in practice*, did not provide meal periods?

14         • Did Defendants fail to pay premiums whenever they failed to provide meal

15            periods?

16         Plaintiff maintains that common evidence—in the form of Defendants' written policies,

17    corporate representative testimony, and class member declarations—would answer the predominant

18    common questions and would show that the combined effect of Defendants' meal period policies was

19    that they did not provide Class Members to take meal periods.

20         **3.    Plaintiff's Rest Period Claim Presents Predominant Common Issues of**

21            **Law and Fact**

22         Under the IWC Wage Orders, an employer is required to authorize and permit all employees to

23    take duty free rest periods at the rate of at least 10 minutes for every four hours worked or major fraction

24    thereof. 8 Cal. Code of Regs. § 11160(11)(A). When an employer fails to provide an employee a paid

25    rest period in accordance with the Wage Order, that employer shall pay the employee one hour of pay at

26    the employee's regular rate of pay for each work day that the rest period is not provided. 8 Cal. Code of

27    Reg. § 11020(11)(B); Cal. Lab. Code § 226.7(b).

28         Like his meal period claim, Plaintiff alleges that due to understaffing, Class Members felt

1  pressure to prioritize work over rest breaks. In *Brinker*, the California Supreme Court made it clear that it

2  is not enough for an employer to merely have compliant written policies. Rather, an employer only

3  satisfies its meal period and rest break obligation "if it relieves its employees of all duty, relinquishes

4  control over their activities and permits them a reasonable opportunity to take an uninterrupted [a] break,

5  and does not ***impede or discourage*** them from doing so." *Brinker Rest. Corp.*, 53 Cal. 4th at 1040

6  (emphasis added). Although the Court's analysis focused on meal periods, the same analysis is true for

7  rest breaks.

8       Accordingly, Plaintiff contends that his rest period theory of liability yields the following

9  predominant, common questions of fact and law:

10      • Did Defendants maintain and implement a uniform rest period policy that,

11        *in practice*, did not provide rest periods?

12      • Did Defendants fail to pay premiums whenever they failed to provide rest

13        periods?

14       Plaintiff maintains that common evidence—in the form of Defendants' written policies,

15  corporate representative testimony, and class member declarations—would answer the predominant

16  common questions and would show that the combined effect of Defendants' rest period policies was that

17  they did not provide Class Members to take compliant rest periods.

18          **4.**    **Plaintiff's Business Expense Claim Presents Predominant Common Issues**

19              **of Law and Fact**

20       Plaintiff alleges that Class Members were required to use their personal cell phones for business

21  purposes. Plaintiff alleges that Defendants should have reimbursed Class Members for their cell phone

22  expenses.

23       In *Richie v.* Blue *Shield of California*, No. C-13-2693 EMC, 2014 WL 6982943 (N.D. Cal. Dec.

24  9, 2014), the district court certified a telephone expense reimbursement class after finding, under Rule

25  23(a)(2): "that a common question exists as to Plaintiff's telephone-related expense claim under § 2802"

26  and finding that "Blue Shield appears to have a uniform reimbursement policy with regards to work-

27  related telephone expenses." *Id.* at *16-17. The Court also found a common question of law was whether

28  the Defendant's policy for reimbursement was consistent with California law. *Id.* (citing *Cochran v.*

1   *Schwan's Home Service, Inc.*, 228 Cal. App. 4th 1137 (2014) ("*Cochran*")). *Cochran* holds that "when

2   employees must use their personal cell phones for work-related calls, Labor Code section 2802 requires

3   the employer to reimburse them. Whether the employees have cell phone plans with unlimited minutes

4   or limited minutes, the reimbursement owed is a reasonable percentage of their cell phone bills." *Id.* at

5   1140.

6           In addressing the controlling California authority in *Cochran*, the district court in *Richie* noted its

7   holding that "the employer was required to 'reimburse an employee for the reasonable expense of the

8   mandatory use of a personal cell phone,' even when the employee did not incur an 'extra expense' as a

9   result of that call (for example, when the employee had an "unlimited minutes" plan). *Id.* (citing

10  *Cochran*, at 1144) ("The answer is that reimbursement is always required. Otherwise, the employer

11  would receive a windfall because it would be passing its operating expenses onto the employee. Thus, to

12  be in compliance with section 2802, the employer must pay some reasonable percentage of the

13  employee's cell phone bill."). Under *Cochran*, Labor Code § 2802(a) calls for a straightforward

14  solution—an employer is always obligated to reimburse an employee for his or her use of that

15  employee's personal cell phone for work-related reasons. That solution is applicable here, and Plaintiff

16  accordingly submits that this claim is suitable for class treatment.

17              **5.      Plaintiff's Reporting-Time Claim Presents Predominant Common Issues of**

18                       **Law and Fact**

19          Plaintiff alleges that Defendants violated California Labor Code section 1198 and California

20  Code of Regulations, Title 8, section 11160(5) by failing to pay Class Members reporting-time pay when

21  they called-in for work (as in the case of "call-in" shifts) and were not put to work, or were put to work

22  for less than half their usual or scheduled day's work. California Code of Regulations, Title 8, section

23  11160(5)(B), provides that "[e]ach workday an employee is required to report for work and does report,

24  but is not put to work or is furnished less than half said employee's usual or scheduled day's work, the

25  employee shall be paid for half the usual or scheduled day's work, but in no event for less than two (2)

26  hours nor more than four (4) hours, at the employee's regular rate of pay, which shall not be less than the

27  minimum wage."

28          Plaintiff alleges, among other things, that he would report to work based on the schedule that

Defendants had provided him, but when arriving, he would be sent home either immediately or before having worked half of his scheduled shift. When this occurred, Defendants did not pay his for at least half of his scheduled shift. This theory thus also presents a predominant common question of fact and law:

- Is working a "call-in" shift considered reporting to work under the reporting time statue?

- Did Defendants fail to pay reporting time pay?

### 6.    Plaintiff's Derivative Claims Presents Predominant Common Issues of Law and Fact

Plaintiff's complaint includes claims pursuant to Labor Code sections § 226, 1198, 1194, 1197, 1197.1 201, 202, 203 and 204 and California Business & Professions Code sections 17200, *et seq.* These claims are derivative of Plaintiff's underlying claims for minimum wage violations and meal and rest period premiums. Thus, for the same reasons that the Court should conditionally certify the underlying claims, it should also certify these derivative claims. *See Dilts v. Penske Logistics, LLC*, 267 F.R.D. 625, 640 (S.D. Cal. 2010).

### 7.    Plaintiff Will Adequately Represent the Interests of the Proposed Settlement Class

The final Rule 23(a) requirement asks whether "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This requirement is satisfied if: (1) the proposed representative Plaintiffs do not have conflicts of interest with the proposed class, and (2) Plaintiffs are represented by qualified and competent counsel. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998). The Rule 23(a) adequacy requirement is met here as Plaintiff has and will represent putative Class Members with a focus and zeal true to the fiduciary obligation that he has undertaken. Plaintiff's Counsel also satisfies the Rule 23(a)(4) adequacy-of-counsel requirement. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998) ("will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?"). Plaintiff's Counsel are seasoned class action attorneys who regularly litigate wage and hour claims through certification and on the merits, and have considerable experience settling wage and hour class actions. (*See* Perez Decl. ¶¶ 70-78, Ex. 5.)

**8.    Class Settlement Is Superior to Other Available Means of Resolution**

Resolving all Class Members' claims through a single class action is superior to a series of individual lawsuits. "From either a judicial or litigant viewpoint, there is no advantage in individual members controlling the prosecution of separate actions. There would be less litigation or settlement leverage, significantly reduced resources and no greater prospect for recovery." *Hanlon*, 150 F.3d at 1023. Indeed, the terms of the Settlement negotiated on behalf of the Class demonstrates the advantages of a collective bargaining and resolution process. Addressing the allegations through a class action is superior to individual litigation or any alternative methods that may exist. This action was filed precisely because Plaintiff believed those alternatives would have proven ineffective in addressing the problem on a class-wide basis. Additionally, although the value of the claims is not insignificant, the amount in controversy is not nearly enough to incentivize individual action. *See Wolin v. Jaguar Land Rover N. Am.*, 617 F.3d 1168, 1175 (9th Cir. 2010) ("Where recovery on an individual basis would be dwarfed by the cost of litigating on an individual basis, this [superiority] factor weighs in favor of class certification."). As the class action device provides the superior means to effectively and efficiently resolve this controversy, and as the other requirements of Rule 23 are each satisfied, certification of the Settlement Class proposed by the Parties is appropriate.

**C.    The Proposed Class Notice Adequately Informs Class Members About the Case and Proposed Settlement**

The proposed class settlement notice and claims administration procedure satisfy due process. Rule 23(c)(2) of the Federal Rules of Civil Procedure requires the Court to direct the litigants to provide Class Members with the "best notice practicable" under the circumstances, including "individual notice to all members who can be identified through reasonable effort." *Eisen v. Carlisle & Jacqueline*, 417 U.S. 156, 173, 94 S. Ct. 2140, 2150, 40 L. Ed. 2d 732, 746 (1974). Under Rule 23(c)(2), notice by mail provides such "individual notice to all members." *Id.* Where the names and addresses of Class Members are easily ascertainable, individual notice through the mail constitutes the "best notice practicable." *Id.* at 175.

The Notice of Class Action Settlement ("Class Notice") was jointly drafted and approved by the Parties and provides Settlement Class Members with all required information so that each member may

make an informed decision regarding his or her participation in the Settlement. The Class Notice provides information regarding the nature of the lawsuit; a summary of the substance of the settlement terms; the class definition; the deadlines by which Class Members must submit Request for Exclusions or objections; the date for the final approval hearing; the formula used to calculate settlement payments; a statement that the Court has preliminarily approved the settlement; a statement that Class Members will release the settled claims unless they opt out; and noticed of pending lawsuits with overlapping claims. Accordingly, the Notice satisfies the requirements of Rule 23(c)(2).

The Class Notice summarizes the proceedings and the terms and conditions of the Settlement in an informative and coherent manner, complying with the statement in *Manual for Complex Litigation*, *supra*, that "the notice should be accurate, objective, and understandable to Class Members . . . ." *Manual for Complex Litigation*, Third (Fed. Judicial Center 1995) ("Manual") § 30.211. The Notice Packet states that the Settlement does not constitute an admission of liability by Defendants, and that Final Approval has yet to be made. The Notice Packet thus complies with the standards of fairness, completeness, and neutrality required of a settlement class notice disseminated under authority of the Court. Rule 23(c)(2) and (e); *Manual* §§ 8.21, 8.39; 30.211, 30.212.

The Settlement Administrator will mail the Class Notice to all Settlement Class Members via first class United States mail. (Settlement Agreement ¶ 56.) In the event Notice Packets are returned as undeliverable, the Settlement Administrator will attempt to locate a current address using, among other resources, a computer/SSN and "skip trace" search to obtain an updated address. (*Id.* at ¶ 57.) This method was negotiated by the Parties to maximize the Class Member notification rate while ensuring cost effective administration of the Settlement.

**D.      The Proposed Class Action Settlement Should Receive Preliminary Approval**

Class action settlements must be approved by the court and notice of the settlement must be provided to the class before the action can be dismissed. Fed. R. Civ. P. 23(e)(1)(A). To protect absent class members' due process rights, approval of class action settlements involves three steps:

1.      Preliminary approval of the proposed settlement;

2.      Notice to the class providing them an opportunity to exclude themselves; and

3.      A final fairness hearing concerning the fairness, adequacy, and reasonableness of the

settlement.

*See* Fed. R. Civ. P. 23(e)(2); Manual for Complex Litigation § 21.632 (4th ed. 2004).

F.R.C.P. 23(e) provides that if the proposal would bind class members, the Court may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether:

(A) the class representatives and class counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

    (i) the costs, risks, and delay of trial and appeal;

    (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

    (iii) the terms of any proposed award of attorney's fees, including timing of payment; and

    (iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

The judicial policy favoring settlement of class action suits should guide the Court in evaluating the fairness of a settlement. *See Churchill Village, LLC v. Gen. Elec.*, 361 F.3d 566, 576 (9th Cir. 2004); *see also Hanlon v. Chrysler Corp.*, 150 F.3d at 1027 (endorsing the trial court's "proper deference to the private consensual decision of the parties" when approving a settlement). As this Circuit has observed, "settlements offer parties and their counsel relief from the burdens and uncertainties inherent in trial. . . . The economics of litigation are such that pre-trial settlement may be more advantageous for both sides than expending the time and resources inevitably consumed in the trial process." *Franklin v. Kaypro*, 884 F.2d 1222, 1225 (9th Cir. 1989).

### 1.  Comparable Settlements Negotiated by Plaintiff's Counsel

The instant settlement compares favorably to a previous wage and hour settlement approved by the Northern District of California for comparable wage and hour claims.

| *Ford v. CEC Entertainment, Inc.*, No. 3:14-cv-01420-RS (N.D. Cal.) | |
|---|---|
| Gross Settlement Amount | $2,500,000 |
| Total Number of Class Members | 10,526 |
| Average Class Member Payment | ≈ $150 |

| ***Ford v. CEC Entertainment, Inc.*, No. 3:14-cv-01420-RS (N.D. Cal.)** | |
|---|---|
| Final Approval Granted | November 18, 2016 (Judge Richard Seeborg) |

| ***Rivas v. BG Retail, LLC*, No. 5:16-cv-06458-BLF (N.D. Cal.)** | |
|---|---|
| Gross Settlement Amount | $175,000 |
| Total Number of Class Members | 396 |
| Average Class Member Payment | $\approx$ $170 |
| Final Approval Granted | January 16, 2020 (Judge Beth Labson Freeman) |

| ***Berry v. Urban Outfitters Wholesale, Inc.*, No. 4:13-cv-02628-JSW (N.D. Cal.)** | |
|---|---|
| Gross Settlement Amount | $5,000,000 |
| Total Number of Class Members | 12,308 |
| Average Class Member Payment | $255 |
| Final Approval Granted | April 7, 2016 (Judge Jeffrey S. White) |

| ***Moore v. Anthropologie*, No. 4:13-cv-02628-JSW (N.D. Cal.)** | |
|---|---|
| Gross Settlement Amount | $875,000 |
| Total Number of Class Members | 723 |
| Average Class Member Payment | $710 |
| Final Approval Granted | April 7, 2016 (Judge Jeffrey S. White) |

Notably, whereas the average class member payments in the above settlements ranged from $150 to $710, the average payment here is approximately $773.21.

### 2. The Relief Provided by the Settlement is Fair and Reasonable

At the preliminary approval stage, the Court evaluates whether the settlement is within the "range of reasonableness," and whether notice to the class and the scheduling of a final approval hearing should be ordered. *See generally* 3 Conte & Newberg, *Newberg on Class Actions*, § 7.20 (4th ed. 2002). For preliminary approval, scrutiny of the settlement is reduced. *In re Nat'l Football League Players' Concussion Injury Litig.*, 961 F. Supp. 2d 708, 714 (E.D. Pa. 2014) ("At the preliminary approval stage, the bar to meet the 'fair, reasonable and adequate' standard is lowered."); *see also, Montoya v. Intelicare Direct, Inc.*, No. 15CV1269-LAB, 2016 WL 4142342 (S.D. Cal. Aug. 4, 2016).

The Court need only review the parties' proposed settlement to determine whether it is within the permissible "range of possible judicial approval" and thus, whether the notice to the class and the scheduling of the formal fairness hearing is appropriate. Newberg, § 11:25. Preliminary approval should be granted if "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval. *Ruch v. AM*

1    *Retail Group, Inc*., 2016 WL 1161453, at \*7 (N.D. Cal. Mar. 24, 2016) (quoting *In re Tableware*

2    *Antitrust Litig.*, 484. F. Supp. 2d 1078, 1079 (N.D. Cal. 2007)).

3                **3.    The Class Settlement Amount is Within the Range of Reasonableness**

4            As discussed in detail in Plaintiff's Counsel's declaration in support of this Motion, an objective

5    evaluation of the Settlement confirms that the relief negotiated on the Class's behalf—a $1,622,000 non-

6    reversionary total Gross Settlement Amount—is fair, reasonable, and valuable. (Perez Decl. ¶¶ 15-51.)

7    The Settlement was negotiated by the Parties at arm's length with helpful guidance from Louis Marlin,

8    Esq., and the Settlement confers substantial benefits to Class Members. The relief offered by the

9    Settlement is particularly impressive when viewed against the difficulties encountered by plaintiffs

10   pursuing wage and hour cases.

11           In determining whether a settlement agreement is fair, adequate, and reasonable to all concerned,

12   the Court may consider the strength of the plaintiff's case and the amount offered in settlement, among

13   other factors. *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998). Ultimately, "the

14   district court's determination is nothing more than an amalgam of delicate balancing, gross

15   approximations, and rough justice," and there is no single "formula" to be applied; rather, the Court may

16   presume that the parties' counsel and the mediator arrived at a reasonable range of settlement by

17   considering Plaintiff's likelihood of recovery. *Officers for Justice v. Civil Serv Comm'n*, 688 F.2d 615,

18   625 (9th Cir. 1982); *Rodriguez v. West Pub. Corp*., 563 F.3d 948, 965 (9th Cir. 2009).

19           Understandably, for purposes of evaluating the settlement's reasonable, this estimate must be

20   "tempered by factors such as the risk of losing at trial, the expense of litigating the case, and the expected

21   delay in recovery (often measured in years)." *In re Toys R Us-Delaware, Inc.-- Fair & Accurate Credit*

22   *Transactions Act (FACTA) Litig.*, 295 F.R.D. 438, 453 (C.D. Cal. 2014). Ultimately, Plaintiff's Counsel

23   determined an appropriate range of recovery for settlement purposes by offsetting Defendants'

24   maximum theoretical liability by: (a) the strength of the defenses to the merits of Plaintiff's claims; (b)

25   the risk of class certification being denied; (d) the risk of losing on any of a number of dispositive

26   motions that could have been brought between certification and trial (e.g., motions to decertify the class,

27   motions for summary judgment, and/or motions in limine) that might have eliminated all or some of

28   Plaintiff's claims, or barred evidence/testimony in support of the claims; (d) the risk of losing at trial; (e)

the chances of a favorable verdict being reversed on appeal; and (f) the difficulties attendant to collecting on a judgment (collectively, the "Class Discount Factors").

After offsetting Defendants' maximum potential exposure for the class claims by the Class Discount Factors, and after cconsidering the weight of the evidence, the clarity of the applicable law, and the strength of the factual and legal defenses likely to be asserted by the Defendants at trial and the availability of good faith defenses (*see* Perez Decl. ¶¶ 26-49), Plaintiff determined that a more realistic estimate of the total amount of damages and penalties that he would likely recover at trial for the class claims was approximately $1,158,271.78. (Perez Decl. ¶ 49.) By this measure, the $799,500 Net Settlement Fund amounts to approximately 70% of Defendants' realistic estimated exposure at trial for the class claims, which is well within the range of reasonableness.[3]

### 4. The Settlement Provides for an Equitable Method of Allocating Relief to Class Members

The Settlement provides for an equitable method of allocating relief to Class Members in proportion to qualifying wage statements received. Each Class Member's settlement payment will be based on the number of Workweeks the Class Member worked in a non-exempt position during the period from February 25, 2018 to the date of Preliminary Approval. Individual Settlement Payments will be reduced by any required deductions for each Participating Class Members as specifically set forth herein, including employee-side tax withholdings or deductions.

### 5. The Court Should Preliminarily Approve the Negotiated Attorneys' Fees and Costs

At final approval, Class Counsel will request attorneys' fees in the amount of $300,000, or

---

[3] *See, e.g., Dixon v. Cushman*, 18-cv-05813-JSC, 2022 WL 1189883, at *7 (N.D. Cal. Apr. 21, 2022) (finding settlement fund that was an estimated 8% of the total maximum recovery fair in relation to the risks of continued litigation); *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1042 (N.D. Cal. 2008) (approving a settlement amount in the range of 6%-9% of the total possible damages); *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 256 (N.D. Cal. 2015) (approving a settlement where the gross recovery to the class was approximately 8.5% of the maximum recovery amount); *Stovall-Gusman v. W.W. Granger, Inc.*, No. 13-cv-02540-HSG, 2015 WL 3776765, at *4–5 (N.D. Cal. June 17, 2015) (approving a final settlement representing 7.3% of the plaintiffs' estimated trial award in wage-and-hour class action); *Balderas v. Massage Envy Franchising, LLC*, No. 12-cv-06327-NC, 2014 WL 3610945, at *5 (N.D. Cal. July 21, 2014) (granting preliminary approval of gross settlement representing 8% of the maximum recovery and net settlement representing 5% of the maximum recovery).

1    18.5% of the total common fund, which is considerably less than the Ninth Circuit's benchmark for

2    attorneys' fees, and out-of-pocket costs not to exceed $30,000. *See In re Bluetooth Headset Products*

3    *Liability Litig.*, 654 F.3d 935, 942 (9th Cir. 2011) ("courts typically calculate 25% of the fund as the

4    'benchmark' for a reasonable fee award….").

5                    **6.        There Are No Obvious Deficiencies with the Settlement or Preferential**

6                                **Treatment to Certain Class Members**

7            The Court must also ask whether "the Settlement contains any obvious deficiencies" and

8    "whether the Settlement provides preferential treatment to any Class Member." *Volkswagen*, 2016 WL

9    4010049, at **14, 16. This Settlement contains no "glaring deficiencies" *Id.* at *14. The Settlement does

10   not provide for a reversion of unpaid settlement funds to Defendants or distribute a disproportionate

11   share of the settlement to the attorneys that requires closer scrutiny in the Ninth Circuit. *See id.* at *14-15

12   (applying the factors set forth in *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir.

13   2011)).

14           Moreover, no segment of the Class is given preferential treatment. Plaintiff will also seek, at a

15   later time (when the Motion for Attorneys' Fees is filed), an incentive award in an amount that is well

16   within the range of such awards in the Ninth Circuit for his work on the behalf of the Class, the

17   reputation risk undertaken, and for the execution of a general release. *See infra*, § III.G. *See*, *e.g.*, *La*

18   *Fleur v. Medical Management Intern, Inc.*, No. 13-00398-VAP, 2014 WL 2967475, *8 (C.D. Cal. June

19   25, 2014) (awarding $15,000 to each named plaintiff for services to the Class, reputational harm and

20   general release). Accordingly, the Settlement is procedurally fair, adequate and reasonable.

21           **E.       The Court Should Preliminarily Approve the Negotiated Class Representative**

22                      **Enhancement Payment**

23           The Settlement provides for a Class Representative Enhancement Payment of $10,000 to

24   Plaintiff for his service on behalf of Class Members and for agreeing to a broader release than those

25   required of other Class Members. "Incentive awards are fairly typical in class action cases . . . Such

26   awards are discretionary and are intended to compensate class representatives for work done on behalf of

27   the class . . . ." *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 958 (9th Cir. 2009) (citing 4 *William B.*

28   *Rubenstein et al.*, *Newberg on Class Actions* § 11:38 (4th ed. 2008)). These payments work both as an

1  inducement to participate in the suit and as compensation for time spent in litigation activities. *See In re*

2  *Mego Fin. Corp. Sec. Litig.*, 213 F.3d at 463 (describing the service award as an incentive to the class

3  representatives); *Matter of Continental Illinois Securities Litig.*, 962 F.2d 566, 571 (7th Cir.

4  1992) (stating that an enhancement award should be in such an amount "as may be necessary to induce

5  [the class representative] to participate in the suit"). Plaintiff will file a formal motion for the negotiated

6  Class Representative Enhancement Payment once preliminary approval of the Settlement is granted.

7       **F.**     **The Consideration Provided for the FLSA Claim Is Fair and Reasonable In Light**

8                 **of the Amount in Controversy Discounted by the Risks of Continued Litigation**

9       Similar to the requirement that courts approve class action settlements, when an employee brings

10  a private action for wages under the FLSA, 29 U.S.C. § 216(b), the parties must present any proposed

11  settlement to the Court for approval. *Lynn's Food Stores, Inc. v. U.S.*, 679 F.2d 1350, 1353 (11th Cir.

12  1982). If the settlement is a "fair and reasonable resolution of a bona fide dispute over FLSA provisions,"

13  a stipulated judgment is appropriate. *Id.* at 1355. Settlements of FLSA claims are permissible because

14  initiation of the action "provides some assurance of an adversarial context." *Id.* at 1354. In such

15  instances, the employees are likely to be represented by an attorney who can protect their rights, and

16  thus, "the settlement is more likely to reflect a reasonable compromise of disputed issues than a mere

17  waiver of statutory rights brought about by an employer's overreaching." *Id.* If the settlement reflects a

18  reasonable compromise over issues that are actually in dispute, approval is permissible. *Id.*

19       Plaintiff calculated a maximum total exposure based on information provided by Defendants.

20  The maximum total exposure if <u>all</u> FLSA Collective Action Members affirmatively opted into the

21  collective action is $6,062,506.43. This is based on approximately 385,533 workweeks during the FLSA

22  Period, with an estimated half hour of unpaid overtime per week and the $31.45 national average

23  overtime rate. (Perez Decl. ¶¶ 60-64.)

24       Additionally, the FLSA allows successful plaintiffs to recover liquidated damages in the amount

25  of their unpaid overtime pay, doubling their recovery. 29 U.S.C. § 216(b). "[C]ourts retain discretion to

26  withhold a liquidated damages award, or to award less than the statutory liquidated damages total, where

27  an employer shows that, 'despite the failure to pay appropriate wages, the employer acted in subjective

28  'good faith' and had objectively 'reasonable grounds' for believing that the acts or omissions giving rise

to the failure did not violate the FLSA.'" *Alvarez v. IBP, Inc.*, 339 F.3d 894, 909 (9th Cir. 2003) (quoting *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132 (2d Cir. 1999). However, because this is a "difficult" standard to meet, "'[d]ouble damages are the norm; single damages are the exception.'" *Haro v. City of Los Angeles*, 745 F.3d 1249, 1259 (9th Cir. 2014) (quoting *Chao v. A-One Med. Servs., Inc.*, 346 F.3d 908, 920 (9th Cir. 2003)). Because Plaintiff's Counsel did not uncover any evidence that Defendants' alleged violations of the California Labor Code or the FLSA were willful or intentional (Perez Decl. ¶ 60), Plaintiff's Counsel concluded that it would be highly unlikely for the Court to award liquidated damages, and accordingly did not factor liquidated damages into the calculation of the maximum exposure. *Selk v. Pioneers Mem'l Healthcare Dist.*, 159 F. Supp. 3d 1164, 1174-75 (S.D. Cal. 2016) (approving discount to liquidated damages because "discovery suggested a lack of bad intent on the part of [defendant]").

The typical opt-in rate in FLSA collective actions is about 14% to 25%. *See e.g., Gutierrez-Bejar v. SOS Int'l, LLC*, No. LACV1609000JAKJEMX, 2019 WL 5683901, at *9 (C.D. Cal. Nov. 1, 2019) (nothing that a 14.2% opt-in rate for the FLSA action "is consistent with the typical opt-in rate for non-union-backed FLSA actions.") (citation omitted); *Bautista v. Harvest Mgmt. Sub LLC*, No. CV1210004FMOCWX, 2013 WL 12125768, at *15 (C.D. Cal. Oct. 16, 2013) ("assuming a 20% to 25% opt-in rate" when preliminary approving a FLSA collective action settlement).

At a 14% opt-in rate, Plaintiff would expect to recover approximately $848,750.90. By this reckoning, the $250,000 FLSA settlement is within the range of approval. *See Chalmers v. DSSV, Inc.*, No. 22-CV-08863-HSG, 2024 WL 4844376, at *3 (N.D. Cal. Nov. 19, 2024) ("'[C]ourts in the Ninth Circuit have found FLSA cases settling for approximately 25%–35% of the total possible recovery to be reasonable."); *Jones v. Agilysys, Inc.*, 2014 WL 2090034 (N.D. Cal. May 19, 2014) (finding a FLSA settlement that constituted between 30% to 60% of recoverable damages to be a "tangible monetary benefit" for the class members).

**G.     The Consideration Provided for the PAGA Claim Is Fair and Reasonable In Light of the Amount in Controversy Discounted by the Risks of Continued Litigation**

Pursuant to the Settlement Agreement, $200,000 from the Gross Settlement Amount shall be allocated to the resolution of the PAGA claim, of which 75% ($75,000) will be paid directly to the

1   LWDA, and the remaining 25% ($25,000) will be paid to Participating Class Members. (Settlement

2   Agreement ¶ 47.)

3         Plaintiff's Counsel determined that PAGA Members worked a combined total of approximately

4   14,417 pay periods (697 initial pay periods / 13,720 subsequent pay periods) during the PAGA statute of

5   limitations period ("PAGA Period"). (Perez Decl. ¶ 52.) Statutory penalties would be calculated

6   according to Labor Code 2699(f)(2)[4]: If, at the time of the alleged violation, the person employs one or

7   more employees, the civil penalty is one hundred dollars ($100) for each aggrieved employee per pay

8   period for the initial violation and two hundred dollars ($200) for each aggrieved employee per pay

9   period for each subsequent violation.

10        After calculating Defendants' maximum exposure under PAGA, Plaintiff then discounted that

11   exposure for settlement purposes to account for the risks of continued litigation, including: (a) the

12   strength of Defendants' defenses to the merits; (b) the risk of losing at trial; (c) the risk that the Court

13   would exercise its discretion under PAGA to significantly reduce the maximum civil penalties available

14   by statute;[5] (d) the chances of a favorable verdict being reversed on appeal; and (e) the difficulties

15   attendant to collecting on a judgment ("PAGA Discount Factors"). (Perez Decl. ¶¶ 52-59.)

16        Considering the PAGA Discount Factors, the weight of the evidence, the clarity of the applicable

17   law, and the strength of the factual and legal defenses likely to be asserted by the Defendants at trial and

18   the availability of good faith defenses, Plaintiff determined that a more realistic estimate of the total

19   amount of PAGA penalties that he would likely recover at trial was approximately $1.937 million.

20   (Perez Decl. ¶ 57.) A $200,000 PAGA settlement is accordingly well within the range of approval. *See*

21   *Merante v. Am. Inst. for Foreign Study, Inc.*, 2022 WL 2918896, at *6 (N.D. Cal. July 25, 2022) (PAGA

22   award of between 0.27% and 2% of the maximum estimated value of PAGA claims was "small" but

23   "within the range of reasonableness"); *Hamilton v. Juul Labs, Inc.*, No. 20-CV-03710-EMC, 2021 WL

24

25        [4] The PAGA statute was recently amended on July 1, 2024. Certain citations to the PAGA's

26   provisions in this Motion relate to the pre-amendment version of the statute, which applies to this action based on the pre-amendment filing date of the initial complaint and related administrative exhaustion letter.

27        [5] See Lab. Code § 2699(e) ("In any action by an aggrieved employee seeking recovery of a civil penalty available under subdivision (a) or (f), a court may award a lesser amount than the maximum civil

28   penalty amount specified by this part if, based on the facts and circumstances of the particular case, to do otherwise would result in an award that is unjust, arbitrary and oppressive, or confiscatory.").

5331451, at *10 (N.D. Cal. Nov. 16, 2021) (approving a PAGA penalty settlement of 2.2%); *Smith v. Kaiser Found. Hosps.*, 2020 WL 5064282, at *17 (S.D. Cal. Aug. 26, 2020) (finding that PAGA award that was 2.4% of maximum estimated value of PAGA claims was not "unfair, inadequate, or unreasonable given the risks of continued litigation").

Where PAGA penalties are negotiated in good faith and "there is no indication that [the] amount was the result of self-interest at the expense of other Class Members," such amounts are generally considered reasonable. *Hopson v. Hanesbrands Inc.*, No. CV-08-0844 EDL, 2009 WL 928133, at *9 (N.D. Cal. Apr. 3, 2009); *see*, *e.g.*, *Nordstrom Com. Cases*, 186 Cal. App. 4th 576, 579 (2010) ("[T]rial court did not abuse its discretion in approving a settlement which does not allocate any damages to the PAGA claims.").

## V.    CONCLUSION

The Parties have negotiated a fair and reasonable settlement of claims. Having appropriately presented the materials and information necessary for preliminarily approval, the Parties request that the Court preliminarily approve the settlement.

Dated: March 21, 2025                                  Respectfully submitted,

                                       By:   /s/ Robert J. Drexler, Jr.
                                             Raul Perez
                                             Robert J. Drexler, Jr.
                                             Jonathan Lee
                                             **CAPSTONE LAW APC**

                                             Attorney for Plaintiff Richard Rodriguez