1
2
3
4                          UNITED STATES DISTRICT COURT

5                         NORTHERN DISTRICT OF CALIFORNIA

6                                SAN JOSE DIVISION

7

8        RICHARD RODRIGUEZ,                      Case No.  22-cv-02071-VKD

9                        Plaintiff,

10               v.                              **ORDER GRANTING MOTION FOR
                                                 PRELIMINARY APPROVAL OF
11       BELFOR USA GROUP, INC., et al.,         SETTLEMENT**

                         Defendants.             Re: Dkt. No. 75
12

13

14            Plaintiff Richard Rodriguez asserts claims under the Fair Labor Standards Act, 29 U.S.C.

15   § 201, *et seq.* ("FLSA"), the California Private Attorneys' General Act, California Labor Code

16   § 2698, *et seq*. ("PAGA"), and other California state labor laws on behalf of himself and others

17   similarly situated against his former employers, defendants Belfor USA Group, Inc., Belfor

18   Environmental, Inc., Oakwood Construction and Restoration Services, Inc., and 1 800 Water

19   Damage North America, LLC (collectively "defendants").  *See* Dkt. No. 27.  On December 19,

20   2023, Mr. Rodriguez moved for preliminary approval of a class, collective, and representative

21   action settlement agreement.  Dkt. No. 39.  After receiving supplemental briefing on the motion,

22   the Court denied Mr. Rodriguez's motion without prejudice.  Dkt. No. 48.

23            The parties conducted additional negotiations and entered into an amended settlement

24   agreement.  Mr. Rodriguez now moves for preliminary approval of that agreement.  Dkt. No. 75.

25   Defendants do not oppose this motion.  *See* Dkt. No. 79.[1]  The Court held a hearing on the motion

26

27   _____
     [1] All parties have expressly consented that all proceedings in this matter may be heard and finally
28   adjudicated by a magistrate judge.  Dkt. Nos. 7, 8; 28 U.S.C. § 636(c); Fed. R. Civ. P. 73.  Mr.
     Rodriguez also named several placeholder Doe defendants in his complaint.  *See* Dkt. No. 27 ¶ 10.
     However, placeholder Doe defendants are not "parties" for purposes of assessing whether there is

United States District Court
Northern District of California

United States District Court
Northern District of California

on May 6, 2025.  Dkt. No. 80.  Upon consideration of the moving papers and the arguments presented at the hearing, the Court grants Mr. Rodriguez's motion for preliminary approval.

## I.    AMENDED SETTLEMENT AGREEMENT

### A.    Structure of the Settlement

The structure of the amended settlement agreement is largely the same as the parties' original settlement agreement.  The principal differences concern the total amount of the settlement and the allocation of the amount among the proposed classes.  As before, the amended settlement agreement encompasses claims relating to three categories of employees.

First, the settlement defines a "settlement class" consisting of "all persons who were employed by Defendants in the State of California in non-exempt positions at any time during the period from February 25, 2018 to the date of Preliminary Approval."  Dkt. No. 75-2 at ECF 31 (¶ 5).  The Court will refer to this as the "California class" in this order.  Mr. Rodriguez estimates that there are 1,034 members in the California class.  Dkt. No. 75 at ECF 14.

Second, the settlement identifies an FLSA collective consisting of "all persons who were employed by Defendants in the United States of America in non-exempt positions at any time during the period from February 25, 2019 to the date of Preliminary Approval."  Dkt. No. 75-2 at ECF 32 (¶ 14).  Mr. Rodriguez estimates that there are 4,349 members in the FLSA collective. Dkt. No. 75 at ECF 14.

Third, the settlement includes a PAGA settlement amount for members consisting of "all persons who were employed by Defendants in the State of California in non-exempt positions at any time during the period from March 8, 2021 to the date of Preliminary Approval."  Dkt. No. 75-2 at ECF 34 (¶ 25).  Mr. Rodriguez estimates that there are 697 PAGA members, all of whom are—by definition—also members of the California class.  Dkt. No. 75 at ECF 14.

The settlement provides that defendants will pay a non-reverting "gross settlement

---

complete consent of all parties to magistrate judge jurisdiction.  *Geppert v. Doe 1*, No. 23-cv-03257-SVK, 2023 WL 5804156, at *1 n.2 (N.D. Cal. Sept. 7, 2023); *RingCentral, Inc. v. Nextiva, Inc.*, No. 19-cv-02626-NC, 2020 WL 978667, at *1 n.1 (N.D. Cal. Feb. 28, 2020); *see also Williams v. King*, 875 F.3d 500, 502-05 (9th Cir. 2017).

United States District Court
Northern District of California

amount" of $1,622,000 to be distributed amongst the members of the three employee categories, their attorneys, the settlement administrator, and Mr. Rodriguez.  Dkt. No. 75-2 at ECF 33 (¶ 21).

### 1.    California Class

The largest share of the monetary relief, referred to as the "net settlement fund," will be distributed to the members of the California class.  It is defined as "the portion of the [g]ross [s]ettlement [a]mount remaining after deducting the Attorneys' Fees and Costs, Class Representative Enhancement Payment, PAGA Settlement Amount, FLSA Settlement Fund, and Settlement Administration Costs." *Id.* at ECF 33-34 (¶ 23).  The parties expect the value of the net settlement fund to be approximately $799,500.  Dkt. No. 75 at ECF 10.  This amount will be distributed to the members of the California class who do not affirmatively opt out of the settlement agreement, in proportion to the number of weeks each member worked for defendants during the class period.  Dkt. No. 75-2 at ECF 31, 33-34 (¶¶ 5, 23).  If some members of the California class opt out, then the remaining members' distributions will be proportionally increased, so that 100% of the net settlement fund will be distributed to the California class.  *Id.* at ECF 34 (¶ 23).  The settlement administrator will deduct any applicable employee-side payroll taxes from the class members' payments and ensure they are paid to the appropriate authorities. *Id.* at ECF 48-49 (¶ 75).  Additionally, if any class members' settlement checks remain uncashed 180 days after being issued, the remaining funds will be donated to Worksafe, a workplace safety non-profit organization.  *Id.* at ECF 48 (¶ 72); *see also* https://worksafe.org/.

In return for this relief, California class members who do not opt out will release defendants from "any and all claims, rights, demands, liabilities, and causes of action, that were asserted or could have been asserted in the operative complaint or that otherwise reasonably arise from, or are reasonably related to, the same or substantially similar set of operative facts as those set forth in the operative complaint during the Class Period, including but not limited to: (1) California Labor Code sections 510 and 1198 (unpaid overtime); 2) California Labor Code sections 1182.12, 1194, 1197, 1197.1, and 1198 (unpaid minimum wages); (3) California Labor Code sections 226.7, 512(a), 516, and 1198 (failure to provide meal periods); (4) California Labor Code sections 226.7, 516, and 1198 (failure to authorize and permit rest periods); (5) California

Labor Code sections 226(a), 1174(d), and 1198 (non-compliant wage statements and failure to maintain payroll records); (6) California Labor Code sections 201 and 202 (wages not timely paid upon termination); (7) California Labor Code section 204 (failure to timely pay wages during employment); (8) California Labor Code section 1198 and California Code of Regulations Title 8, section 11160 Subdivision 5(B) (failure to provide reporting time pay); (9) California Labor Code section 2802 (unreimbursed business expenses); (10) California Business & Professions Code sections 17200, *et seq.* (unlawful business practices); and (11) California Business & Professions Code sections 17200, *et seq.* (unfair business practices) (including, without limitation, any claims relating to Plaintiff's alleged regular rate of pay allegations and reporting time pay allegations including to the extent applicable to any or all of the above causes of action)." *Id.* at ECF 35 (¶ 33).

### 2.    FLSA Collective Action

The settlement agreement also creates an "FLSA settlement fund" of $250,000. *Id.* at ECF 33 (¶ 19). This amount will be distributed to members of the nationwide FLSA collective who affirmatively opt in to the settlement. *Id.* at ECF 32-33 (¶¶ 14, 16, 19). As with the net settlement fund for the California class, the FLSA settlement fund will be distributed among the participating members in proportion to the number of weeks they worked during the class period, so that 100% of the FLSA settlement fund will be distributed. *Id.* at ECF 42 (¶ 52(c)).

In return for this relief, the members of the FLSA collective who participate in the settlement will release defendants from "any and all claims, rights, demands, liabilities, and causes of action arising under the Fair Labor Standards Act, both known and unknown, which were asserted or could reasonably have been asserted in the Action or that otherwise reasonably arise from, or are reasonably related to the facts alleged or substantially similar set of operative facts, including, but not limited to, any claim for failure to pay overtime wages, minimum wages, unpaid wages, . . . at the regular rate of pay during the FLSA Period." *Id.* at ECF 36 (¶ 34). If any FLSA collective members' settlement checks remain uncashed 180 days after being issued, the remaining funds will be donated to Worksafe. *Id.* at ECF 48 (¶ 72).

United States District Court
Northern District of California

4

### 3.    PAGA Settlement

The settlement agreement provides for $200,000 to be allocated to a settlement of the PAGA claims.  *Id.* at ECF 34-35 (¶ 27).  Of that amount, 75% or $150,000 will be paid to the California Labor and Workforce and Development Agency ("LWDA").  *Id.*  The remaining 25% or $50,000 will be distributed to the PAGA members in proportion to the number of weeks each member worked during the PAGA period.  *Id.* at ECF 34-35, 41-42 (¶¶ 27, 52(b)).  However, unlike the California class, PAGA members are not permitted to exclude themselves from this part of the settlement or to object to it.  *Id.* at ECF 40 (¶ 48).

If approved, the PAGA settlement will release defendants from "any and all claims for civil penalties under California Labor Code [§] 2698, *et seq.*, that were asserted or could reasonably have been asserted in Plaintiff's LWDA letter or in the operative complaint or that otherwise reasonably arise from, or are reasonably related to, the same or substantially similar set of operative facts as those set forth in Plaintiff's LWDA letter or operative complaint, during the PAGA Period, including but not limited to claims for violation of: (1) California Labor Code sections 510 and 1198 (unpaid overtime); (2) California Labor Code sections 1182.12, 1194, 1197, 1197.1, and 1198 (unpaid minimum wages); (3) California Labor Code sections 226.7, 512(a), 516, and 1198 (failure to provide meal periods); (4) California Labor Code sections 226.7, 516, and 1198 (failure to authorize and permit rest periods); (5) California Labor Code sections 226(a), 1174(d), and 1198 (non-compliant wage statements and failure to maintain payroll records); (6) California Labor Code sections 201 and 202 (wages not timely paid upon termination); (7) California Labor Code section 204 (failure to timely pay wages during employment); (8) California Labor Code section 1198 and California Code of Regulations Title 8, section 11160 Subdivision 5(B) (failure to provide reporting time pay); (9) California Labor Code section 2802 (unreimbursed business expenses); and (10) California Labor Code sections 2698, *et seq.* based on the foregoing."  *Id.* at ECF 36 (¶ 35).  If any PAGA members' settlement checks remain uncashed 180 days after being issued, the remaining funds will be donated to Worksafe.  *Id.* at ECF 48 (¶ 72).

United States District Court
Northern District of California

**4.      Attorneys' Fees, Settlement Administration, and Class Representative Enhancement Payment**

In addition to the payments associated with the three employee categories described above, the settlement agreement provides for payment to class counsel, the settlement administrator, and Mr. Rodriguez.

The agreement allows Capstone Law APC, the law firm that represents Mr. Rodriguez in this action and that now requests appointment as class counsel, to move for an award attorneys' fees not in excess of $300,000 or 18% of the gross settlement amount. *Id.* at ECF 30 (¶ 2). The agreement provides that counsel may also seek to recover costs of up to $30,000. *Id.*

Additionally, the settlement agreement provides for payment of an estimated $32,500 in "Settlement Administration Costs" to the settlement administrator. *Id.* at ECF 37 (¶ 39). After soliciting bids from three candidates, the parties selected CPT Group, Inc. to administer the settlement. Dkt. No. 75-2 ¶¶ 13-14 (Declaration of Raul Perez).

Finally, the settlement agreement allows for Mr. Rodriguez to apply to the Court for a class representative enhancement or incentive payment of $10,000, in addition to the amount he will otherwise receive as a member of the California class, the FLSA collective, and the PAGA settlement. Dkt. No. 75-2 at ECF 39 (¶ 45).

**B.      Notice to Members**

The settlement agreement requires defendants to compile a list, including the names, contact information, dates of employment, and number of weeks worked for each member of each employee category, within 30 calendar days of preliminary approval by the Court. *Id.* at ECF 31, 43 (¶¶ 4, 55). Within 10 calendar days of receiving the list, the settlement administrator must mail notices to all members of the California class and FLSA notices to all members of the FLSA collective. *Id.* at ECF 43 (¶ 56). Draft notices are attached to the settlement agreement as exhibits. *Id.* at ECF 60 (California class notice), ECF 67 (FLSA notice). The California class notice also describes the PAGA settlement. *See id.* at ECF 60-65.

The members of the California class will have 45 days from the date of mailing to exclude themselves from the settlement or object to it in writing, while members of the FLSA collective will have 45 days to opt in to the settlement. *Id.* at ECF 37 (¶ 38). They may do so either by

1   email or by U.S. mail, in which case the letter must be postmarked by the deadline. *Id.* Members

2   of both groups will also be able to challenge the accuracy of their dates of employment or weeks

3   worked by the same deadline. *Id.* at ECF 44 (¶ 60).

4       The settlement administrator will be responsible both for checking the accuracy of the

5   address information in the list provided by defendants and for taking additional steps to determine

6   the addresses of any members whose notice is returned as undeliverable. *Id.* at ECF 43 (¶ 57). If

7   the administrator sends the notice to a second address, then the member will be able to respond by

8   either the original response deadline or shall have an additional 15 days from the second mailing,

9   whichever is later. *Id.* Additionally, if a member's request for exclusion or to opt in is defective,

10  then the settlement administrator is required to mail the member a letter explaining the defects. *Id.*

11  at ECF 44-45 (¶ 61). Members will receive extra time to respond to these letters. *Id.*

12      The agreement provides that no earlier than 30 days after the deadline to respond to the

13  notices, the Court will hold a final fairness hearing on the settlement agreement. *Id.* at ECF 51

14  (¶ 81). Members of the California class who object to the settlement may appear in person at the

15  hearing, and the Court may also consider written objections submitted prior to the response

16  deadline. *Id.* at ECF 47 (¶ 69).

17  **II.    LEGAL STANDARD**

18      **A.    Rule 23 Class Action Settlements**

19      Court approval is required for the settlement of Rule 23 class actions. *See* Fed. R. Civ. P.

20  23(e) ("The claims, issues, or defenses of a certified class—or a class proposed to be certified for

21  purposes of settlement—may be settled, voluntarily dismissed, or compromised only with the

22  court's approval."). The Ninth Circuit has declared that a strong judicial policy favors settlement

23  of Rule 23 class actions. *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).

24  However, no presumption of fairness applies to such settlements. *Roes v. SFBSC Mgmt., LLC*,

25  944 F.3d 1035, 1049 (9th Cir. 2019). And where the parties reach a settlement before class

26  certification, courts must "employ[] extra caution and more rigorous scrutiny," *id.*, and "peruse the

27  proposed compromise to ratify both the propriety of the certification and the fairness of the

28  settlement," *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003); *see also In re Bluetooth*

7

*Headset Products Liability Litig.*, 654 F.3d 935, 946 (9th Cir. 2011) ("Prior to formal class certification, there is an even greater potential for a breach of fiduciary duty owed the class during settlement.  Accordingly, such agreements must withstand an even higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e) before securing the court's approval as fair.").

In considering Mr. Rodriguez's motion for preliminary approval, the Court must first assess whether a class exists.  *Staton*, 327 F.3d at 952.  Second, the Court must assess whether the proposed settlement is "fundamentally fair, adequate, and reasonable," considering "the settlement taken as a whole, rather than the individual component parts, that must be examined."  *Id.* (cleaned up).

### B.    FLSA Collective Action Settlements

Court approval is also required for settlements of private collective actions under the FLSA.  *Johnson v. Serenity Transportation, Inc.*, No. 15-cv-02004-JSC, 2020 WL 7260059, at *2 (N.D. Cal. Dec. 10, 2020); *see also Nall v. Mal-Motels, Inc.*, 723 F.3d 1304, 1306 (11th Cir. 2013).  Although "[c]ollective actions [under the FLSA] and class actions [under Rule 23] are creatures of distinct texts . . . that impose distinct requirements," *Campbell v. City of Los Angeles*, 903 F.3d 1090, 1101 (9th Cir. 2018), district courts assess FLSA settlements using a two-step process that is similar to what is required for review of class action settlements under Rule 23.  *See Kulik v. NMCI Med. Clinic Inc.*, No. 21-cv-03495-BLF, 2023 WL 2503539, at *3 (N.D. Cal. Mar. 13, 2023).

First, the Court must assess whether the members of proposed collective are "similarly situated" and may proceed in a collective action.  *Id.*; *see also Campbell*, 903 F.3d at 1117.  Second, the Court must assess whether the proposed settlement is "a fair and reasonable resolution of a bona fide dispute over FLSA provisions."  *Otey v. CrowdFlower, Inc.*, No. 12-cv-05524-JST, 2014 WL 1477630, at *3 (N.D. Cal. Apr. 15, 2014) (quoting *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1355 (11th Cir. 1982)).

### C.    PAGA Settlements

Court approval is likewise required for settlements of PAGA claims.  Cal. Lab. Code

§ 2699(l)(2).  The proposed settlement must also be submitted simultaneously to LWDA.  *Id.*  "An employee bringing a PAGA action does so as the proxy or agent of the state's labor law enforcement agencies, . . . who are the real parties in interest."  *Sakkab v. Luxottica Retail N. Am. Inc.*, 803 F.3d 425, 435 (9th Cir. 2015) (cleaned up).  "Accordingly, a judgment in a PAGA action binds not only the plaintiff, but also the government and nonparty aggrieved employees."  *Eisenacher v. VITAS Hospice Servs. LLC*, No. 20-cv-04948-RS, 2021 WL 1846574, at *2 (N.D. Cal. Apr. 2, 2021).  Even so, PAGA settlements "[do] not require class action procedures, such as notice and opt-out rights."  *O'Connor v. Uber Techs.*, 201 F. Supp. 3d 1110, 1134 (N.D. Cal. 2016).

While court approval of PAGA settlements is statutorily required, PAGA does not provide express guidance about the scope or nature of judicial review.  In the absence of binding guidance, federal district courts reviewing PAGA settlements have drawn on factors utilized by the Ninth Circuit to evaluate whether a class action settlement is fundamentally fair, adequate, and reasonable.  *See id* at 1133-34 (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)); *see also Moniz v. Adecco USA, Inc.*, 72 Cal. App. 5th 56, 77 (2021) ("[A] trial court should evaluate a PAGA settlement to determine whether it is fair, reasonable, and adequate in view of PAGA's purposes to remediate present labor law violations, deter future ones, and to maximize enforcement of state labor laws.").  "These factors are evaluated in light of PAGA's public policy goals of 'benefit[ing] the public by augmenting the state's enforcement capabilities, encouraging compliance with Labor Code provisions, and deterring noncompliance.'"  *Eisenacher*, 2021 WL 1846574, at *2 (quoting *O'Connor*, 201 F. Supp. 3d at 1132-33).

## III.    DISCUSSION

The Court previously found that certification of a California class and FLSA collective for the purposes of this settlement was warranted under the applicable law.  Dkt. No. 48 at 16-17.  As the claims at issue and proposed classes remain the same, the Court finds that its prior reasoning is applicable and determines both classes are properly certified.  The Court will therefore turn directly to whether the proposed settlement is fair, reasonable, and adequate under Rule 23, FLSA, and PAGA, beginning with an assessment of the settlement for the California class under Rule 23.

1

**A.    Rule 23**

Under Rule 23(e), review of a proposed settlement of a class action proceeds in two steps.

Fed. R. Civ. P. 23(e); *Lusby v. Gamestop, Inc.*, 297 F.R.D. 400, 412 (N.D. Cal. 2013).  First, the

Court conducts a preliminary fairness evaluation.  If the Court preliminarily approves the

settlement, then notice to the class is disseminated and the Court sets a final hearing for approval

of the settlement.  *Lusby*, 297 F.R.D. at 412.  Ultimately, a settlement should only be approved if it

is "fair, reasonable and adequate."  Fed. R. Civ. P. 23(e)(2).  In determining whether a proposed

settlement meets this standard, the Court does not have "the ability to delete, modify, or substitute

certain provisions," and "[t]he settlement must stand or fall in its entirety."  *Staton*, 327 F.3d at

969 (cleaned up).  The Court's evaluation of a settlement reached prior to class certification

"requires a higher standard of fairness and a more probing inquiry than may normally be required

under Rule 23(e)."  *Dennis v. Kellogg Co.*, 697 F.3d 858, 864 (9th Cir. 2012) (cleaned up).

The Ninth Circuit has described several factors a court may consider in evaluating the

fairness of a proposed settlement:

> [1] the strength of the plaintiffs' case; [2] the risk, expense,
> complexity, and likely duration of further litigation; [3] the risk of
> maintaining class action status throughout trial; [4] the amount
> offered in settlement; [5] the extent of discovery completed and the
> stage of the proceedings; [6] the experience and views of counsel;
> [7] the presence of a governmental participant; and [8] the reaction
> of the class members to the proposed settlement.

*Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1121 (9th Cir. 2020) (quoting *Hanlon*, 150 F.3d at

1011).  Rule 23(e)(2) requires a court to consider a similar list of factors before approving a

settlement, including whether:

> (A)  the class representatives and class counsel have adequately
>         represented the class;
> (B)  the proposal was negotiated at arm's length;
> (C)  the relief provided for the class is adequate, taking into account:
> the costs, risks,
>         (i)   the costs, risks, and delay of trial and appeal;
>         (ii)  the effectiveness of any proposed method of distributing
>               relief to the class, including the method of processing
>               class-member claims;
>         (iii) the terms of any proposed award of attorney's fees,
>               including timing of payment; and
>         (iv)  any agreement required to be identified under Rule

United States District Court
Northern District of California

10

23(e)(3); and

    (D)  the proposal treats class members equitably relative to each
         other.

Fed. R. Civ. P. 23(e).  This list of factors is not intended to displace any factors identified by courts, "but rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal."  Fed. R. Civ. P. 23(e) advisory committee note to 2018 amendment; *see also McKinney-Drobnis v. Oreshack*, 16 F.4th 594, 609 (9th Cir. 2021) ("The amended Rule 23(e) did not 'displace' this court's previous articulation of the relevant factors, and it is still appropriate for district courts to consider these factors in their holistic assessment of settlement fairness."); *Kim v. Allison*, 8 F.4th 1170, 1178-79 (9th Cir. 2021) (directing district courts to consider both the factors previously identified by the Ninth Circuit and Rule 23(e)(2) when determining whether to approve a settlement).  However, "the district court must show it has explored comprehensively all Rule 23(e)(2) factors."  *In re Apple Inc. Device Performance Litig.*, 50 F.4th 769, 782 (9th Cir. 2022) (cleaned up).

Additionally, the Northern District of California has published procedural guidance for class action settlements, which includes guidelines for parties seeking preliminary approval of class action settlements ("Guidelines").  *See* https://www.cand.uscourts.gov/forms/procedural-guidance-for-class-action-settlements/.  These guidelines identify information that is often helpful to district court in when assessing whether a class action settlement satisfies the standards identified above.

### 1.    Strength of plaintiff's case and the risk, expense, complexity, and likely duration of further litigation

In its prior order, the Court found that Mr. Rodriguez had identified "considerations suggest[ing] that the California class would face meaningful litigation risk—on the merits and on class certification—if the case were to proceed."  Dkt. No. 48 at 20.  The Court determined that this factor weighed in favor of preliminary approval.  *Id.* at 21.

The Court finds that this factor continues to weigh in favor of preliminary approval of the amended settlement agreement.  Mr. Rodriguez again identifies with specificity the challenges facing the alleged claims, such as the defenses that defendants could raise which would possibly

United States District Court
Northern District of California

thwart both the merits of the claims and the ability to achieve class certification.  *See* Dkt. No. 72-5 ¶¶ 26-46 (Perez Decl.).  In view of these challenges, the Court finds that early resolution through settlement would likely be beneficial to the California class.  *See Burgos v. Sunvalleytek Int'l, Inc.*, No. 18-cv-06910-HSG, 2020 WL 7319354, at *7 (N.D. Cal. Dec. 11, 2020) (settlement is preferable when "additional litigation would have, in the best-case scenario, been expensive and time-consuming—and in the worst-case scenario, could have led to Plaintiff and the class going home empty-handed"); *Ching v. Siemens Indus., Inc.*, No. 11-cv-04838-MEJ, 2014 WL 2926210, at *4 (N.D. Cal. June 27, 2014) (same when "Plaintiff [had] identified several meritorious arguments that Defendants could raise to class certification in the event this lawsuit was to proceed").

### 2.    Amount offered in settlement

In its prior order, the Court found it could not "conclude that the amount allocated to resolve the claims of the California class as part of the 'whole package' favors preliminary approval of the settlement."  Dkt. No. 48 at 22.  The Court noted in particular that: (1) "Mr. Rodriguez d[id] not indicate the range of payments that the class members could expect to receive under the amended settlement"; and (2) the net settlement amount for the California class represented only 9% of the maximum possible recovery for the class, a figure that might be acceptable given the identified litigation risks but that was "lower than other approved settlements in similar cases."  *Id.* at 22.

In the amended settlement agreement, the proposed net settlement amount for the California class ($799,500) remains approximately 9% of the estimated maximum possible damages.  In his declaration, Mr. Rodriguez's counsel breaks down the maximum amount of damages possible and the probability of recovering that amount to demonstrate the "realistic" exposure for defendants:

| Class Claim | Alleged Maximum Damages and Penalties | Probability of Recovering Maximum Damages & Penalties | Realistic Alleged Exposure at Trial |
|---|---|---|---|
|  |  |  |  |

| | | | |
|---|---|---|---|
| Minimum Wage / OT Claims | $1,538,817.08 | 6.25% | $96,176.07 |
| Meal Period Claim | $1,212,607.10 | 25% | $303,151.78 |
| Rest Period Claim | $1,212,607.10 | 25% | $303,151.78 |
| Business Expense Claim | $135,942.50 | 25% | $33,985.63 |
| Reporting Time Claim | $606,303.55 | 25% | $151,575.89 |
| Wage Statement Claim | $1,406,850.00 | 6.25% | $87,928.13 |
| Final Pay Claim | $2,916,840.00 | 6.25% | $182,302.50 |
| **Total** | | | **$1,158,271.78** |

Dkt. No. 75-2 ¶ 49 (Perez Decl.). Based on this calculation, the net settlement amount is closer to 70% of the class's maximum "realistic" recovery. *Id.* ¶ 50. Furthermore, Mr. Rodriguez provides an estimated recovery amount of $773.21 per individual for the California class, assuming the net settlement amount of $799,500 and 1,034 class members. Dkt. No. 75 at ECF 15. Mr. Rodriguez also notes several other wage and hour settlements which he asserts reflects circumstances and considerations similar to this case. *Id.* at ECF 27-28 (citing *Rivas v. BG Retail, LLC*, No. 5:16-cv-06458-BLF (N.D. Cal.); *Ford v. CEC Entertainment, Inc.*, No. 3:14-cv-01420-RS (N.D. Cal.), *Berry v. Urban Outfitters Wholesale, Inc.*, No. 4:13-cv-02628-JSW (N.D. Cal.); *Moore v. Anthropologie*, No. 4:13-cv-02628-JSW (N.D. Cal.)).

Having considered this additional information, the Court finds that Mr. Rodriguez has provided sufficient justification for the Court to conclude at this time that the amount allocated to the California class is fair and reasonable. *See Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) ("The fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved.") (cleaned up). The Court determines that this factor weighs in favor of preliminary approval.

### 3.    Extent of discovery completed and the stage of the proceedings

The Court previously found that this factor weighed in favor of preliminary approval. As there has been no change since the Court's prior order, the Court reaffirms that conclusion. *See* Dkt. No. 48 at 22.

### 4.    Adequate representation and equitable treatment

In its prior order, the Court also noted some issues regarding "the adequacy of Mr.

United States District Court
Northern District of California

United States District Court
Northern District of California

1    Rodriguez's representation of the class and the equitable treatment of the different employee

2    categories." *Id*. at 22-23. Specifically, the Court identified concerns relating to the amount of the

3    proposed class representative enhancement award relative to the projected recovery of the

4    individual class members as well as the way the funds had been allocated between the California

5    class, FLSA collective, and PAGA class. *Id.* at 22-24.

6         Incentive award. As before, the $10,000 incentive award proposed for Mr. Rodriguez as

7    the class representative is significantly higher than the amounts each individual class member is

8    expected to receive from the settlement. *See id.* at 23; Dkt. No. 75 at ECF 15, 31. However, as

9    Mr. Rodriguez observes, he "will file a formal motion for the negotiated Class Representative

10   Enhancement Payment once preliminary approval of the Settlement is granted." Dkt. No. 75 at

11   ECF 32. Once that motion is filed, the Court will have an opportunity to evaluate Mr. Rodriguez's

12   contributions on behalf of the class and to determine whether the award he requests is reasonable.

13   *See* Dkt. No. 48 at 23 (citing *Jarrell v. Amerigas Propane, Inc.*, No. 16-cv-01481-JST, 2018 WL

14   1640055, at *4 (N.D. Cal. Apr. 5, 2018)). At this time, however, the Court does not find this

15   aspect a barrier to preliminary approval.

16        Allocation of funds. In its prior order, the Court noted that in determining the estimated

17   value of the California class, FLSA, and PAGA claims, Mr. Rodriguez appeared to be relying on

18   two key assumptions: (1) "25% of the total FLSA collective would opt into the settlement

19   agreement"; and (2) "the Court would award only 25% of the total possible PAGA penalties."

20   Dkt. No. 48 at 24. The Court found that these assumptions required further explanation.

21        As discussed further in sections B and C, the Court finds that Mr. Rodriguez has provided

22   adequate explanation for the calculation of the value of the FLSA and PAGA claims. The Court

23   thus finds that these concerns have been addressed and that this factor weighs in favor of

24   preliminary approval.

25              **5.    Potential for collusion and attorneys' fees award**

26        In its prior order, the Court determined that there was "no indicia of collusion" and that

27   this factor thus weighed in favor of preliminary approval. Dkt. No. 48 at 26. However, the Court

28   did note that the proposed attorneys' fees award of $400,000 exceeded the 25% benchmark

1   generally found appropriate by the Ninth Circuit.  Dkt. No. 48 at 25 (citing *In re Bluetooth*, 654

2   F.3d at 942).  The Court found that because the award of fees would be ultimately decided by a

3   separately filed motion after preliminary approval, this discrepancy did not provide a barrier to

4   preliminary approval of the amended settlement.  *Id.*

5           In the amended settlement agreement, the parties have reduced the potential attorneys' fees

6   request to $300,000 while increasing the overall value of the settlement to $1,622,000.  Dkt. No.

7   75-2 at ECF 30, 33, 38-39 (¶¶ 2, 21, 44).  Thus, the attorneys' fees request, when made, would be

8   a maximum of 18% of the total settlement fund.  While the Court again reserves any formal

9   finding for when it receives the application or motion for attorneys' fees, this reduction in fees

10  falls well within the benchmark, and the Court reaffirms its prior decision that this factor does not

11  bar preliminary approval.

### 6.    Adequacy of notice and plan for distribution

13          In its prior order, the Court found the settlement agreement's plan for distribution and

14  settlement administration to be adequate.  Dkt. No. 48 at 27-28.  However, while the Court

15  generally found the proposed notice for the California class contained the required information,

16  the Court provided two points of additional guidance: (1) that the notice should be revised to

17  inform class members that they may also be part of the FLSA collective and that there are

18  additional steps to opt in to this settlement; and (2) that the notice should advise potential class

19  members that a version is available in Spanish as well.  *Id.* at 26-27.  The revised California class

20  notice adopts both of these suggested additions, and is otherwise acceptable.  *See* Dkt. No. 75-2 at

21  ECF 60.

22                                                    ***

23          Accordingly, the Court grants preliminary approval of the California class settlement.

### B.    FLSA Collective

### 1.    Fair and reasonable resolution

26          In its prior order, the Court identified two major concerns bearing on whether the FLSA

27  settlement was fair and reasonable.  First, the Court observed that Mr. Rodriguez did not provide

28  the Court with "information about the expected range of recoveries or average recovery for

United States District Court
Northern District of California

1    individual collective members" nor "explain why the settlement of the FLSA claim discounts the

2    collective members' expected recovery." Dkt. No. 48 at 28-29. Second, the Court noted that Mr.

3    Rodriguez "d[id] not include liquidated damages in his calculations of the estimated value of the

4    FLSA claim." *Id.* at 29.

5         In his motion for preliminary approval of the amended settlement agreement, Mr.

6    Rodriguez calculates the total exposure for defendants at $6,062,506.43. Dkt. No. 75 at ECF 32.

7    He clarifies, however, that this number assumes a 100% opt-in rate for the FLSA collective,

8    whereas the typical opt-in rate in FLSA collective actions is in the range of 14% to 25%. *Id.* at

9    ECF 32-33 (citing *Gutierrez-Bejar v. SOS Int'l, LLC*, No. LA CV16-09000 JAK (JEMx), 2019

10   WL 5683901, at *9 (C.D. Cal. Nov. 1, 2019) and *Bautista v. Harvest Mgmt. Sub LLC*, No. CV 12-

11   10004 FMO (CWx), 2013 WL 12125768, at *15 (C.D. Cal. Oct. 16, 2013)). Thus, at a 14% opt-in

12   rate,[2] the total potential recovery would be $848,750.90. *Id.* at ECF 33. In his declaration, Mr.

13   Rodriguez's counsel further explains that after calculating the more "realistic" number based on a

14   14% opt-in rate, he applied a further discount to the potential recovery based on the litigation risk

15   if the case were to proceed. Dkt. No. 75-2 ¶¶ 62-64 (Perez. Decl.). The declaration highlights

16   how defendants could have challenged the FLSA claim and class certification, including by

17   arguing "that [defendants'] labor policies prohibit off-the-clock work, that employees were

18   properly compensated for all time worked, and any time worked off-the-clock would not be

19   reflected in the time records, making it practically impossible to determine whether any Class

20   Member worked off-the-clock without engaging in thousands of individualized inquiries." *Id.*

21   ¶ 63. Because of the availability of such defenses and other factors, Mr. Rodriguez's counsel

22   estimates the probability of recovering the maximum damages on behalf of the FLSA collective at

23   25%. *Id.* ¶ 64. The settlement amount of $250,000 is 29% of the estimated "realistic" maximum

24   of $848,750.90 (assuming a 14% opt-in rate).

25         The Court agrees that, for the purposes of preliminary approval, this percentage difference

26

27   [2] Mr. Rodriguez appears to use a 14% opt-in rate for the basis of his calculations rather than the
     25% rate used in the prior motion. *See* Dkt. No. 47-2 ¶ 39 (Perez. Decl.) ("At the high end of the

28   typical opt-in rate, the realistic maximum total exposure if Plaintiff successfully litigated a
     collective action judgment is $1,258,000 based on Plaintiff's estimated overtime hours.").

1    appears to be within the range approved by other courts in the Ninth Circuit.  *See Chalmers v.*

2    *DSSV, Inc.*, No. 22-cv-08863-HSG, 2024 WL 4844376, at *3 (N.D. Cal. Nov. 19, 2024) (quoting

3    *Estorga v. Santa Clara Valley Transportation Auth.*, No. 16-cv-02668-BLF, 2020 WL 7319356, at

4    *4 (N.D. Cal. Dec. 11, 2020)) ("[C]ourts in the Ninth Circuit have found FLSA cases settling for

5    approximately 25%–35% of the total possible recovery to be reasonable.") (alteration in original).

6         However, as Mr. Rodriguez's counsel notes in his declaration, the calculation of

7    defendants' maximum exposure still does not include potential liquidated damages.  Dkt. No. 75-2

8    ¶ 60. "[C]ourts retain discretion to withhold a liquidated damages award, or to award less than the

9    statutory liquidated damages total, where an employer shows that, 'despite the failure to pay

10   appropriate wages, the employer acted in subjective 'good faith' and had objectively 'reasonable

11   grounds' for believing that the acts or omissions giving rise to the failure did not violate the

12   FLSA.'"  *Alvarez v. IBP, Inc.*, 339 F.3d 894, 909 (9th Cir. 2003) (quoting *Herman v. RSR Sec.*

13   *Servs. Ltd.*, 172 F.3d 132 (2d Cir. 1999)).  This is a difficult standard to meet, and an award of

14   liquidated damages is generally "the norm" under FLSA.  *See Haro v. City of Los Angeles*, 745

15   F.3d 1249, 1259 (9th Cir. 2014).

16        Mr. Rodriguez's counsel attests that he did not uncover any evidence that defendants'

17   actions were willful or intentional and thus determined that it would be unlikely the FLSA

18   collective would obtain an award of liquidated damages.  Dkt. No. 75-2 ¶ 60 (Perez Decl.) (citing

19   *Selk v. Pioneers Mem'l Healthcare Dist.*, 159 F. Supp. 3d 1164, 1174-75 (S.D. Cal. 2016)).  For

20   this reason, he did not factor those damages into the calculation of the maximum recovery.  The

21   Court notes that, in *Selk*, the case on which Mr. Rodriguez relies, the parties had "engaged in

22   meaningful discovery," including depositions and the production of over 23,000 documents by the

23   defendant.  159 F. Supp. 3d at 1177.  Here, the parties have not engaged in extensive discovery,

24   although Mr. Rodriguez has received defendants' "policy manuals, and timesheet and earnings

25   data for all potential class members."  Dkt. No. 48 at 22.  For the purpose of preliminary approval,

26   the Court determines that Mr. Rodriguez has provided an adequate explanation for exclusion of

27   liquidated damages from the calculation.

28        The Court thus finds, at this stage of the proceedings, that the FLSA settlement is both fair

and reasonable.

**2.    Notice and consent to magistrate judge jurisdiction**

In its prior order, the Court also instructed that the FLSA collective members be directed to consent or decline magistrate judge jurisdiction at the same time as they chose to opt into the settlement.  Dkt. No. 48 at 31.  The revised version of the FLSA opt-in form submitted with the amended settlement agreement now contains a sentence indicating that the individual opting in also consents to magistrate judge jurisdiction.  Dkt. No. 75-2 at ECF 71 ("In accordance with the provisions of 28 U.S.C. § 636(c), I voluntarily consent to have a United States magistrate judge conduct all further proceedings in this case.").  The Court finds that this is sufficient to cure the previous defect.  Further, at the hearing, the parties indicated they would offer a version of the notice in Spanish and that information would be added to the English-language notice alerting recipients to the availability of the Spanish translation.  The Court approves the notice with this addition.

*** *** ***

As the parties have addressed the Court's concerns as described above, the Court grants preliminary approval of the FLSA collective portion of the settlement.

**C.    PAGA Settlement**

A reviewing court must ensure that a PAGA settlement "(1) meet[s] the statutory requirements set forth by PAGA, and (2) [is] fundamentally fair, reasonable, and adequate in view of PAGA's public policy goals."  *Kulik v. NMCI Med. Clinic Inc.*, No. 21-cv-03495-BLF, 2023 WL 2503539, at *4 (N.D. Cal. Mar. 13, 2023).  In its prior order, the Court identified two principal concerns with the proposed PAGA settlement.[3]  First, the Court expressed concern that Mr. Rodriguez had not offered a justification as to why the Court would, in these circumstances, "exercise its discretion to award only 25% of the maximum total penalties."  Dkt. No. 48 at 33.

---

[3] The Court additionally expressed concern that the parties had not provided the Court with proof of the submission of the settlement to the California Labor and Workforce Development Agency (LWDA) as required by the statute.  *See* Cal. Lab. Code § 2699(l)(2).  Here, the parties have included a confirmation email of their submission to LWDA.  *See* Dkt. No. 75-4.

United States District Court
Northern District of California

1    Second, the Court expressed concern with the fact that the PAGA settlement was only 2.5% of the

2    total estimated maximum penalties.[4]  *Id.* at 34.

3         As to the first concern, in his declaration, Mr. Rodriguez's counsel again offers examples

4    of cases in which the court significantly reduced the amount of penalties, including because of the

5    good faith behavior of defendants.  Dkt. No. 75-2 ¶¶ 55-56 (Perez Decl.) (collecting cases).  He

6    does not clearly explain how the circumstances in those cases compare to the circumstances in this

7    case, but relies instead on a discussion of the "strength of the factual and legal defenses likely to

8    be asserted by the Defendants at trial and the availability of good faith defenses" to support his

9    assessment regarding an award of PAGA penalties.  *Id.* ¶ 57.  Mr. Rodriguez provides a revised

10   table outlining the calculation of defendants' "realistic" exposure under PAGA:

| PAGA Claim | Total Potential Penalties | Odds of Recovering Maximum PAGA Penalties | Realistic Exposure at Trial |
|---|---|---|---|
| Minimum Wage Claim[5] | $2,813,700.00 | 6.25% | $175,856.25 |
| Overtime Claim[6] | $2,813,700.00 | 6.25% | $175,856.25 |
| Meal Period Claim[7] | $2,813,700.00 | 12.5% | $351,712.50 |
| Rest Period Claim[8] | $2,813,700.00 | 12.5% | $351,712.50 |
| Business Expense Reimbursement Claim[9] | $2,813,700.00 | 12.5% | $351,712.50 |
| Reporting Time Claim[10] | $2,813,700.00 | 12.5% | $351,712.50 |
| Wage Statement Claim[11] | $2,813,700.00 | 6.25% | $175,856.25 |
| Final Pay Claim[12] | $54,500.00 | 6.25% | $3,406.25 |
| Total | | | $1,937,825.00 |

20   *Id.*  Mr. Rodriguez's counsel explains that the odds of recovery were calculated by "multiplying

21   the anticipated probabilities of prevailing on the merits of the claims . . . by the odds of the Court

22   awarding maximum penalties under PAGA . . ., *which Plaintiff roughly estimated at 25%.*"  *Id.*

23   ¶ 57 n.4 (emphasis added).  The Court infers that this estimate reflects counsel's assessment of the

24   strength of defendants' defenses, and in particular, the lack of evidence of bad faith on the part of

25   the defendants.  The Court finds such reasoning is persuasive for the purposes of the preliminary

---

[4] The Court observed that Mr. Rodriguez appeared to have made some miscalculations in determining defendants' maximum exposure under PAGA.  Dkt. No. 48 at 33.  These appear to have been corrected upon revision.

United States District Court
Northern District of California

United States District Court
Northern District of California

approval analysis.

Similarly, regarding the amount of the proposed PAGA settlement, the Court finds that Mr. Rodriguez and his counsel have adequately addressed the Court's concerns at this stage.  While the amount of the PAGA settlement is now closer to 1% of the total calculated exposure, it is 10% of the "realistic" exposure calculation, a calculation for which Mr. Rodriguez has provided a logical rationale.  Furthermore, the Court must consider the adequacy of the PAGA settlement in conjunction with the Rule 23 class settlement.  *O'Connor v. Uber Techs., Inc.*, 201 F. Supp. 3d 1110, 1134 (N.D. Cal. 2016).  As the Court has found that the California class settlement is fair and reasonable for the purposes of this preliminary analysis, the goals of PAGA may be fulfilled through this settlement as well.  *See id.* ("[I]f the settlement for the Rule 23 class is robust, the purposes of PAGA may be concurrently fulfilled.").

Accordingly, the Court grants Mr. Rodriguez's motion for preliminary approval of the PAGA settlement.

## IV.    PRELIMINARY APPROVAL

For the reasons explained above, the Court grants Mr. Rodriguez's motion for preliminary approval and adopts his proposed order as follows:

1.  The California class is conditionally certified for settlement purposes only and shall consist of all persons who were employed by defendants in the State of California in non-exempt positions at any time during the period from February 25, 2018 to the date of Preliminary Approval.

2.  The proposed FLSA collective is conditionally certified for settlement purposes only and shall consist of all persons who were employed by defendants in the United States of America in non-exempt positions at any time during the period from February 25, 2019 to the date of Preliminary Approval.

3.  The PAGA Members encompassed by the Settlement and this Order are all persons who were employed by defendants in the State of California in non-exempt positions at any time during the period from March 8, 2021 to the date of Preliminary Approval.

4.  The Settlement Agreement is preliminarily approved, including all the terms and

conditions set forth therein and the Gross Settlement Amount and allocation of payments.

5.  The Court approves, as to form and content, the proposed Notice of Class Action Settlement.  The Court also approves, as to form and content, the proposed FLSA Notice with the agreed-upon modification including the availability of Spanish translation.

6.  The Court directs the mailing, by First-Class U.S. mail, of the Class Notices and FLSA Notices to Class Members and FLSA Collective Action Members in accordance with the schedule set forth below and the other procedures described in the Settlement Agreement.

7.  The Court appoints plaintiff Richard Rodriguez as the representative for the Settlement Class conditionally certified by this Order.

8.  The Court appoints Capstone Law APC as Class Counsel.

9.  The Court approves and appoints CPT Group, Inc. as the Settlement Administrator.

10. The following deadlines shall apply for the remainder of the settlement process:

| Date | Event |
|------|-------|
| June 20, 2025 | Last day for defendants to produce the Class List to the Settlement Administrator. |
| June 30, 2025 | Last day for the Settlement Administrator to mail a Class Notice to all Class Members, and a FLSA Notice to all FLSA Collective Action Members, via regular First-Class U.S. Mail. |
| July 31, 2025 | Last day for Plaintiff to file the Motion for Attorneys' Fees, Costs, and a Class Representative Enhancement Payment. |
| August 14, 2025 | Last day for: (a) Class Members to postmark or email to the Settlement Administrator Requests for Exclusion, postmark or email disputes concerning the calculation of Individual Settlement Payments, or postmark Notices of Objection to the Settlement Administrator; and (b) FLSA Collective Action Members to postmark or email FLSA Opt In Forms. |

United States District Court
Northern District of California

| August 29, 2025 | Last day for Plaintiff to file and serve the Motion for Final Approval of Class Action Settlement. |
| --- | --- |
| October 7, 2025 at 10:00 a.m. | Hearing on Motion for Final Approval of Class Action Settlement and Motion for Attorneys' Fees, Costs, and a Class Representative Enhancement Payment. |

## V.    CONCLUSION

For the reasons described above, the Court grants Mr. Rodriguez's motion for preliminary approval in its entirety.

**IT IS SO ORDERED.**

Dated: May 21, 2025

Virginia K. DeMarchi
United States Magistrate Judge