1  Raul Perez (SBN 174687)
   Raul.Perez@capstonelawyers.com
2  Robert J. Drexler, Jr. (SBN 119119)
   Robert.Drexler@capstonelawyers.com
3  Jonathan Lee (SBN 267146)
   Jonathan.Lee @capstonelawyers.com
4  CAPSTONE LAW APC
   1875 Century Park East, Suite 1860
5  Los Angeles, California 90067
   Telephone:     (310) 556-4811
6  Facsimile:     (310) 943-0396

7  Attorneys for Plaintiff Richard Rodriguez

8              UNITED STATES DISTRICT COURT

9            NORTHERN DISTRICT OF CALIFORNIA

10                  SAN JOSE DIVISION

11 | RICHARD RODRIGUEZ, individually, and on | Case No. 5:22-cv-02071-VKD
   | behalf of other members of the general public |
12 | similarly situated, | Assigned to the Hon. Virginia K. DeMarchi

13 |              Plaintiff, | **NOTICE OF MOTION AND MOTION FOR**
   | | **FINAL APPROVAL OF AMENDED CLASS,**
14 |       vs. | **COLLECTIVE, AND PAGA ACTION**
   | | **SETTLEMENT; MEMORANDUM OF**
15 | BELFOR USA GROUP, INC., a Colorado | **POINTS AND AUTHORITIES**
   | corporation; BELFOR ENVIRONMENTAL, |
16 | INC. a Colorado corporation; OAKWOOD | Date:      October 7, 2025
   | CONSTRUCTION AND RESTORATION | Time:      10:00 a.m.
17 | SERVICES, INC. a California corporation; 1 | Place:     Courtroom 2
   | 800 WATER DAMAGE NORTH AMERICA, |
18 | LLC, a Delaware limited liability company; and |
   | DOES 1 through 10, inclusive, |
19 |
   |              Defendants. |
20

21

22

23

24

25

26

27

28

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on October 7, 2025, at 10:00 a.m., or as soon thereafter as counsel may be heard, in Courtroom 2 of the above-captioned court, located at 280 South 1st Street, San Jose, California 95113, the Honorable Virginia K. DeMarchi presiding, Plaintiff Richard Rodriguez will, and hereby does, move this Court for entry of an order and judgment granting final approval of the settlement and all agreed-upon terms therein. This Motion, unopposed by Defendants Belfor USA Group, Inc., Belfor Environmental, Inc., Oakwood Construction and Restoration Services, Inc., and 1 800 Water Damage North America, LLC, seeks final approval of: (1) the Amended Joint Stipulation of Class, Collective, and PAGA Action Settlement and Release, (2) settlement payments to Participating Class Members, FLSA Opt In Claimants, PAGA Members, and the LWDA, and (3) costs/expenses to the settlement administrator, CPT Group, Inc.

This Motion is based upon: (1) this Notice of Motion and Motion; (2) the Memorandum of Points and Authorities in support of Motion for Final Approval of Class Action and PAGA Settlement; (3) the previously filed Motion for Attorneys' Fees, Costs, and a Class Representative Enhancement Payment (ECF No. 82); (4) the Declaration of Raul Perez; (5) the Declaration of Regina Cutler on behalf of CPT Group, Inc., the settlement administrator; (6) the [Proposed] Order and Judgment; (7) the records, pleadings, and papers filed in this action; and (8) upon such other documentary and/or oral evidence as may be presented to the Court at the hearing.

Dated: August 29, 2025                                  Respectfully submitted,

                                            By:  /s/ Robert J. Drexler, Jr.
                                            Raul Perez
                                            Robert J. Drexler, Jr.
                                            Jonathan Lee
                                            **CAPSTONE LAW APC**

                                            Attorney for Plaintiff Richard Rodriguez

# TABLE OF CONTENTS

I.     INTRODUCTION ...................................................................................................... 1

II.    FACTS AND PROCEDURE ...................................................................................... 3

III.   SETTLEMENT TERMS ........................................................................................... 4

       A.    The Proposed Settlement Fully Resolves Plaintiff's Claims ........................... 4

             1.    Composition of the Settlement Class ................................................... 4

             2.    Composition of the FLSA Collective .................................................. 5

             3.    Composition of the PAGA Settlement Group ...................................... 5

             4.    Settlement Consideration ...................................................................... 5

             5.    Releases by Class Members, FLSA Opt In Claimants, and PAGA Members ............... 6

IV.    THE NOTICE AND SETTLEMENT ADMINISTRATION PROCESSES WERE
       COMPLETED PURSUANT TO THE COURT'S ORDER ........................................ 7

V.     ARGUMENT ............................................................................................................ 8

       A.    The Court Should Grant Final Approval of the Class Settlement ................... 8

             1.    Class Certification Requirements Are Met ........................................... 9

             2.    The Settlement Was Negotiated at Arm's Length by Experienced Counsel ............... 10

             3.    The Extent of Discovery Completed Supports Final Approval ............. 10

             4.    The Settlement Is Within the Range of Reasonableness Considering the
                   Strength of Plaintiff's Case and the Risk, Expense, Complexity, and Duration
                   of Further Litigation ........................................................................... 10

             5.    The Settlement Class Has Responded Positively to the Settlement ..... 12

       B.    The Court Should Grant Final Approval of the FLSA Settlement .................. 13

       C.    The Court Should Grant Final Approval of the PAGA Settlement ................. 14

       D.    The Requested Payment to the Settlement Administrator Is Reasonable and Should
             Receive Final Approval ................................................................................. 16

VI.    CONCLUSION ........................................................................................................ 16

1

**TABLE OF AUTHORITIES**

2

3 **FEDERAL CASES**

4 *Allen v. Bedolla*, 787 F.3d 1218 (9th Cir. 2015)....................................................................... 9

5 *Alvarez v. IBP, Inc.*, 339 F.3d 894, 909 (9th Cir. 2003) (quoting *Herman v. RSR Sec.*

6    *Servs. Ltd.*, 172 F.3d 132 (2d Cir. 1999) .............................................................................. 14

7 *Balderas v. Massage Envy Franchising, LLC*, No. 12-cv-06327-NC, 2014 WL 3610945

8    (N.D. Cal. July 21, 2014) .................................................................................................... 12

9 *Bautista v. Harvest Mgmt. Sub LLC*, No. CV1210004FMOCWX, 2013 WL 12125768

10    (C.D. Cal. Oct. 16, 2013) .................................................................................................... 14

11 *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245 (N.D. Cal. 2015) ....................................... 12

12 *Chalmers v. DSSV, Inc.*, No. 22-CV-08863-HSG, 2024 WL 4844376 (N.D. Cal. Nov.

13    19, 2024) ........................................................................................................................... 14

14 *Chambers v. Whirlpool Corp.*, 214 F. Supp. 3d 877 (C.D. Cal. 2016)........................................... 9

15 *Chao v. A-One Med. Servs., Inc.*, 346 F.3d 908 (9th Cir. 2003)................................................. 14

16 *Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848 (N.D. Cal. 2010) .............................. 12

17 *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268 (9th Cir. 1992)................................................. 8

18 *Dixon v. Cushman*, 18-cv-05813-JSC, 2022 WL 1189883 (N.D. Cal. Apr. 21, 2022) ............................ 12

19 *Garner v. State Farm Mut. Auto. Ins. Co.*, No. CV 08 1365 CW EMC, 2010 WL

20    1687832 (N.D. Cal. Apr. 22, 2010) ..................................................................................... 12

21 *Gutierrez-Bejar v. SOS Int'l, LLC*, No. LACV1609000JAKJEMX, 2019 WL 5683901

22    (C.D. Cal. Nov. 1, 2019) .................................................................................................... 14

23 *Hamilton v. Juul Labs, Inc.*, No. 20-CV-03710-EMC, 2021 WL 5331451 (N.D. Cal.

24    Nov. 16, 2021).................................................................................................................... 16

25 *Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998)....................................................8, 9, 12

26 *Haro v. City of Los Angeles*, 745 F.3d 1249, 1259 (9th Cir. 2014)............................................. 14

27 *Hopson v. Hanesbrands Inc.*, No. CV-08-0844 EDL, 2009 WL 928133 (N.D. Cal. Apr.

28    3, 2009) ............................................................................................................................. 16

*In re Extreme Networks, Inc. Sec. Litig.*, No. 15-04883, 2019 WL 3290770 (N.D. Cal.
July 22, 2019) ........................................................................................................... 9

*In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539 (9th Cir. 2019) ............................. 9

*In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036 (N.D. Cal. 2008) ........................ 12

*In re Toys R Us-Delaware, Inc.-- Fair & Accurate Credit Transactions Act (FACTA)
Litig.*, 295 F.R.D. 438 (C.D. Cal. 2014) ............................................................... 11

*Jones v. Agilysys, Inc.*, 2014 WL 2090034 (N.D. Cal. May 19, 2014) ........................ 14

*Linney v. Cellular Alaska P'ship*, 151 F.3d 1234 (9th Cir. 1998) ............................... 11

*Lynn's Food Stores, Inc. v. U.S.*, 679 F.2d 1350 (11th Cir. 1982) .............................. 13

*Merante v. Am. Inst. for Foreign Study, Inc.*, 2022 WL 2918896 (N.D. Cal. July 25,
2022) ...................................................................................................................... 15

*Nat'l Rural Telecomm. Coop. v. Directv, Inc.*, 221 F.R.D. 523 (C.D. Cal. 2004) ...... 12

*Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615 (9th Cir. 1982) ................. 11

*Rodriguez v. West Pub. Corp.*, 463 F.3d 948 (9th Cir. 2009) .................................... 11

*Selk v. Pioneers Mem'l Healthcare Dist.*, 159 F. Supp. 3d 1164 (S.D. Cal. 2016) ..... 14

*Smith v. Kaiser Found. Hosps.*, 2020 WL 5064282 (S.D. Cal. Aug. 26, 2020) ........... 16

*Stovall-Gusman v. W.W. Granger, Inc.*, No. 13-cv-02540-HSG, 2015 WL 3776765
(N.D. Cal. June 17, 2015) ...................................................................................... 12

STATE CASES

*Nordstrom Com. Cases*, 186 Cal. App. 4th 576 (2010) ............................................... 16

FEDERAL STATUTES

29 U.S.C. § 216(b) .......................................................................................................... 13

Fed. R. Civ. P. 23(a) ......................................................................................................... 9

Fed. R. Civ. P. 23(b)(3) ..................................................................................................... 9

MOTION FOR FINAL APPROVAL OF AMENDED CLASS, COLLECTIVE, AND PAGA ACTION SETTLEMENT

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    INTRODUCTION**

On May 21, 2025, this Court granted preliminary approval of the Amended Joint Stipulation of Class, Collective, and PAGA Action Settlement and Release[1] and approved distribution of the Notice of Class Action Settlement to all Class Members and the Notice of Collective Action Settlement to all FLSA Collective Action Members. Class Members were given 45 days to opt out or object to the class settlement, and FLSA Collective Action Members were given 45 days to opt in to the FLSA settlement ("Response Deadline").

Now that the Response Deadline has passed, Plaintiff Richard Rodriguez is pleased to report that: (1) only 4 individuals opted out of the Settlement Class (less than 0.4% of the Settlement Class); (2) no Class Members objected to the Settlement; (3) 479 FLSA Collective Action Members opted in to the FLSA settlement; (4) the average payment to Participating Class Members from the Net Settlement Fund is $764.24, and the highest is $5,412.35; (5) the average payment to FLSA Opt In Claimants from the FLSA Settlement Fund is $521.92, and the highest is $1,638.78; and (6) the average payment to PAGA Members from the PAGA Fund is $69.83, and the highest is $360.16. (Declaration of Regina Cutler ["Cutler Decl."] ¶¶ 7-13.)

Plaintiff now moves for final approval of the Settlement. This motion is unopposed by Defendants Belfor USA Group, Inc., Belfor Environmental, Inc., Oakwood Construction and Restoration Services, Inc., and 1 800 Water Damage North America, LLC (collectively with Plaintiff, the "Parties"). The principal terms of the Settlement provide for the following:

> (1)    Conditional certification of a Settlement Class defined as: All persons who were employed by Defendants in the State of California in non-exempt positions at any time during the period from February 25, 2018 through May 21, 2025 ("Class Members").
>
> (2)    Conditional certification of a Fair Labor Standards Act ("FLSA") collective defined as: All persons who were employed by Defendants in the United States of America in non-exempt positions at any time during the period from February 25, 2019 through May 21,

---

[1] Hereinafter, the "Settlement" or "Settlement Agreement."  Unless indicated otherwise, capitalized terms used herein have the same meaning as those defined by the Settlement.

1    2025.

2    (3)    A **non-reversionary** Gross Settlement Amount of $1,622,000. The Gross Settlement

3    Amount includes:

4    (a)    A Net Settlement Fund (the Gross Settlement Amount minus the requested

5    Attorneys' Fees and Costs, Settlement Administration Costs, the FLSA

6    Settlement Fund, the PAGA Settlement Amount, and the Class Representative

7    Enhancement Payment), which will be allocated to all Class Members on a pro-

8    rata basis according to the number of weeks each Class Member worked during

9    the Class Period. **The entire Net Settlement Fund will be paid to all**

10    **Participating Class Members.**

11    (b)    A FLSA Settlement Fund of $250,000 that will be paid to all 479 FLSA Opt In

12    Claimants in proportion to the number of weeks each FLSA Opt In Claimant

13    worked during the FLSA Period.

14    (c)    A $200,000 PAGA settlement, of which 75% ($150,000) will be paid to the

15    Labor & Workforce Development Agency ("LWDA"), and the remaining 25%

16    ($50,000) ("PAGA Fund"), will be payable to PAGA Members, defined as: All

17    persons who were employed by Defendants in the State of California in non-

18    exempt positions at any time during the period from March 8, 2021 through

19    May 21, 2025. **The entire PAGA Fund will be paid to all PAGA Members.**

20    (d)    Attorneys' fees in the amount of $300,000, and litigation costs and expenses of

21    $27,813.74, to Capstone Law APC ("Plaintiff's Counsel").

22    (e)    Settlement administration costs of $32,500, to be paid to the jointly selected

23    Settlement Administrator, CPT Group, Inc. ("CPT")

24    (f)    A Class Representative Enhancement Payment of $10,000 to Richard

25    Rodriguez for his service on behalf of the Settlement Class, the risks he took in

26    bringing the action on behalf of the class, and for a general release of all claims

27    arising out of his employment with Defendants.

28    An objective evaluation of the Settlement confirms that the relief negotiated on the Settlement

1  Class's behalf is fair, reasonable, and valuable. The Settlement was negotiated by the Parties at arm's

2  length with helpful guidance from Louis Marlin, Esq., an experienced and well-respected class action

3  mediator, and the Settlement confers substantial benefits to Class Members, FLSA Collective Action

4  Members, and PAGA Members. This relief is particularly impressive when viewed against the

5  difficulties encountered by plaintiffs pursuing wage and hour cases. Moreover, by settling now rather

6  than proceeding to trial, Class Members will not have to wait (possibly years) for relief, nor will they

7  have to bear the risk of class certification being denied or of Defendants prevailing at trial, or of Plaintiff

8  prevailing at trial but losing on appeal.

9       Accordingly, given the Settlement's favorable terms, the Court's previous findings concerning

10  the Settlement's fairness and reasonableness, and the complete absence of objection to the Settlement,

11  Plaintiff respectfully requests that the Court: (1) grant this Motion for Final Approval of the Settlement

12  Agreement; (2) grant final approval of the settlement administration costs/expenses; (3) enter judgment

13  pursuant to the Settlement Agreement; and (4) retain jurisdiction to enforce the Settlement.

14  **II.**    **FACTS AND PROCEDURE**

15       Defendants provide disaster restoration services for damage caused by fire, water, wind, or other

16  catastrophes across the United States. Defendants employed Plaintiff Richard Rodriguez as a non-

17  exempt Water Damage Specialist-Laborer in Fresno, California from approximately March 2020 to

18  December 2021. (Declaration of Richard Rodriguez ¶ 2.)

19       Plaintiff filed this wage and hour action against Defendants in the Superior Court of the State of

20  California, County of Santa Clara on February 25, 2022. (Declaration of Raul Perez ["Perez Decl."] ¶ 2.)

21  Defendants removed the Action to this Court on March 31, 2022. (*Id.*)

22       Plaintiff's operative First Amended Complaint alleges that Defendants violated the following

23  provisions of the Fair Labor Standards Act ("FLSA"), the California Labor Code,[2] and the California

24  Business and Professions Code: (1) 29 U.S.C. §§ 201, *et seq.* (FLSA); (2) Sections 510 and 1198

25  (unpaid overtime); (3) Sections 1182.12, 1194, 1197, 1197.1, and 1198 (unpaid minimum wages); (4)

26  Sections 226.7, 512(a), 516, and 1198 (failure to provide meal periods); (5) Sections 226.7, 516, and

27

28

---

[2] Unless indicated otherwise, further statutory references are to the California Labor Code.

1198 (failure to authorize and permit rest periods); (6) Sections 226(a), 1174(d), and 1198 (non-compliant wage statements and failure to maintain payroll records); (7) Sections 201 and 202 (wages not timely paid upon termination); (8) Section 204 (failure to timely pay wages during employment); (9) Section 1198 and California Code of Regulations Title 8, § 11160 Subdivision 5(B) (failure to provide reporting time pay); (10) Section 2802 (unreimbursed business expenses); (11) Sections 2698, *et seq.* (PAGA); (12) California Business & Professions Code sections 17200, *et seq.* (unlawful business practices); and (13) California Business & Professions Code sections 17200, *et seq.* (unfair business practices). (Perez Decl. ¶ 3.)

On June 23, 2023, the Parties participated in full-day mediation with Louis Marlin, Esq., an experienced mediator of wage and hour actions. (*Id.* at ¶ 4.) Mr. Marlin helped to manage the Parties' expectations and provided a useful, neutral analysis of the issues and risks to both sides. (*Id.*) With Mr. Marlin's guidance, the Parties were eventually able to negotiate a settlement of Plaintiff's claims. (*Id.*)

Plaintiff filed a Motion for Preliminary Approval of the Class, Collective, and PAGA Action Settlement (Dkt. No. 39) on December 19, 2023. (Perez Decl. ¶ 5.) In response to the Court's request for a supplemental submission, the Parties filed an amended settlement agreement on March 8, 2024. (*Id.*) The Court denied the motion without prejudice on June 13, 2024. (*Id.*) Thereafter, the Parties engaged in further protracted settlement negotiations, during which Defendants agreed to increase the Gross Settlement Amount by $422,000, and Plaintiff agreed to cap his request for attorneys' fees at $300,000, or approximately 18% of the Gross Settlement Amount. (*Id.*) The Parties agreed on various amendments to the settlement to address the concerns identified by the Court in its order denying the motion. (*Id.*)

The Court preliminarily approved the Amended Joint Stipulation of Class, Collective, and PAGA Action Settlement and Release on May 21, 2025. (ECF No. 81.)

## III.    SETTLEMENT TERMS

### A.    The Proposed Settlement Fully Resolves Plaintiff's Claims

#### 1.    Composition of the Settlement Class

The proposed Settlement Class consists of all persons who were employed by Defendants in the State of California in non-exempt positions at any time during the period from February 25, 2018 through May 21, 2025. (Settlement Agreement ¶ 5.) There are 1,049 Participating Class Members.

(Cutler Decl. ¶ 11.)

### 2.    Composition of the FLSA Collective

The proposed FLSA collective consists of all persons who were employed by Defendants in the United States of America in non-exempt positions at any time during the period from February 25, 2019 through May 21, 2025. (Settlement Agreement ¶ 14.) There are 4,432 total FLSA Collective Action Members, of which 479 are FLSA Opt In Claimants. (Cutler Decl. ¶¶ 4, 12.)

### 3.    Composition of the PAGA Settlement Group

The proposed PAGA settlement group consists of all persons who were employed by Defendants in the State of California in non-exempt positions at any time during the period from March 8, 2021 through May 21, 2025. (Settlement Agreement ¶ 25.) There are 716 PAGA Members. (Culter Decl. ¶ 13.)

### 4.    Settlement Consideration

Plaintiff and Defendants have agreed to settle the underlying class claims in exchange for the Gross Settlement Amount of $1,622,000:

| Gross Settlement Amount | $1,622,000.00 |
|---|---|
| FLSA Settlement Fund | -$250,000.00 |
| PAGA Settlement Amount ($150,000 to LWDA / $50,000 to PAGA Members) | -$200,000.00 |
| Attorneys' Fees | -$300,000.00 |
| Litigation Costs | -$27,813.74 |
| Settlement Administration Costs | -$32,500.00 |
| Class Representative Enhancement Payment | -$10,000.00 |
| **Net Settlement Fund** | **$801,686.26** |

The FLSA Settlement Fund, PAGA Settlement Amount, and Net Settlement Fund will be allocated to FLSA Opt In Claimants, PAGA Members, and Class Members in proportion to Workweeks worked during the applicable FLSA Period, PAGA Period, and Class Period. The average estimated payments are as follows:

| Fund | Amount | Number of Employees | Average Payment |
|---|---|---|---|
| Net Settlement Fund | $801,686.26 | 1,049 Participating Class Members | $764.24 |
| FLSA Settlement Fund | $250,000.00 | 479 FLSA Opt In Claimants | $521.92 |
| PAGA Settlement Amount | $50,000.00 | 716 PAGA Members | $69.83 |

1   (Settlement Agreement ¶¶ 43-47.)

2       **5.    Releases by Class Members, FLSA Opt In Claimants, and PAGA**

3           **Members**

4       In exchange for the Gross Settlement Amount, Plaintiff and Participating Class Members will

5   agree to release the Released Class Claims during the Class Period:

6           Any and all claims, rights, demands, liabilities, and causes of action, that were
            asserted or could have been asserted in the operative complaint or that otherwise
7           reasonably arise from, or are reasonably related to, the same or substantially
            similar set of operative facts as those set forth in the operative complaint during
8           the Class Period, including but not limited to: (1) California Labor Code sections
            510 and 1198 (unpaid overtime); (2) California Labor Code sections 1182.12,
9           1194, 1197, 1197.1, and 1198 (unpaid minimum wages); (3) California Labor
            Code sections 226.7, 512(a), 516, and 1198 (failure to provide meal periods); (4)
10          California Labor Code sections 226.7, 516, and 1198 (failure to authorize and
            permit rest periods); (5) California Labor Code sections 226(a), 1174(d), and 1198
11          (non-compliant wage statements and failure to maintain payroll records); (6)
            California Labor Code sections 201 and 202 (wages not timely paid upon
12          termination); (7) California Labor Code section 204 (failure to timely pay wages
            during employment); (8) California Labor Code section 1198 and California Code
13          of Regulations Title 8, section 11160 Subdivision 5(B) (failure to provide
            reporting time pay); (9) California Labor Code section 2802 (unreimbursed
14          business expenses); (10) California Business & Professions Code sections 17200,
            *et seq.* (unlawful business practices); and (11) California Business & Professions
15          Code sections 17200, *et seq.* (unfair business practices) (including, without
            limitation, any claims relating to Plaintiff's alleged regular rate of pay allegations
16          and reporting time pay allegations including to the extent applicable to any or all
            of the above causes of action).

17

18   (Settlement Agreement ¶¶ 33, 66.)

19       In exchange for the FLSA Settlement Fund, Plaintiff and FLSA Opt In Claimants will agree to

20   release the Released FLSA Claims during the FLSA Period:

21          Any and all claims, rights, demands, liabilities, and causes of action arising under
            the Fair Labor Standards Act, both known and unknown, that were asserted or
22          could reasonably have been asserted in the Action or that otherwise reasonably
            arise from, or are reasonably related to, the facts alleged or substantially similar set
23          of operative facts, including, but not limited to, any claim for failure to pay
            overtime wages, minimum wages, unpaid wages, and failure to pay overtime
24          wages at the regular rate of pay during the FLSA Period.

25   (Settlement Agreement ¶¶ 34, 68.)

26       In exchange for the PAGA Settlement Amount, Plaintiff and PAGA Members will agree to

27   release the Released PAGA Claims during the PAGA Period:

28          Any and all claims for civil penalties under California Labor Code §§ 2698, *et*

*seq.*, that were asserted or could reasonably have been asserted in Plaintiff's LWDA letter or in the operative complaint or that otherwise reasonably arise from, or are reasonably related to, the same or substantially similar set of operative facts as those set forth in Plaintiff's LWDA letter or operative complaint, during the PAGA Period, including but not limited to claims for violation of: (1) California Labor Code sections 510 and 1198 (unpaid overtime); (2) California Labor Code sections 1182.12, 1194, 1197, 1197.1, and 1198 (unpaid minimum wages); (3) California Labor Code sections 226.7, 512(a), 516, and 1198 (failure to provide meal periods); (4) California Labor Code sections 226.7, 516, and 1198 (failure to authorize and permit rest periods); (5) California Labor Code sections 226(a), 1174(d), and 1198 (non-compliant wage statements and failure to maintain payroll records); (6) California Labor Code sections 201 and 202 (wages not timely paid upon termination); (7) California Labor Code section 204 (failure to timely pay wages during employment); (8) California Labor Code section 1198 and California Labor Code of Regulations Title 8, section 11160 Subdivision 5(B) (failure to provide reporting time pay); (9) California Labor Code section 2802 (unreimbursed business expenses); and (10) California Labor Code sections 2698, *et seq.* based on the foregoing. Nothing in this provision releases any claims that cannot be released as a matter of law, but this paragraph will be given the broadest possible interpretation allowable by law.

(Settlement Agreement ¶¶ 35, 67.)

## IV.    THE NOTICE AND SETTLEMENT ADMINISTRATION PROCESSES WERE COMPLETED PURSUANT TO THE COURT'S ORDER

As authorized by the Court's Order preliminarily approving the Settlement Agreement, the Parties engaged CPT to provide settlement administration services. (Cutler Decl. ¶ 2.) CPT's duties have, and if the Court enters the final approval order, will include: (a) printing and mailing the Class Notice to all Class Members and FLSA Notices to all FLSA Collective Action Members; (b) calculating and distributing the Individual Settlement Payments to Participating Class Members, FLSA Opt-In Members, and PAGA Members; (c) tax reporting; (d) providing necessary reports and declarations; and (e) performing such other tasks as set forth in the Settlement Agreement or as the Parties mutually agree or that the Court orders. (*Id.*)

On May 30, 2025, CPT received from Class Counsel the Class Notice and FLSA Notice (including the Opt-In Form) prepared by the Parties and approved by the Court. (Cutler Decl. ¶ 3.) On June 20, 2025, counsel for Defendants provided CPT with a complete mailing list ("Class List") which included each Class Member's/FLSA Collective Action Member's/PAGA Member's full name, most recent mailing addresses, Social Security Numbers, and other relevant information needed to calculate settlement payments. (*Id.*)

The mailing addresses contained in the Class List were processed and updated using the National Change of Address Database maintained by the U.S. Postal Service. (*Id.* at ¶ 4.) On June 30, 2025, Class Notices were mailed to 1,053 Class Members identified in the Class List by First Class mail. (*Id.*) Also on June 30, 2025, FLSA Notices were mailed to 4,432 FLSA Collective Action Members identified in the Class List by First Class mail. (*Id.*)

Class Members were given 45 days to opt out or object to the Settlement. Plaintiff can now report that only 4 individuals opted out of the Settlement Class, and no Class Members objected to the Settlement. (*Id.* at ¶¶ 7, 9.)

FLSA Collective Action Members were given 45 days to opt in to the FLSA settlement. Plaintiff can now report that there are 479 FLSA Opt In Claimants. (*Id.* at ¶ 8.)

## V.    ARGUMENT

### A.    The Court Should Grant Final Approval of the Class Settlement

Upon final approval, the Court's duty is to determine whether the proposed Settlement is "fundamentally fair, adequate, and reasonable." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998). In evaluating the Settlement, the Court is guided by several important policies. First, federal courts favor settlements, particularly in class actions, where the costs, delays and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain. *See Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992) (noting the "strong policy that favors settlements, particularly where complex class action litigation is concerned"). Second, for settlements reached through arms'-length negotiations, courts are to give:

> [P]roper deference to the private consensual decision of the parties. . . . [T]he court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned.

*Hanlon*, 150 F.3d at 1027.

Guided by these policies, the district court then may consider some or all of the following factors in evaluating the reasonableness of a settlement: (1) the strength of the plaintiff's case and the risk, expense, complexity, and likely duration of further litigation; (2) the risk of maintaining class action

1    status throughout trial; (3) the amount offered in settlement; (4) the extent of discovery completed and

2    the stage of proceedings; (5) the participation of a governmental participant; (6) the experience and views

3    of counsel; and (7) the reaction of class members. *See Hanlon*, 150 F.3d at 1026 ("*Hanlon* factors").

4         The amendments to Rule 23 direct the Court to consider a similar list of factors, including

5    whether: (1) the class representatives and class counsel have adequately represented the class; (2) the

6    proposal was negotiated at arm's length; (3) the relief provided for the class is adequate, taking into

7    account: (a) the costs, risks, and delay of trial and appeal; (b) the effectiveness of any proposed method

8    of distributing relief to the class, including the method of processing class-member claims; (c) the terms

9    of any proposed award of attorney's fees, including timing of payment; and (d) any agreement required

10   to be identified under Rule 23(e)(3); and (4) the proposal treats class members equitably relative to each

11   other. FED. R. CIV. P. 23(e)(2). The Advisory Committee's notes clarify that this list of factors does not

12   "displace" the *Hanlon* factors, "but instead aim to focus the court and attorneys on 'the core concerns of

13   procedure and substance that should guide the decision whether to approve the proposal.'" *In re Extreme

14   Networks, Inc. Sec. Litig.*, No. 15-04883, 2019 WL 3290770, at *6 (N.D. Cal. July 22, 2019) (quoting

15   FED. R. CIV. P. 23(e)(2) advisory committee's note to 2018 amendment).

16        Additionally, for class action settlements prior to contested certification, the Ninth Circuit further

17   requires that the Court scrutinize the settlement even more closely, applying the so-called *Bluetooth*

18   factors. *See In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 938 (9th Cir. 2011), *Allen v.

19   Bedolla*, 787 F.3d 1218, 1224 (9th Cir. 2015). As set forth below, the Settlement satisfies all of these

20   factors, meriting final approval.

21                    **1.    Class Certification Requirements Are Met**

22        The Court certified the Settlement Class for settlement purposes upon Preliminary Approval,

23   finding that requirements under Rule 23(a) and Rule 23(b)(2) were satisfied. (*See* Dkt. No. 81.) Nothing

24   has changed that would affect the Court's ruling on class certification. *See Chambers v. Whirlpool Corp.*,

25   214 F. Supp. 3d 877 (C.D. Cal. 2016) (reconfirming the certification set forth in the preliminary approval

26   order "[b]ecause the circumstances have not changed" since that order); *In re Hyundai & Kia Fuel Econ.

27   Litig.*, 926 F.3d 539, 556 (9th Cir. 2019) (en banc) (courts must apply the criteria for class certification

28   "differently in litigation classes and settlement classes"). Therefore, the Court should grant final

1    certification of the Settlement Class.

2       **2.**  **The Settlement Was Negotiated at Arm's Length by Experienced Counsel**

3      The Settlement is the result of the Parties' arm's-length negotiations by experienced attorneys.

4    Plaintiff is represented by Capstone Law APC. Plaintiff's Counsel employ seasoned class action

5    attorneys who regularly litigate wage and hour claims through certification and on the merits, and have

6    considerable experience settling wage and hour class actions. (Perez Decl. ¶¶ 66-74, Ex. 1.) Defendants

7    are represented by Duane Morris LLP, an experienced defense firm.

8       **3.**  **The Extent of Discovery Completed Supports Final Approval**

9      As set forth in greater detail in the Perez Decl., based on their analysis of documents and

10   employee data produced by Defendants, including Defendants' labor policies and procedures manuals,

11   employee demographic data, and employees' time and wage records, Plaintiff's Counsel were able to

12   realistically assess the value of Plaintiff's claims and intelligently engage defense counsel in settlement

13   discussions that culminated in the proposed settlement now before the Court. (Perez Decl.¶¶ 7-11.)

14     By engaging in a thorough investigation and evaluation of Plaintiff's claims, Plaintiff's Counsel

15   can opine that the Settlement, for the consideration and on the terms set forth in the Settlement

16   Agreement, is fair, reasonable, and adequate, and is in the best interests of Class Members, FLSA

17   Collective Action Members, and PAGA Members in light of all known facts and circumstances,

18   including the risk of significant delay and uncertainty associated with litigation, various defenses asserted

19   by Defendants. (Perez Decl. ¶ 12.)

20      **4.**  **The Settlement Is Within the Range of Reasonableness Considering the**

21         **Strength of Plaintiff's Case and the Risk, Expense, Complexity, and**

22         **Duration of Further Litigation**

23     As discussed in detail in Plaintiff's Counsel's declaration in support of this Motion, an objective

24   evaluation of the Settlement confirms that the relief negotiated on the Class's behalf—a $1,622,000 non-

25   reversionary total Gross Settlement Amount—is fair, reasonable, and valuable. (Perez Decl. ¶¶ 13-49.)

26   The Settlement was negotiated by the Parties at arm's length with helpful guidance from Louis Marlin,

27   Esq., and the Settlement confers substantial benefits to Class Members. The relief offered by the

28   Settlement is particularly impressive when viewed against the difficulties encountered by plaintiffs

1    pursuing wage and hour cases.

2           In determining whether a settlement agreement is fair, adequate, and reasonable to all concerned,

3    the Court may consider the strength of the plaintiff's case and the amount offered in settlement, among

4    other factors. *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998). Ultimately, "the

5    district court's determination is nothing more than an amalgam of delicate balancing, gross

6    approximations, and rough justice," and there is no single "formula" to be applied; rather, the Court may

7    presume that the parties' counsel and the mediator arrived at a reasonable range of settlement by

8    considering Plaintiff's likelihood of recovery. *Officers for Justice v. Civil Serv Comm'n*, 688 F.2d 615,

9    625 (9th Cir. 1982); *Rodriguez v. West Pub. Corp.*, 563 F.3d 948, 965 (9th Cir. 2009).

10          Understandably, for purposes of evaluating the settlement's reasonable, this estimate must be

11   "tempered by factors such as the risk of losing at trial, the expense of litigating the case, and the expected

12   delay in recovery (often measured in years)." *In re Toys R Us-Delaware, Inc.-- Fair & Accurate Credit

13   Transactions Act (FACTA) Litig.*, 295 F.R.D. 438, 453 (C.D. Cal. 2014). Ultimately, Plaintiff's Counsel

14   determined an appropriate range of recovery for settlement purposes by offsetting Defendants'

15   maximum theoretical liability by: (a) the strength of the defenses to the merits of Plaintiff's claims; (b)

16   the risk of class certification being denied; (d) the risk of losing on any of a number of dispositive

17   motions that could have been brought between certification and trial (e.g., motions to decertify the class,

18   motions for summary judgment, and/or motions in limine) that might have eliminated all or some of

19   Plaintiff's claims, or barred evidence/testimony in support of the claims; (d) the risk of losing at trial; (e)

20   the chances of a favorable verdict being reversed on appeal; and (f) the difficulties attendant to collecting

21   on a judgment (collectively, the "Class Discount Factors").

22          After offsetting Defendants' maximum potential exposure for the class claims by the Class

23   Discount Factors, and after cconsidering the weight of the evidence, the clarity of the applicable law, and

24   the strength of the factual and legal defenses likely to be asserted by the Defendants at trial and the

25   availability of good faith defenses (*see* Perez Decl. ¶¶ 24-44), Plaintiff determined that a more realistic

26   estimate of the total amount of damages and penalties that he would likely recover at trial for the class

27   claims was approximately $1,158,271.78. (Perez Decl. ¶ 47.) By this measure, the $801,686.26 Net

28   Settlement Fund amounts to approximately 70% of Defendants' realistic estimated exposure at trial for

the class claims, which is well within the range of reasonableness.[3]

### 5.    The Settlement Class Has Responded Positively to the Settlement

In evaluating the fairness of a Settlement, the "absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *Nat'l Rural Telecomm. Coop. v. Directv, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004). Here, only 4 individuals opted out of the Settlement Class (less than 0.4% of the entire Settlement Class), and no Class Members have objected to the Settlement to date. (Cutler Decl. ¶¶ 7, 9.) The Class's response is "overwhelmingly positive," supporting approval of the Settlement. *See 7-Eleven Owners for Fair Franchising*, 85 Cal. App. 4th at 1152-53 (finding support for the settlement where 80 out of 5,454 class members elected to opt out and nine class members objected); *Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 852 (N.D. Cal. 2010) (finding 0 objections and 16 opt-outs out of 329 class members [4.86%] "strongly support[] settlement"); *Garner v. State Farm Mut. Auto. Ins. Co.*, No. CV 08 1365 CW EMC, 2010 WL 1687832, at *15 (N.D. Cal. Apr. 22, 2010) (finding an opt-out rate of 0.4% supported settlement). In other words, "[t]he fact that the overwhelming majority of the class willingly approved the offer and stayed in the class presents at least some objective positive commentary as to its fairness." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998).

The average settlement payment from the Net Settlement Fund is $764.24 and the highest is $5,412.35. (Cutler Decl. ¶ 11.) This average net recovery is significantly higher than many wage and hour class action settlements approved by California state and federal courts. *See, e.g., Sandoval v. Nissho of Cal., Inc.*, Case No. 37-2009-00091861 (San Diego County Super. Ct. Dec. 7, 2010) (average net recovery of approximately $145); *Fukuchi v. Pizza Hut*, Case No. BC302589 (L.A. County Super.

---

[3] *See, e.g., Dixon v. Cushman*, 18-cv-05813-JSC, 2022 WL 1189883, at *7 (N.D. Cal. Apr. 21, 2022) (finding settlement fund that was an estimated 8% of the total maximum recovery fair in relation to the risks of continued litigation); *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1042 (N.D. Cal. 2008) (approving a settlement amount in the range of 6%-9% of the total possible damages); *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 256 (N.D. Cal. 2015) (approving a settlement where the gross recovery to the class was approximately 8.5% of the maximum recovery amount); *Stovall-Gusman v. W.W. Granger, Inc.*, No. 13-cv-02540-HSG, 2015 WL 3776765, at *4–5 (N.D. Cal. June 17, 2015) (approving a final settlement representing 7.3% of the plaintiffs' estimated trial award in wage-and-hour class action); *Balderas v. Massage Envy Franchising, LLC*, No. 12-cv-06327-NC, 2014 WL 3610945, at *5 (N.D. Cal. July 21, 2014) (granting preliminary approval of gross settlement representing 8% of the maximum recovery and net settlement representing 5% of the maximum recovery).

1  Ct. Sept. 29, 2006) (average net recovery of approximately $120); *Contreras v. United Food Group,*

2  *LLC*, Case No. BC389253 (L.A. County Super. Ct. Sept. 10, 2009) (average net recovery of

3  approximately $120); *Ressler v. Federated Department Stores, Inc.*, Case No. BC335018 (L.A. County

4  Super. Ct. Jan. 27, 2009) (average net recovery of approximately $90); *Doty v. Costco Wholesale Corp.*,

5  Case No. CV05-3241 FMC-JWJx (C.D. Cal. May 14, 2007) (average net recovery of approximately

6  $65).

7  ## B.    The Court Should Grant Final Approval of the FLSA Settlement

8  Similar to the requirement that courts approve class action settlements, when an employee brings

9  a private action for wages under the FLSA, 29 U.S.C. § 216(b), the parties must present any proposed

10  settlement to the Court for approval. *Lynn's Food Stores, Inc. v. U.S.*, 679 F.2d 1350, 1353 (11th Cir.

11  1982). If the settlement is a "fair and reasonable resolution of a bona fide dispute over FLSA provisions,"

12  a stipulated judgment is appropriate. *Id.* at 1355. Settlements of FLSA claims are permissible because

13  initiation of the action "provides some assurance of an adversarial context." *Id.* at 1354. In such

14  instances, the employees are likely to be represented by an attorney who can protect their rights, and

15  thus, "the settlement is more likely to reflect a reasonable compromise of disputed issues than a mere

16  waiver of statutory rights brought about by an employer's overreaching." *Id.* If the settlement reflects a

17  reasonable compromise over issues that are actually in dispute, approval is permissible. *Id.*

18  Plaintiff calculated a maximum total exposure based on information provided by Defendants.

19  The maximum total exposure if <u>all</u> FLSA Collective Action Members affirmatively opted into the

20  collective action is $6,062,506.43. This is based on approximately 385,533 workweeks during the FLSA

21  Period, with an estimated half hour of unpaid overtime per week and the $31.45 national average

22  overtime rate. (Perez Decl. ¶¶ 58-60.)

23  Additionally, the FLSA allows successful plaintiffs to recover liquidated damages in the amount

24  of their unpaid overtime pay, doubling their recovery. 29 U.S.C. § 216(b). "[C]ourts retain discretion to

25  withhold a liquidated damages award, or to award less than the statutory liquidated damages total, where

26  an employer shows that, 'despite the failure to pay appropriate wages, the employer acted in subjective

27  'good faith' and had objectively 'reasonable grounds' for believing that the acts or omissions giving rise

28  to the failure did not violate the FLSA.'" *Alvarez v. IBP, Inc.*, 339 F.3d 894, 909 (9th Cir. 2003) (quoting

1  *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132 (2d Cir. 1999). However, because this is a "difficult"

2  standard to meet, "'[d]ouble damages are the norm; single damages are the exception.'" *Haro v. City of*

3  *Los Angeles*, 745 F.3d 1249, 1259 (9th Cir. 2014) (quoting *Chao v. A-One Med. Servs., Inc.*, 346 F.3d

4  908, 920 (9th Cir. 2003)). Because Plaintiff's Counsel did not uncover any evidence that Defendants'

5  alleged violations of the California Labor Code or the FLSA were willful or intentional (Perez Decl. ¶

6  59), Plaintiff's Counsel concluded that it would be highly unlikely for the Court to award liquidated

7  damages, and accordingly did not factor liquidated damages into the calculation of the maximum

8  exposure. *Selk v. Pioneers Mem'l Healthcare Dist.*, 159 F. Supp. 3d 1164, 1174-75 (S.D. Cal. 2016)

9  (approving discount to liquidated damages because "discovery suggested a lack of bad intent on the part

10  of [defendant]").

11       The typical opt-in rate in FLSA collective actions is about 14% to 25%. *See e.g., Gutierrez-Bejar*

12  *v. SOS Int'l, LLC*, No. LACV1609000JAKJEMX, 2019 WL 5683901, at *9 (C.D. Cal. Nov. 1, 2019)

13  (nothing that a 14.2% opt-in rate for the FLSA action "is consistent with the typical opt-in rate for non-

14  union-backed FLSA actions.") (citation omitted); *Bautista v. Harvest Mgmt. Sub LLC*, No.

15  CV1210004FMOCWX, 2013 WL 12125768, at *15 (C.D. Cal. Oct. 16, 2013) ("assuming a 20% to

16  25% opt-in rate" when preliminary approving a FLSA collective action settlement). At a 14% opt-in rate,

17  Plaintiff would expect to recover approximately $848,750.90. By this reckoning, the $250,000 FLSA

18  settlement is within the range of approval. *See Chalmers v. DSSV, Inc.*, No. 22-CV-08863-HSG, 2024

19  WL 4844376, at *3 (N.D. Cal. Nov. 19, 2024) ("'[C]ourts in the Ninth Circuit have found FLSA cases

20  settling for approximately 25%–35% of the total possible recovery to be reasonable."); *Jones v. Agilysys,*

21  *Inc.*, 2014 WL 2090034 (N.D. Cal. May 19, 2014) (finding a FLSA settlement that constituted between

22  30% to 60% of recoverable damages to be a "tangible monetary benefit" for the class members).

23       Here, there are 479 FLSA Opt In Claimants, who stand to receive an average estimated payment

24  of $521.92 and a highest payment of $1,638.78. (Cutler Decl. ¶ 12.) For the reasons discussed above, the

25  Court should approve the FLSA settlement.

26       **C.    The Court Should Grant Final Approval of the PAGA Settlement**

27       Pursuant to the Settlement Agreement, $200,000 from the Gross Settlement Amount shall be

28  allocated to the resolution of the PAGA claim, of which 75% ($75,000) will be paid directly to the

1    LWDA, and the remaining 25% ($25,000) will be paid to Participating Class Members. (Settlement

2    Agreement ¶ 47.)

3        Plaintiff's Counsel determined that PAGA Members worked a combined total of approximately

4    14,417 pay periods (697 initial pay periods / 13,720 subsequent pay periods) during the PAGA statute of

5    limitations period ("PAGA Period"). (Perez Decl. ¶ 50.) Statutory penalties would be calculated

6    according to Labor Code 2699(f)(2)[4]: If, at the time of the alleged violation, the person employs one or

7    more employees, the civil penalty is one hundred dollars ($100) for each aggrieved employee per pay

8    period for the initial violation and two hundred dollars ($200) for each aggrieved employee per pay

9    period for each subsequent violation.

10        After calculating Defendants' maximum exposure under PAGA, Plaintiff then discounted that

11    exposure for settlement purposes to account for the risks of continued litigation, including: (a) the

12    strength of Defendants' defenses to the merits; (b) the risk of losing at trial; (c) the risk that the Court

13    would exercise its discretion under PAGA to significantly reduce the maximum civil penalties available

14    by statute;[5] (d) the chances of a favorable verdict being reversed on appeal; and (e) the difficulties

15    attendant to collecting on a judgment ("PAGA Discount Factors"). (Perez Decl. ¶¶ 50-57.)

16        Considering the PAGA Discount Factors, the weight of the evidence, the clarity of the applicable

17    law, and the strength of the factual and legal defenses likely to be asserted by the Defendants at trial and

18    the availability of good faith defenses, Plaintiff determined that a more realistic estimate of the total

19    amount of PAGA penalties that he would likely recover at trial was approximately $1.937 million.

20    (Perez Decl. ¶ 55.) A $200,000 PAGA settlement is accordingly well within the range of approval. *See*

21    *Merante v. Am. Inst. for Foreign Study, Inc.*, 2022 WL 2918896, at *6 (N.D. Cal. July 25, 2022) (PAGA

22    award of between 0.27% and 2% of the maximum estimated value of PAGA claims was "small" but

23    "within the range of reasonableness"); *Hamilton v. Juul Labs, Inc.*, No. 20-CV-03710-EMC, 2021 WL

24

25        [4] The PAGA statute was recently amended on July 1, 2024. Certain citations to the PAGA's
       provisions in this Motion relate to the pre-amendment version of the statute, which applies to this action
26     based on the pre-amendment filing date of the initial complaint and related administrative exhaustion
       letter.
27        [5] See Lab. Code § 2699(e) ("In any action by an aggrieved employee seeking recovery of a civil
       penalty available under subdivision (a) or (f), a court may award a lesser amount than the maximum civil
28     penalty amount specified by this part if, based on the facts and circumstances of the particular case, to do
       otherwise would result in an award that is unjust, arbitrary and oppressive, or confiscatory.").

1    5331451, at *10 (N.D. Cal. Nov. 16, 2021) (approving a PAGA penalty settlement of 2.2%); *Smith v.*

2    *Kaiser Found. Hosps.*, 2020 WL 5064282, at *17 (S.D. Cal. Aug. 26, 2020) (finding that PAGA award

3    that was 2.4% of maximum estimated value of PAGA claims was not "unfair, inadequate, or

4    unreasonable given the risks of continued litigation").

5         Where PAGA penalties are negotiated in good faith and "there is no indication that [the] amount

6    was the result of self-interest at the expense of other Class Members," such amounts are generally

7    considered reasonable. *Hopson v. Hanesbrands Inc.*, No. CV-08-0844 EDL, 2009 WL 928133, at *9

8    (N.D. Cal. Apr. 3, 2009); *see*, *e.g.*, *Nordstrom Com. Cases*, 186 Cal. App. 4th 576, 579 (2010) ("[T]rial

9    court did not abuse its discretion in approving a settlement which does not allocate any damages to the

10   PAGA claims.").

11        **D.      The Requested Payment to the Settlement Administrator Is Reasonable and**

12                **Should Receive Final Approval**

13        Plaintiff requests final approval of settlement administration costs in the amount of $32,500.

14   (Cutler Decl. ¶ 14.) CPT has promptly and properly distributed the Class Notice to all Class Members

15   and completed its duties in accordance with the settlement terms and the Court's preliminary approval

16   Order. (*See generally* Cutler Decl.) Accordingly, the $32,500 payment is fair and reasonable and should

17   be accorded final approval along with the rest of the Settlement terms.

18   **VI.    CONCLUSION**

19        The Parties have negotiated a fair Settlement of the wage and hour claims that likely would not

20   have been brought, let alone successfully resolved, but for the effort and resolve of the Plaintiff and his

21   counsel. The Class Members' positive response indicates that the Settlement is fair and reasonable.

22   Accordingly, Plaintiff respectfully requests that this Court grant final approval of the Settlement

23   Agreement and enter judgment.

24   Dated: August 29, 2025                    Respectfully submitted,

25                                   By:  /s/ Robert J. Drexler, Jr.
                                         Raul Perez
26                                       Robert J. Drexler, Jr.
                                         Jonathan Lee
27                                       **CAPSTONE LAW APC**

28                                       Attorney for Plaintiff Richard Rodriguez