1
2
3
4           UNITED STATES DISTRICT COURT
5          NORTHERN DISTRICT OF CALIFORNIA
6                 SAN JOSE DIVISION
7

8    RICHARD RODRIGUEZ,                    Case No.  22-cv-02071-VKD

                    Plaintiff,             **ORDER GRANTING MOTION FOR**
9                                          **FINAL APPROVAL OF SETTLEMENT**
10         v.                              **AND MOTION FOR ATTORNEYS'**
                                           **FEES, COSTS, AND A CLASS**
11   BELFOR USA GROUP, INC., et al.,       **REPRESENTATIVE ENHANCEMENT**
                                           **PAYMENT**
                    Defendants.
12                                         Re: Dkt. Nos. 82, 83
13

14         Plaintiff Richard Rodriguez asserts claims under the Fair Labor Standards Act, 29 U.S.C.

15   § 201, *et seq.* ("FLSA"), the California Private Attorneys' General Act, California Labor Code

16   § 2698, *et seq.* ("PAGA"), and other California state labor laws on behalf of himself and others

17   similarly situated against his former employers, defendants Belfor USA Group, Inc., Belfor

18   Environmental, Inc., Oakwood Construction and Restoration Services, Inc., and 1 800 Water

19   Damage North America, LLC (collectively "defendants").  *See* Dkt. No. 27.  On May 21, 2025,

20   the Court granted plaintiff's motion for preliminary approval of a class, collective, and

21   representative action settlement agreement.  Dkt. No. 81.  Now before the Court are plaintiff's

22   motion for final approval of the settlement (Dkt. No. 83), and class counsel's motion for attorneys'

23   fees, costs, and a class representative enhancement payment (Dkt. No. 82).  Defendants do not

24   oppose the motion.  The Court held a fairness hearing regarding final approval on October 7,

25   2025.  Dkt. No. 87.

26         Having considered the arguments of counsel and the papers submitted, the Court grants the

27   motion for final approval of the settlement agreement and the motion for attorneys' fees, costs,

28

*United States District Court*
*Northern District of California*

and class representative enhancement payment as set forth below.[1]

## I.    BACKGROUND

Defendants provide property recovery and restoration services for properties damaged by natural disasters, such as fires and floods, on a nationwide basis. Dkt. No. 27 ¶ 21. The four named corporate defendants are wholly owned by the same parent corporation, share corporate officers, and operate out of a single headquarters in Birmingham, Michigan. Dkt. No. 4; Dkt. No. 27 ¶¶ 20-21. Mr. Rodriguez was employed by defendants as a non-exempt "Water Damage Specialist – Laborer" from approximately March of 2020 to December of 2021. Dkt. No. 27 ¶ 5.

Mr. Rodriguez claims that during his employment, defendants violated the FLSA and California labor law by, among other things: (1) requiring unpaid overtime work; (2) failing to provide timely meal periods during the workday; (3) failing to provide paid rest periods during the workday; (4) requiring the use of personal cell phones for business purposes; and (5) requiring workers to report for scheduled shifts, but sending them home unpaid if no work was available. *See id.* ¶¶ 68-163. In the operative complaint, Mr. Rodriguez asserts claims for: (1) violations of the FLSA (unpaid overtime and minimum wages, meal and rest period violations, failure to keep accurate records of all hours worked); (2) violations of California Labor Code §§ 510 and 1198 (unpaid overtime); (3) violations of California Labor Code §§ 1182.12, 1194, 1197, 1197.1, and 1198 (unpaid minimum wages); (4) violations of California Labor Code §§ 226.7, 512(a), 516, and 1198 (meal period violations); (5) violations of California Labor Code §§ 226.7, 516, and 1198 (rest period violations); (6) violations of California Labor Code §§ 226(a), 1174(d), and 1198 (non-compliant wage statements and failure to maintain accurate payroll records); (7) violations of California Labor Code §§ 201 and 202 (wages not timely paid upon termination); (8) violations of California Labor Code § 204 (failure to timely pay wages during employment); (9) violations of California Labor Code § 1198 and California Code of Regulations Title 8, § 1160 Subdivision 5(B) (failure to provide reporting time pay); (10) violations of California Labor Code

United States District Court
Northern District of California

---

[1] All parties have expressly consented that all proceedings in this matter may be heard and finally adjudicated by a magistrate judge. Dkt. Nos. 7, 8; 28 U.S.C. § 636(c); Fed. R. Civ. P. 73. As discussed below, this includes the FLSA collective members who have opted in to the FLSA settlement.

§ 2802 (unpaid business-related expenses); (11) civil penalties pursuant California Labor Code § 2698, *et seq.* (PAGA); (12) violations of California Business & Professions Code § 17200, *et seq.* (unlawful business practices); and (13) violations of California Business & Professions Code § 17200, *et seq.* (unfair business practices). *Id.* ¶¶ 68-210.

The Court initially denied plaintiff's motion for preliminary approval of the settlement, citing several concerns. Dkt. No. 48. After the parties engaged in further settlement negotiations and agreed on various amendments to address the Court's concerns, the Court granted plaintiff's motion for preliminary approval of the amended settlement on May 21, 2025. Dkt. No. 81. The terms of the amended settlement agreement are memorialized in the parties' Amended Joint Stipulation of Class, Collective, and PAGA Action Settlement and Release. Dkt. No. 75-2 ¶ 6, Ex. 1.

The amended settlement agreement encompasses claims relating to three categories of employees. First, the settlement defines a "settlement class" consisting of "all persons who were employed by defendants in the State of California in non-exempt positions at any time during the period from February 25, 2018 through May 21, 2025." Dkt. No. 83 at 4; Dkt. No. 75-2 at ECF 31 (¶ 5). The Court refers to this as the "California class" in this order. There are 1,049 participating members in the California class. Dkt. No. 83 at 4. Second, the settlement identifies an FLSA collective consisting of "all persons who were employed by Defendants in the United States of America in non-exempt positions at any time during the period from February 25, 2019 through May 21, 2025." *Id.* at 5; Dkt. No. 75-2 at ECF 32 (¶ 14). There are 4,432 members in the FLSA collective, of whom 488 have opted in to the FLSA settlement.[2] Dkt. No. 83 at 5. Third, the settlement includes a PAGA settlement amount for members consisting of "all persons who were employed by Defendants in the State of California in non-exempt positions at any time during the period from March 8, 2021 through May 21, 2025." *Id.* at 5; Dkt. No. 75-2 at ECF 34 (¶ 25). There are 716 PAGA members, all of whom are—by definition—also members of the California

United States District Court
Northern District of California

---

[2] Mr. Rodriguez originally reported that 479 FLSA collective members had opted in to the FLSA settlement. Dkt. No. 83-2 ¶ 7-8. At the final approval hearing, class counsel reported that they received and approved additional FLSA collective members' opt in forms after the filing of the motion for final approval, bringing the total to 488 FLSA.

1    class.  *See* Dkt. No. 83 at 5.

2    In sum, the parties have agreed to a non-reversionary settlement for a release of claims in

3    return for a gross settlement amount of $1,622,000 to be distributed amongst the members of the

4    three employee categories, their attorneys, the settlement administrator, and Mr. Rodriguez.  *Id.* at

5    2.

6    ### 1.    California Class

7    The largest share of the monetary relief, referred to as the "net settlement fund," will be

8    distributed to the members of the California class.  *Id.* at 2, 5.  It is defined as "the portion of the

9    Gross Settlement Amount remaining after deducting the Attorneys' Fees and Costs, Class

10   Representative Enhancement Payment, PAGA Settlement Amount, FLSA Settlement Fund, and

11   Settlement Administration Costs."  Dkt. No. 75-2 at ECF 33-34 (¶ 23).  The value of the net

12   settlement fund is $801,686.26.  Dkt. No. 83 at 5.  This amount will be distributed to the members

13   of the California class who do not affirmatively opt out of the settlement agreement, in proportion

14   to the number of weeks each member worked for defendants during the class period.  *Id.* at 2.  The

15   settlement provides that when members of the California class opt out, the remaining members'

16   distributions are proportionally increased, so that 100% of the net settlement fund would be

17   distributed to the California class.  *See* Dkt. No. 75-2 at ECF 33-34 (¶ 23).  The settlement

18   administrator will deduct any applicable employee-side payroll taxes from the class members'

19   payments and ensure they are paid to the appropriate authorities.  *Id.* at ECF 48-49 (¶ 75).

20   Additionally, if any class members' settlement checks remain uncashed 180 days after being

21   issued, the remaining funds will be donated to Worksafe, a workplace safety non-profit

22   organization.  *Id.* at ECF 48 (¶ 72); *see also* https://worksafe.org/.

23   In return for this relief, California class members who do not opt out will release

24   defendants from "any and all claims, rights, demands, liabilities, and causes of action, that were

25   asserted or could have been asserted in the operative complaint or that otherwise reasonably arise

26   from, or are reasonably related to, the same or substantially similar set of operative facts as those

27   set forth in the operative complaint during the Class Period, including but not limited to: (1)

28   California Labor Code sections 510 and 1198 (unpaid overtime); 2) California Labor Code

United States District Court
Northern District of California

4

sections 1182.12, 1194, 1197, 1197.1, and 1198 (unpaid minimum wages); (3) California Labor Code sections 226.7, 512(a), 516, and 1198 (failure to provide meal periods); (4) California Labor Code sections 226.7, 516, and 1198 (failure to authorize and permit rest periods); (5) California Labor Code sections 226(a), 1174(d), and 1198 (non-compliant wage statements and failure to maintain payroll records); (6) California Labor Code sections 201 and 202 (wages not timely paid upon termination); (7) California Labor Code section 204 (failure to timely pay wages during employment); (8) California Labor Code section 1198 and California Code of Regulations Title 8, section 11160 Subdivision 5(B) (failure to provide reporting time pay); (9) California Labor Code section 2802 (unreimbursed business expenses); (10) California Business & Professions Code sections 17200, *et seq.* (unlawful business practices); and (11) California Business & Professions Code sections 17200, *et seq.* (unfair business practices) (including, without limitation, any claims relating to Plaintiff's alleged regular rate of pay allegations and reporting time pay allegations including to the extent applicable to any or all of the above causes of action)." *Id.* at ECF 35-36 (¶ 33).

### 2.    FLSA Collective Action

The settlement agreement also creates an "FLSA settlement fund" of $250,000 that will be distributed to members of the FLSA collective who affirmatively opt in to the settlement. Dkt. No. 83 at 2; Dkt. No. 75-2 at ECF 32-33 (¶¶ 14, 16, 19). As with the net settlement fund for the California class, the FLSA settlement fund will be distributed among the participating members in proportion to the number of weeks they worked during the class period, so that 100% of the FLSA settlement fund will be distributed. Dkt. No. 75-2 at ECF 42 (¶ 52(c)).

In return for this relief, the members of the FLSA collective who participate in the settlement will release defendants from "any and all claims, rights, demands, liabilities, and causes of action arising under the Fair Labor Standards Act, both known and unknown, that were asserted or could reasonably have been asserted in the Action or that otherwise reasonably arise from, or are reasonably related to, the facts alleged or substantially similar set of operative facts, including, but not limited to, any claim for failure to pay overtime wages, minimum wages, unpaid wages, . . . at the regular rate of pay during the FLSA Period." *Id.* at ECF 36 (¶ 34). If any FLSA collective

members' settlement checks remain uncashed 180 days after being issued, the remaining funds will be donated to Worksafe.  *Id.* at ECF 48 (¶ 72).

### 3. PAGA Settlement

The settlement agreement provides for $200,000 to be allocated to a settlement of the PAGA claims.  *Id.* at ECF 34-35 (¶ 27).  Of that amount, 75% or $150,000 will be paid to the California Labor and Workforce and Development Agency ("LWDA").  *Id.*  The remaining 25% or $50,000 will be distributed to the PAGA members in proportion to the number of weeks each member worked during the PAGA period.  *Id.* at ECF 34-35, 41-42 (¶¶ 27, 52(b)).  However, unlike the California class, PAGA members are not permitted to exclude themselves from this part of the settlement or object to it.  *Id.* at ECF 40 (¶ 48).

Once approved, the PAGA settlement will release defendants from "any and all claims for civil penalties under California Labor Code [§] 2698, *et seq.*, that were asserted or could reasonably have been asserted in plaintiff's LWDA letter or in the operative complaint or that otherwise reasonably arise from, or are reasonably related to, the same or substantially similar set of operative facts as those set forth in plaintiff's LWDA letter or operative complaint, during the PAGA Period, including but not limited to claims for violation of: (1) California Labor Code sections 510 and 1198 (unpaid overtime); (2) California Labor Code sections 1182.12, 1194, 1197, 1197.1, and 1198 (unpaid minimum wages); (3) California Labor Code sections 226.7, 512(a), 516, and 1198 (failure to provide meal periods); (4) California Labor Code sections 226.7, 516, and 1198 (failure to authorize and permit rest periods); (5) California Labor Code sections 226(a), 1174(d), and 1198 (non-compliant wage statements and failure to maintain payroll records); (6) California Labor Code sections 201 and 202 (wages not timely paid upon termination); (7) California Labor Code section 204 (failure to timely pay wages during employment); (8) California Labor Code section 1198 and California Code of Regulations Title 8, section 11160 Subdivision 5(B) (failure to provide reporting time pay); (9) California Labor Code section 2802 (unreimbursed business expenses); and (10) California Labor Code sections 2698, *et seq.* based on the foregoing."  *Id.* at ECF 36 (¶ 35).  If any PAGA members' settlement checks remain uncashed 180 days after being issued, the remaining funds will be donated to Worksafe.  *Id.* at ECF 48

(¶ 72).

### 4.    Attorneys' Fees, Settlement Administration, and Class Representative Payment

In addition to the payments associated with the three employee categories described above, the settlement agreement provides for payment to class counsel, the settlement administrator, and Mr. Rodriguez. The agreement allows Capstone Law APC, the law firm that represents Mr. Rodriguez in this action and that the Court appointed as class counsel (Dkt. No. 81 at 21), to move for an award of attorneys' fees not in excess of $300,000 or 18.5% of the gross settlement amount. Dkt. No. 75-2 at ECF 30 (¶ 2). The agreement provides that counsel may also seek to recover costs of up to $30,000. *Id.*

Additionally, the settlement agreement provides for payment of an estimated $32,500 in settlement administration costs to the settlement administrator. *Id.* at ECF 37 (¶ 39). The Court appointed CPT Group, Inc. ("CPT") as the settlement administrator. Dkt. No. 81 at 21.

Finally, the settlement agreement allows for Mr. Rodriguez to apply to the Court for a class representative enhancement payment of $10,000, in addition to the amount he will otherwise receive as a member of the California class, the FLSA collective, and the PAGA settlement. Dkt. No. 75-2 at ECF 39 (¶ 45).

### 5.    Notice to Members

In its preliminary approval order, the Court approved, as to form and content, the Notice of Class Action Settlement and the FLSA Notice, and directed the mailing of the notices to California class members and FLSA collective action members. Dkt. No. 81 at 21.

Of the 1,053 Notices of Class Action Settlement sent by mail, 11 notices were returned as undeliverable, with no forwarding address and for which CPT was not able to obtain updated address information. Dkt. No. 83-2 ¶¶ 4-5. Of the 4,432 FLSA Notices sent by mail, 45 notices were returned as undeliverable, with no forwarding address and for which CPT was not able to obtain updated address information. *Id.* ¶¶ 4, 6. California class members were given 45 days to opt out or object to the settlement, and FLSA collective action members were given 45 days to opt in to the settlement. Dkt. No. 83 at 8. Mr. Rodriguez and CPT report that four individuals opted

out of the California class, and 488 FLSA collective members opted in to the FLSA settlement. *Id.*; *see supra* note 2. Mr. Rodriguez and CPT further report that they received no objections to the settlement. Dkt. No. 83 at 8; Dkt. No. 83-2 ¶ 9. CPT received one workweek dispute which CPT and defendants agreed should be approved. Dkt. No. 83-2 ¶ 10. The Court received no objections, and no one appeared at the October 7, 2025 final fairness hearing to state any objection to the proposed settlement.

## II.    LEGAL STANDARD

### A.    Rule 23 Class Action Settlements

Court approval is required for the settlement of Rule 23 class actions. *See* Fed. R. Civ. P. 23(e) ("The claims, issues, or defenses of a certified class—or a class proposed to be certified for purposes of settlement—may be settled, voluntarily dismissed, or compromised only with the court's approval."). The Ninth Circuit has declared that a strong judicial policy favors settlement of Rule 23 class actions. *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). However, no presumption of fairness applies to such settlements. *Roes, 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1049 (9th Cir. 2019). And where the parties reach a settlement before class certification, courts must "employ[] extra caution and more rigorous scrutiny," *id.*, and "peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement," *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003); *see also In re Bluetooth Headset Prods. Liability Litig.*, 654 F.3d 935, 946 (9th Cir. 2011) ("Prior to formal class certification, there is an even greater potential for a breach of fiduciary duty owed the class during settlement. Accordingly, such agreements must withstand an even higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e) before securing the court's approval as fair.").

In considering Mr. Rodriguez's motion for final approval, the Court must first assess whether a class exists. *Staton*, 327 F.3d at 952. Second, the Court must assess whether the proposed settlement is "fundamentally fair, adequate, and reasonable," considering "the settlement taken as a whole, rather than the individual component parts, that must be examined." *Id.* (cleaned up).

### B.     FLSA Collective Action Settlements

Court approval is also required for settlements of private collective actions under the FLSA.  *Johnson v. Serenity Transp., Inc.*, No. 15-cv-02004-JSC, 2020 WL 7260059, at *2 (N.D. Cal. Dec. 10, 2020); *see also Nall v. Mal-Motels, Inc.*, 723 F.3d 1304, 1306 (11th Cir. 2013). Although "[c]ollective actions [under the FLSA] and class actions [under Rule 23] are creatures of distinct texts . . . that impose distinct requirements," *Campbell v. City of Los Angeles*, 903 F.3d 1090, 1101 (9th Cir. 2018), district courts assess FLSA settlements using a two-step process that is similar to what is required for review of class action settlements under Rule 23.  *See Kulik v. NMCI Med. Clinic Inc.*, No. 21-cv-03495-BLF, 2023 WL 2503539, at *3 (N.D. Cal. Mar. 13, 2023).

First, the Court must assess whether the members of proposed collective are "similarly situated" and may proceed in a collective action.  *Id.*; *see also Campbell*, 903 F.3d at 1117. Second, the Court must assess whether the proposed settlement is "a fair and reasonable resolution of a bona fide dispute."  *Otey v. CrowdFlower, Inc.*, No. 12-cv-05524-JST, 2014 WL 1477630, at *3 (N.D. Cal. Apr. 15, 2014) (quoting *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1355 (11th Cir. 1982)).

### C.     PAGA Settlements

Court approval is likewise required for settlements of PAGA claims.  Cal. Lab. Code § 2699(s)(2) (2024).  The proposed settlement must also be submitted simultaneously to LWDA.  *Id.* "An employee bringing a PAGA action does so as the proxy or agent of the state's labor law enforcement agencies, . . . who are the real parties in interest."  *Sakkab v. Luxottica Retail N. Am., Inc.*, 803 F.3d 425, 435 (9th Cir. 2015) (cleaned up).  "Accordingly, a judgment in a PAGA action binds not only the plaintiff, but also the government and nonparty aggrieved employees." *Eisenacher v. VITAS Hospice Servs. LLC*, No. 20-cv-04948-RS, 2021 WL 1846574, at *2 (N.D. Cal. Apr. 2, 2021).  Even so, PAGA settlements "[do] not require class action procedures, such as notice and opt-out rights."  *O'Connor v. Uber Techs., Inc.*, 201 F. Supp. 3d 1110, 1134 (N.D. Cal. 2016).

While court approval of PAGA settlements is statutorily required, PAGA does not provide

United States District Court
Northern District of California

express guidance about the scope or nature of judicial review.  In the absence of binding guidance, federal district courts reviewing PAGA settlements have drawn on factors utilized by the Ninth Circuit to evaluate whether a class action settlement is fundamentally fair, adequate, and reasonable.  *See id.* at 1133-34 (citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)); *see also Moniz v. Adecco USA, Inc.*, 72 Cal. App. 5th 56, 77 (2021) ("[A] trial court should evaluate a PAGA settlement to determine whether it is fair, reasonable, and adequate in view of PAGA's purposes to remediate present labor law violations, deter future ones, and to maximize enforcement of state labor laws.").  "These factors are evaluated in light of PAGA's public policy goals of 'benefit[ing] the public by augmenting the state's enforcement capabilities, encouraging compliance with Labor Code provisions, and deterring noncompliance.'" *Eisenacher*, 2021 WL 1846574, at *2 (quoting *O'Connor*, 201 F. Supp. 3d at 1132-33).

## III.    DISCUSSION

The Court previously found that certification of the California class and FLSA collective for the purposes of this settlement was warranted under the applicable law.  Dkt. No. 48 at 11-17; Dkt. No. 81 at 9.  As the claims at issue and proposed classes remain the same, the Court finds that its prior reasoning is applicable and determines both classes are properly certified.  The Court next turns to whether the proposed settlement is fair, reasonable, and adequate.  At the preliminary approval stage, the Court found that the proposed settlement was fair, reasonable, and adequate as to the California class, FLSA collective members, and PAGA members.  *See* Dkt. No. 81 at 10-20. The circumstances supporting this determination have not materially changed.  The Court summarizes the relevant findings below.

### A.    Final Approval of Settlement

#### 1.    Rule 23

Under Rule 23(e), review of a proposed settlement of a class action proceeds in two steps. Fed. R. Civ. P. 23(e); *Lusby v. Gamestop, Inc.*, 297 F.R.D. 400, 412 (N.D. Cal. 2013).  First, the Court conducts a preliminary fairness evaluation.  *Lusby*, 297 F.R.D. at 412.  If the Court preliminarily approves the settlement, then notice to the class is disseminated and the Court sets a final hearing for approval of the settlement.  *Id.*  Ultimately, a settlement should only be approved

if it is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2).  In determining whether a

proposed settlement meets this standard, the Court does not have "the ability to delete, modify, or

substitute certain provisions," and "[t]he settlement must stand or fall in its entirety." *Staton*, 327

F.3d at 969 (cleaned up).  The Court's evaluation of a settlement reached prior to class

certification "requires a higher standard of fairness and a more probing inquiry than may normally

be required under Rule 23(e)." *Dennis v. Kellogg Co.*, 697 F.3d 858, 864 (9th Cir. 2012) (cleaned

up).

        The Ninth Circuit has described several factors a court may consider in evaluating the

fairness of a proposed settlement:

> [1] the strength of the plaintiffs' case; [2] the risk, expense,
> complexity, and likely duration of further litigation; [3] the risk of
> maintaining class action status throughout trial; [4] the amount
> offered in settlement; [5] the extent of discovery completed and the
> stage of the proceedings; [6] the experience and views of counsel;
> [7] the presence of a governmental participant; and [8] the reaction
> of the class members to the proposed settlement.

*Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1121 (9th Cir. 2020) (quoting *Hanlon*, 150 F.3d at

1026.  Rule 23(e)(2) requires a court to consider a similar list of factors before approving a

settlement, including whether:

> (A)  the class representatives and class counsel have adequately
>         represented the class;
> (B)  the proposal was negotiated at arm's length;
> (C)  the relief provided for the class is adequate, taking into account:
>         (i)   the costs, risks, and delay of trial and appeal;
>         (ii)  the effectiveness of any proposed method of distributing
>                relief to the class, including the method of processing
>                class-member claims;
>         (iii) the terms of any proposed award of attorney's fees,
>                including timing of payment; and
>         (iv) any agreement required to be identified under Rule
>                23(e)(3); and
> (D)  the proposal treats class members equitably relative to each
>         other.

Fed. R. Civ. P. 23(e).  This list of factors is not intended to displace any factors identified by

courts, "but rather to focus the court and the lawyers on the core concerns of procedure and

substance that should guide the decision whether to approve the proposal." Fed. R. Civ. P. 23(e)

advisory committee's note to 2018 amendment; *see also McKinney-Drobnis v. Oreshack*, 16 F.4th

United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

594, 609 n.4 (9th Cir. 2021) ("The amended Rule 23(e) did not 'displace' this court's previous articulation of the relevant factors, and it is still appropriate for district courts to consider these factors in their holistic assessment of settlement fairness."); *Kim v. Allison*, 8 F.4th 1170, 1178-79 (9th Cir. 2021) (directing district courts to consider both the factors previously identified by the Ninth Circuit and Rule 23(e)(2) when determining whether to approve a settlement).  However, "the district court must show it has explored comprehensively all Rule 23(e)(2) factors."  *In re Apple Inc. Device Performance Litig.*, 50 F.4th 769, 782 (9th Cir. 2022) (cleaned up).

Additionally, the Northern District of California has published procedural guidance for class action settlements, which includes guidelines for parties seeking final approval of class action settlements.  *See* https://www.cand.uscourts.gov/forms/procedural-guidance-for-class-action-settlements/.  These guidelines identify information that is often helpful to district courts in when assessing whether a class action settlement satisfies the standards identified above.

### a.    Strength of plaintiff's case and the risk, expense, complexity, and likely duration of further litigation

The Court previously found that this factor weighed in favor of approval.  Dkt. No. 48 at 19-21; Dkt. No 81 at 11-12.  As discussed in prior orders, the Court finds that early resolution through settlement would be beneficial to the California class.  *See, e.g.*, *Burgos v. Sunvalleytek Int'l, Inc.*, No. 18-cv-06910-HSG, 2020 WL 7319354, at *7 (N.D. Cal. Dec. 11, 2020) (settlement is preferable when "additional litigation would have, in the best-case scenario, been expensive and time-consuming—and in the worst-case scenario, could have led to Plaintiff and the class going home empty-handed.").  The Courts finds that this factor continues to weigh in favor of approving the settlement.

### b.    Amount offered in settlement

The Court previously found that this factor weighs in favor of approval as Mr. Rodriguez provided sufficient justification for the Court to conclude that the amount allocated to the California class is fair and reasonable.  Dkt. No. 81 at 12-13.  Mr. Rodriguez reports that the average settlement payment from the net settlement fund will be $764.24 and the highest payment will be $5,412.35.  Dkt. No. 83 at 12.  This result compares favorably with settlements approved

United States District Court
Northern District of California

in other similar cases.  *See id.* at 12-13.  The Court concludes that this factor weighs in favor of final approval.

### c.    Extent of discovery completed and the stage of the proceedings

As there has been no change since the Court's prior orders finding that this factor weighs in favor of approval, the Court reaffirms that conclusion.  *See* Dkt. No. 48 at 22; Dkt. No. 81 at 13.

### d.    Adequate representation and equitable treatment

In its prior orders, the Court raised concerns relating to the amount of the proposed class representative enhancement award.  Dkt. No. 48 at 23-24; Dkt. No. 81 at 14.  Mr. Rodriguez separately moves for approval of the proposed class representative enhancement award.  Dkt. No. 82.  As discussed further in section B, the Court concludes that the $10,000 enhancement award request for Mr. Rodriguez is appropriate and does not interfere with his ability to adequately represent the interests of the class.  The Court thus finds this factor weighs in favor of final approval.

### e.    Potential for collusion and attorneys' fees award

The Ninth Circuit has held that an attorneys' fees award representing 25% of a common settlement fund is a "benchmark" for a reasonable award, unless special circumstances warrant a departure.  *See Bluetooth*, 654 F.3d at 942.  Here, class counsel seeks fees that are 18.5% of the settlement fund and considerably lower than their claimed lodestar.  Dkt. No. 82 at 4, 10.

As discussed below in connection with class counsel's unopposed motion for fees and costs, the Court concludes that the requested attorneys' fees, which are below the 25% benchmark, are reasonable.  This factor weighs in favor of final approval.

### f.    Adequacy of notice and plan for distribution

Rule 23(c)(2)(B) provides that for any class certified under Rule 23(b)(3), the Court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort.  Specifically, "[t]he notice must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v)

United States District Court
Northern District of California

1  that the court will exclude from the class any member who requests exclusion; (vi) the time and

2  manner for requesting exclusion; and (vii) the binding effect of a class judgment under Rule

3  23(c)(3)."  Fed. R. Civ. P. 23(c)(2)(B).

4     The Court previously found the settlement agreement's plan for distribution and settlement

5  administration to be adequate.  Dkt. No. 48 at 27-28; Dkt. No. 81 at 15.  The Court approved the

6  form and content of the proposed Notice of Class Action Settlement and directed the settlement

7  administrator to mail notices to California class members by June 30, 2025.  Dkt. No. 81 at 21.

8  The claim administrator appears to have effectively executed its obligations under the plan.  Class

9  counsel confirmed at the final fairness hearing that notice was provided and no objections were

10  received.

11                                              ***

12     Accordingly, the Court grants final approval of the California class settlement.

13          **2.      FLSA Collective**

14               **a.      Fair and reasonable resolution**

15     "The Ninth Circuit has not established the criteria that a district court must consider in

16  determining whether an FLSA settlement warrants approval."  *Kulik*, 2023 WL 2503539, at *3

17  (quoting *Otey*, 2014 WL 1477630, at *3).  In the absence of guidance, most district courts in the

18  Ninth Circuit apply a test developed by the Eleventh Circuit and assess whether the proposed

19  settlement is "a fair and reasonable resolution of a bona fide dispute."  *Otey*, 2014 WL 1477630, at

20  *3 (quoting *Lynn's Food Stores*, 679 F.2d at 1355); *see also Kulik*, 2023 WL 2503539, at *3; *De

21  Leon v. Ricoh USA, Inc.*, No. 18-cv-03725-JSC, 2020 WL 1531331, at *7 (N.D. Cal. Mar. 31,

22  2020).  To make this determination, "district courts implicitly or explicitly consider the factors

23  that are used to evaluate Rule 23 class action settlements."  *Otey*, 2014 WL 1477630, at *4.

24     "[C]ourts in the Ninth Circuit have found FLSA cases settling for approximately 25%-35%

25  of the total possible recovery to be reasonable."  *Chalmers v. DSSV, Inc.*, No. 22-cv-08863-HSG,

26  2024 WL 4844376, at *3 (N.D. Cal. Nov. 19, 2024) (quoting *Estorga v. Santa Clara Valley

27  Transp. Auth.*, No. 16-cv-02668-BLF, 2020 WL 7319356, at *4 (N.D. Cal. Dec. 11, 2020))

28  (finding possible recovery of 32% to 42% weighed in favor of approval).

1    Here, there are 488 FLSA opt in claimants who stand to receive an average payment of

2    $521.92.  *See* Dkt. No. 83 at 14; *see supra* note 2.  Approximately 11% of all eligible FLSA

3    collective members opted in to the settlement.[3]  *See* Dkt. No. 83 at 5 (stating there are 4,432 FLSA

4    collective members).  Mr. Rodriguez calculated the maximum total exposure if all FLSA

5    collective members opted in would be $6,062,506.43.  *Id.* at 13.  This estimate is based on

6    approximately 385,533 workweeks during the FLSA period, with an estimated half hour of unpaid

7    overtime per week and the $31.45 national average overtime rate.  *Id.*  Thus, at an 11% opt in rate,

8    the total recovery would be $666,875.70.  The settlement amount of $250,000 is approximately

9    37% of the estimated "realistic" maximum of $666,875.70.

10   Considering both the average payment and the percentage of recovery, the Court thus

11   concludes that the FLSA settlement is both fair and reasonable.

12                **b.    Notice and consent to magistrate judge jurisdiction**

13   The Ninth Circuit has held that all parties, meaning "all plaintiffs and defendants named in

14   the complaint," must consent to the jurisdiction of a magistrate judge before the judge acts on a

15   dispositive matter, *Williams v. King*, 875 F.3d 500, 503 (9th Cir. 2017), but also that "Congress

16   did not intend absent class members to be treated as parties in this context," *Koby v. ARS Nat'l*

17   *Servs., Inc.*, 846 F.3d 1071, 1076 (9th Cir. 2017).  Separately, the Ninth Circuit has emphasized

18   the difference between an FLSA collective and a Rule 23 class:  "A collective action is more

19   accurately described as a kind of mass action, in which aggrieved workers act as a collective of

20   *individual* plaintiffs with *individual* cases—capitalizing on efficiencies of scale, but without

21   necessarily permitting a specific, named representative to control the litigation, except as the

22   workers may separately so agree. . . . [Plaintiffs who join the collective hold] 'the same status in

23   relation to the claims of the lawsuit as that held by the original named plaintiffs.'"  *Campbell*, 903

24   F.3d at 1105 (quoting *Prickett v. DeKalb Cnty.*, 349 F.3d 1294, 1297 (11th Cir. 2003)) (cleaned

25

26   ─────────────────

27   [3] The typical opt in rate in FLSA collective actions is approximately 14% to 25%.  Dkt. No. 83 at
     14 (citing *Gutierrez-Bejar v. SOS Int'l, LLC*, No. 2:16-cv-09000 JAK (JEMx), 2019 WL 5683901,
     at *9 (C.D. Cal. Nov. 1, 2019) and *Bautista v. Harvest Mgmt. Sub LLC*, No. 2:12-cv-10004 FMO

28   (CWx), 2013 WL 12125768, at *15 (C.D. Cal. Oct. 16, 2013)).  At the final approval hearing, the
     parties' counsel could not say with certainty why the opt in rate was below the typical range.

United States District Court
Northern District of California

up, emphasis in original).

The Court may not enter final judgment on the claims of FLSA collective members who opt in without first obtaining their consent.  Pursuant to the Court's order, the parties included a provision regarding consent in the FLSA opt in form.  *See* Dkt. No. 75-2 at ECF 71.  The Court finds that this is sufficient to establish consent to the Court's jurisdiction by FLSA collective members who opted in.  *See, e.g.*, *Chavez v. Stellar Management Grp. VII, LLC*, No. 19-cv-1353-JCS, Dkt. No. 115-1 (N.D. Cal. Oct. 21, 2020).  Additionally, at the final approval hearing, class counsel confirmed that they received no objections to the Court's jurisdiction.  The Court concludes that FLSA collective members who opted in have consented to magistrate judge jurisdiction.

*** 

The Court grants final approval of the FLSA collective portion of the settlement.

### 3.    PAGA Settlement

A reviewing court must ensure that a PAGA settlement "(1) meet[s] the statutory requirements set forth by PAGA, and (2) [is] fundamentally fair, reasonable, and adequate in view of PAGA's public policy goals."  *Kulik*, 2023 WL 2503539, at *4.

The settlement meets the statutory requirements set forth by PAGA.  The agreement allocates 75% of the PAGA settlement amount to LWDA as civil penalties, and the remaining 25% to the PAGA members.  *See* Cal. Lab. Code § 2699(i) (2016).[4]  The parties submitted their settlement agreement to the LWDA.  Dkt. No. 75-4; *see* Cal. Lab. Code § 2699(s)(2) (2024).

The Court previously found that the proposed PAGA settlement is adequate as the amount of the PAGA settlement is 10% of the "realistic" exposure calculation of $1.937 million.  Dkt. No. 81 at 20.  The Court also found that because the California class settlement was fair and reasonable, the goals of PAGA may be fulfilled through this settlement as well.  *Id.*; *see O'Connor*, 201 F. Supp. 3d at 1134 ("[I]f the settlement for the Rule 23 class is robust, the

---

[4] The PAGA statute was amended on July 1, 2024.  Certain citations to the statute reference the pre-amendment version of the statute which applies to this action based on the pre-amendment filing date of the initial complaint.  *See* Cal. Lab. Code § 2699(v)(1) (2024).

United States District Court
Northern District of California

purposes of PAGA may be concurrently fulfilled.").  The Court reaffirms its earlier findings and concludes that the PAGA settlement is fair, reasonable, and adequate.

***

Accordingly, the Court grants final approval of the PAGA settlement.

### 4.      Settlement Administration Costs

Mr. Rodriguez requests final approval of settlement administration costs in the amount of $32,500.  Dkt. No. 83 at 16.  CPT's work included printing and mailing the Notice of Class Action Settlement to all California class members and the FLSA Notice to all FLSA collective members; performing skip traces to obtain updated addresses for notices returned as undeliverable; receiving and maintaining requests for exclusion and opt in forms; monitoring objections to the settlement; and reviewing workweek disputes.  Dkt. No. 83-2 ¶¶ 2-10.

Courts regularly award administrative costs associated with providing notice to the class. *Bellinghausen*, 306 F.R.D. at 266.  Moreover, the parties agreed to allocate up to $32,500 of the settlement fund for settlement administration costs.  Dkt. No. 75-2 at ECF 37 (¶ 39).  The Court therefore concludes that CPT's costs were reasonably incurred for the benefit of the class and awards the full amount.

Accordingly, the Court grants final approval of the settlement administration costs requested.

### B.      Motion for Attorneys' Fees, Costs, and a Class Representative Enhancement Payment

Next, the Court determines whether the requested attorneys' fees, costs, and class representative enhancement payment are fair and reasonable.

### 1.      Attorneys' Fees

"The Ninth Circuit has approved two methods of determining attorneys' fees in cases where, as here, the amount of the attorneys' fee award is taken from the common fund set aside for the entire settlement: the 'percentage of the fund' method and the 'lodestar' method.'" *Bellinghausen*, 306 F.R.D. at 259-60 (citing *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002)).  "The district court retains discretion in common fund cases to choose either

1    method," *id.*, but the Ninth Circuit recommends that district courts apply one method, using the

2    other to cross-check the appropriateness of the amount of requested attorneys' fees.  *See*

3    *Bluetooth*, 654 F.3d at 944.  "Under either approach, '[r]easonableness is the goal, and mechanical

4    or formulaic application of either method, where it yields an unreasonable result, can be an abuse

5    of discretion.'"  *Bellinghausen*, 306 F.R.D. at 260 (quoting *Fischel v. Equitable Life Assurance*

6    *Soc'y of the U.S.*, 307 F.3d 997, 1007 (9th Cir. 2002)).

7        Because this case involves a common settlement fund with an easily quantifiable benefit to

8    the class, the Court will primarily determine attorneys' fees using the benchmark "percentage of

9    the fund" method.  *See Kim*, 8 F.4th at 1181 ("The percentage-of-recovery approach may be used

10   where the defendants provide monetary compensation to the plaintiffs and class benefit is easy to

11   quantify") (citation and internal quotation marks omitted); *see also Bluetooth*, 654 F.3d at 942

12   (percentage method is particularly appropriate in common fund cases, where "benefit to the class

13   is easily quantified").  "Under this method, the court simply awards the attorneys a percentage of

14   the fund sufficient to provide class counsel with a reasonable fee."  *Kim*, 8 F.4th at 1181 (citation

15   and internal quotation marks omitted).  The Court will also apply a lodestar cross-check to ensure

16   the award's reasonableness.  *See Bellinghausen*, 306 F.R.D. at 260 (citing *Vizcaino*, 290 F.3d at

17   1047).

18                          a.    **Reasonableness of the Percentage**

19       The Ninth Circuit has consistently approved a "benchmark" award of 25% of the common

20   fund.  *Bluetooth*, 654 F.3d at 942; *Staton*, 327 F.3d at 968.  In this district, other judges reviewing

21   wage and hour class action settlements have approved attorneys' fee awards over the 25%

22   benchmark in some circumstances.  *See, e.g.*, *Rivas v. BG Retail, LLC*, No. 16-cv-06458-BLF,

23   2020 WL 264401, at *8 (N.D. Cal. Jan. 16, 2020) (approving attorneys' fees totaling 45% of the

24   settlement fund); *Smith v. Am. Greetings Corp.*, No. 14-cv-02577-JST, 2016 WL 362395, at *8-9

25   (N.D. Cal. Jan. 29, 2016) (approving attorneys' fees totaling 28% of the settlement fund).  Here,

26   class counsel's request for fees of $300,000 is 18.5% of the $1,622,000 common settlement fund,

27   well below the 25% benchmark.  Dkt. No. 82 at 4.

28       "The most critical factor in determining appropriate attorneys' fee awards is the degree of

United States District Court
Northern District of California

success obtained." *Smith*, 2016 WL 362395, at *8 (citing *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983)) (internal quotation marks omitted).  Here, the results obtained support the requested award of attorneys' fees, because the net settlement is approximately 9% of defendants' estimated maximum total liability.  Dkt. No. 83-1 ¶ 48.  This net settlement amount falls well within the range found acceptable in other wage and hour class actions.  *See Camilo v. Ozuna*, No. 18-cv-02842-VKD, 2020 WL 1557428, at *6 (N.D. Cal. Apr. 1, 2020) (net settlement was 44% of defendants' potential liability); *Rivas*, 2020 WL 264401, at *5 (2.4% net recovery to the class was not reason to reject the settlement).  Given the risks of further litigation, *see* Dkt. No. 83-1 ¶¶ 24-44, the class has achieved a high degree of success.

Additionally, "[t]he existence or absence of objectors to the requested attorneys' fee is a factor in determining the appropriate fee award."  *Bellinghausen*, 306 F.R.D. at 261 (citation omitted).  Here, the Notice of Class Action Settlement that was disseminated pursuant to the Court-approved notice plan notified class members of the maximum amount of attorneys' fees that would be sought.  Dkt. No. 75-2 at ECF 62.  At least 99% of the class received notice of their right to object to the attorney fee award set forth in the settlement agreement, but not one class member objected.  *See* Dkt. No. 83-2 ¶¶ 4-5, 9.  "[T]he lack of objection from any Class Member supports the attorneys' fee award."  *Smith*, 2016 WL 362395, at *9.

The Court finds that an attorneys' fee award in the amount of 18.5% of the common fund—i.e., $300,000—is reasonable, using the benchmark method.

**b.    Lodestar Cross-Check**

The Court now compares the requested award percentage of 18.5% to the lodestar.  Although this "extra step" is "not required," *In re Google Referrer Header Priv. Litig.*, 869 F.3d 737, 748 (9th Cir. 2017), *vacated on other grounds by Frank v. Gaos*, 586 U.S. 485 (2019), the lodestar "provides a check on the reasonableness of the percentage award."  *Vizcaino*, 290 F.3d at 1050.  "The lodestar figure is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer."  *Bluetooth*, 654 F.3d at 941.  The Court may increase or decrease the lodestar by a multiplier that reflects factors such as "the quality

of representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment." *Id.* at 942.

### i.     Reasonable Rate

"In determining a reasonable hourly rate, the district court should be guided by the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation." *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210-11 (9th Cir. 1986), *amended on other grounds by* 808 F.2d 1373 (9th Cir. 1987).  The relevant community for purposes of determining the prevailing market rate is generally the "forum in which the district court sits." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008).  "Affidavits of the plaintiffs' attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases, particularly those setting a rate for the plaintiffs' attorney, are satisfactory evidence of the prevailing market rate." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990).  The Court is required to consider cases that were decided relatively contemporaneously to the time the work was performed.  *See Camacho*, 523 F.3d at 981.

Here, class counsel request fees based on 522.5 hours billed by eleven attorneys at rates ranging from $475 to $550 for associates, and $625 to $950 for senior counsel and partners.  Dkt. No. 81 at 8; Dkt. No. 82-1 ¶ 17.  Class counsel have considerable experience litigating labor and employment disputes and settling class and representative actions.  *See* Dkt. No. 82-1 ¶¶ 8-15; *see also id.* ¶ 16, Ex. 1.

Other judges in this district have determined that similar rates are consistent with the overall range of market rates in the Northern District of California for attorneys with commensurate experience.  *See, e.g.*, *Koeppen v. Carvana, LLC*, No. 21-cv-01951-TSH, 2024 WL 3925703, at *12-13 (N.D. Cal. Aug. 22, 2024) (finding rates ranging from $575 to $1,495 per hour within the range of rates approved in wage and hour litigation in this district); *Gutierrez v. Wells Fargo Bank, N.A.*, No. 07-cv-05923-WHA, 2015 WL 2438274, at *5 (N.D. Cal. May 21, 2015) (finding reasonable rates for Bay Area attorneys of between $475 to $975 for partners and $300 to $490 for associates in consumer class action).

United States District Court
Northern District of California

Based on the fees regularly awarded in comparable actions in this district, and the fact that class counsel practice extensively in wage and hour class actions on behalf of workers, the Court concludes that class counsel's rates are reasonable.

### ii.        Reasonable Hours

In calculating hours reasonably expended, the Court should exclude hours that are "excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 434.  Over the three and a half years of this litigation, class counsel have billed a total of 522.5 hours, the majority of which were spent working on complaints, pleadings, other filings, and the settlement approval process. *See* Dkt. No. 82-1 ¶ 17.

In this case, the Court finds that the hours expended by class counsel are reasonable given the length of the lawsuit and the accounting of hours provided by the attorneys.  The time spent does not appear to be unnecessary, duplicative, or excessive.

### iii.        Lodestar Calculation

Given class counsel's reasonable hourly rates and reasonable hours expended, the total lodestar calculation for class counsel is $354,517.50.  Dkt. No. 82-1 ¶ 17.  The $300,000 fee award requested is less than the amount of fees actually incurred.

*** * **

Accordingly, the Court concludes that the attorneys' fees requested are reasonable and awards class counsel $300,000.

### 2.        Costs

Because "an attorney who has created a common fund for the benefit of the class is entitled to reimbursement of reasonable litigation expenses from that fund," "courts throughout the Ninth Circuit regularly award litigation costs and expenses—including reasonable travel expenses—in wage-and-hour class actions." *Bellinghausen*, 306 F.R.D. at 265 (citation omitted).

The settlement agreement contemplates an award of litigation costs of up to $30,000, to compensate class counsel for actual documented out-of-pocket costs and expenses associated with this litigation and settlement of the action.  Dkt. No. 75-2 at ECF 30, 38-39 (¶¶ 2, 44).  Class counsel submitted a list of itemized costs and expenses; in total, class counsel requests costs of

United States District Court
Northern District of California

United States District Court
Northern District of California

1    $27,813.74.  Dkt. No. 82 at 10-11.  According to class counsel, these costs account for filing and

2    service fees, copying and mailing, legal research, mediation expenses, travel expenses, and

3    payment to Desmond, Marcello & Amster who assisted class counsel in reviewing time and wage

4    records and developing a damages model for mediation.  *Id.*

5        The Court concludes that these are reasonable litigation expenses incurred for the benefit

6    of the class and therefore grants class counsel's request for $27,813.74 in costs.

### 3.    Class Representative Enhancement Payment

8        Mr. Rodriguez requests a class representative enhancement payment, also known as an

9    incentive award, of $10,000.  "Incentive awards are meant to 'compensate class representatives for

10   work done on behalf of the class, to make up for financial or reputational risk undertaking in

11   bringing the action, and, sometimes, to recognize their willingness to act as a private attorney

12   general."  *Bellinghausen*, 306 F.R.D. at 266 (citing *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948,

13   958-59 (9th Cir. 2009)).  Incentive awards are "particularly appropriate in wage-and-hour actions

14   where plaintiffs undertake a significant 'reputational risk' by bringing suit against their former

15   employers."  *Id.* at 267 (citing *Rodriguez*, 563 F.3d at 958-59).  However, because the amount of

16   the requested incentive award is higher than the "presumptively reasonable" $5,000 payment in

17   this district, *see id.* at 266-67 (citing cases), the Court considers the reasonableness of the

18   requested amount.

19       To determine the reasonableness of an incentive award, courts have generally considered

20   these factors:

21           (1) [T]he risk to the class representative in commencing a suit, both
             financial and otherwise; (2) the notoriety and personal difficulties
22           encountered by the class representative; (3) the amount of time and
             effort spent by the class representative; (4) the duration of the
23           litigation; and (5) the personal benefit (or lack thereof) enjoyed by
             the class representative as a result of the litigation.
24

25   *Id.* at 266 (citing cases).  Here, Mr. Rodriguez requests a class representative enhancement

26   payment of $10,000 for his time and effort in assisting counsel with the investigation of his

27   claims, gathering information, and reviewing the settlement.  Dkt. No. 75-3 ¶¶ 6, 10, 14.  Mr.

28   Rodriguez estimates that he spent between 30 to 40 hours assisting counsel in the prosecution of

1    this action.  *Id.* ¶ 16.

2        Moreover, the risk to Mr. Rodriguez in commencing suit was not insignificant.  Plaintiffs

3    in wage and hour actions may risk their reputation and ability to obtain work by bringing suit

4    against their employers.  *Bellinghausen*, 306 F.R.D. at 266 (citing *Rodriguez*, 563 F.3d at 958-59).

5    Mr. Rodriguez's status as a class representative also may expose him to the risk that future

6    employers will be reluctant to hire him because of his public role in this litigation challenging his

7    conditions of employment.  *See id.* at 267.

8        It is not uncommon for a court to award a class representative several thousand dollars as

9    an incentive award.  *See id.* at 268 (awarding incentive award of $15,000 to class representative);

10    *Hickcox-Huffman v. US Airways, Inc.*, No. 10-cv-05193-VKD, 2019 WL 1571877, at *2 (N.D.

11    Cal. Apr. 11, 2019) (awarding incentive award of $10,000 to class representative).  While $10,000

12    is higher than the typical award, that amount is appropriate here in view of the time and effort Mr.

13    Rodriguez has expended for the benefit of the class and the risks he incurred in initiating the

14    litigation.

15        Accordingly, the Court awards Mr. Rodriguez a class representative enhancement payment

16    of $10,000.

## IV.    CONCLUSION

18        For the reasons described above, the Court grants Mr. Rodriguez's motion for final

19    approval of the settlement and his motion for attorneys' fees, costs, and a class representative

20    enhancement payment.

21        The Court orders as follows:

22        1.    This order hereby adopts and incorporates by reference the terms and conditions of

23    the Amended Joint Stipulation of Class, Collective, and PAGA Action Settlement and Release,

24    together with the definitions and terms used and contained therein.

25        2.    Final approval shall be with respect to California class members defined as:  All

26    persons who were employed by defendants in the State of California in non-exempt positions at

27    any time during the period from February 25, 2018 to May 21, 2025.

28        3.    Final approval shall be with respect to all FLSA opt in claimants:  All persons who

United States District Court
Northern District of California

1    were employed by defendants in the United States of America in non-exempt positions at any time

2    during the period from February 25, 2019 to May 21, 2025, and who opted in to the FLSA

3    settlement.

4         4.    Final approval shall be with respect to PAGA members defined as:  All persons

5    who were employed by defendants in the State of California in non-exempt positions at any time

6    during the period from March 8, 2021 through May 21, 2025.

7         5.    The settlement agreement is hereby finally approved in all respects.  The parties

8    and their counsel are directed to implement and consummate the settlement agreement according

9    to its terms and conditions.

10        6.    The Court finds that the requested award of attorneys' fees in the amount of

11   $300,000, or 18.5% of the common fund created by the settlement, is reasonable and awards the

12   requested amount.

13        7.    The Court finds that the requested costs of $27,813.74 are fair and reasonable and

14   awards the requested amount.

15        8.    The Court awards Mr. Rodriguez a class representative enhancement payment of

16   $10,000 for his service on behalf of the settlement class.

17        9.    Other than as provided in the settlement agreement and this order, the parties shall

18   bear their own costs and attorneys' fees.

19        10.   Without affecting the finality of the judgment, the Court shall retain exclusive and

20   continuing jurisdiction over the above-captioned action and the parties under, including all

21   participating California class members, FLSA opt in claimants, and PAGA members, for purposes

22   of enforcing the terms of the judgment entered herein.

23        11.   Within 21 days after all settlement distributions have been completed, but in no

24   event later than 210 days from the date of this order, the parties shall file a post-distribution

25   accounting, describing the disposition of the gross settlement amount and fulfillment of the terms

26   of the settlement agreement.  *See* https://www.cand.uscourts.gov/forms/procedural-guidance-for-

27   class-action-settlements/ (Post-Distribution Accounting).

28        The Clerk of Court shall enter judgment and close this file.

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

**IT IS SO ORDERED.**

Dated: October 9, 2025

Virginia K. DeMarchi
United States Magistrate Judge